**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| THOMAS BLITZ, a Wisconsin consumer; KEVIN BLAIR, an Illinois consumer; GREGORY CHICK, a California consumer; MARIO WASHINGTON, a New York consumer; TERENCE D. MOORE, a New Jersey consumer; and RICHARD J. DULNIAK, a Florida consumer, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>MONSANTO COMPANY, a Missouri Corporation; and SCOTTS MIRACLE-GRO COMPANY, an Ohio Corporation,<br><br>                    Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT<br><br>JURY DEMAND |

## INTRODUCTION

1.      This lawsuit involves the unlawful promotion, marketing, and sale of various

Roundup Products, manufactured by Defendant Monsanto Company and distributed, nationwide,

by Defendant Scotts Miracle-Gro Company.

2.      Defendants label, advertise, and promote their retail Roundup® products,

including but not limited to their Roundup® "Garden Weeds" Weed & Grass Killer products

("Roundup" or "Roundup Products"),[1] with the false statement that Roundup's active ingredient,

glyphosate, targets an enzyme that is ***not*** found "in people or pets."

3.      However, this claim is false, misleading, and deceptive, as the enzyme that

glyphosate targets ***is*** found in people and pets—specifically, in beneficial gut bacteria critical to

---

[1] Plaintiffs reserve the right to add any additional Roundup® products labeled with the false statement as may be identified through discovery.

their health and wellbeing, including their immune system, digestion, allergies, metabolism, and even their brain function.

4.     Defendants repeat these false and misleading representations throughout their marketing, including in video advertisements produced for their websites and YouTube Channel.[2]

5.     Glyphosate targets the enzyme EPSP synthase. The beneficial bacteria in our gut (and the gut of other mammals), on which our immune systems rely, produce and utilize EPSP synthase.[3] Thus, the targeted enzyme EPSP synthase *is* found in people and pets. Defendants' claim to the contrary is demonstrably false.

6.     Defendants' false statements and omissions regarding glyphosate and the enzyme it targets are material. There is widespread controversy and concern around glyphosate and its effects on humans and animals. Studies indicate that the health of the beneficial bacteria in our bodies is directly linked to our general health. Studies also suggest that interference with the gut flora may have serious effects on humans and pets.[4]

7.     In light of this controversy, and to exploit consumer concerns about glyphosate's effects, Monsanto markets Roundup with the false statement that it targets an enzyme that is ***not*** found in people or pets. Monsanto omits material, contrary information, namely, that human gut bacteria produce and utilize the enzyme targeted by Roundup.

---

[2] *See, e.g.*, Monsanto Company, Are Roundup® Weed & Grass Killer Products Safe?, YouTube (Dec. 5, 2016), https://www.youtube.com/watch?v=vJboNdWoFws; Monsanto Company, How Do Roundup® Weed and Grass Killer Products Work?, YouTube (Dec. 5, 2016), https://www.youtube.com/watch?v=4UyjQxeRCWM.
[3] Beneficial bacteria that produce and utilize the enzyme EPSP synthase are also in other parts of human bodies, such as the reproductive tracts.
[4] *See generally* Austin Wilson, et al., "Roundup Revealed: Glyphosate in Our Food System," As You Sow (2017), available at http://www.asyousow.org/ays_report/roundup-revealed/.

8.     These false statements deceived Plaintiffs and all Class Members, and caused them harm. Plaintiffs would have acted differently had they known the material information omitted by Defendants and/or the falsity of the statements made by the Defendants.

9.     Because of the false statements and material omissions, Defendants were able to sell more Roundup Products and were able to charge more for Roundup than they otherwise would have been.

10.     Defendants' actions violate, among other statutes, Wisconsin's Deceptive Trade Practices Act; Illinois's Consumer Fraud and Deceptive Business Practices Act; California's Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law; New York's General Business Law; New Jersey's Consumer Protection Act; and Florida's Deceptive and Unfair Trade Practices Act;.

11.     Defendants also breached an express warranty that their product targets an enzyme not found in people or pets.

12.     Defendants were unjustly enriched through utilizing the false statement and omitting material information.

13.     Plaintiffs and other Class Members who purchased the Roundup Products suffered economic damages in a similar manner because they purchased more Roundup Products and/or paid more for Roundup Products than they would have had they not been deceived.[5]

14.     Accordingly, Plaintiffs seek, in addition to any applicable equitable relief, compensation for themselves and Class Members equal to the amount of money they paid for Roundup Products that they would not have purchased had they known the truth, or in the alternative, the amount of money they paid based on the false statement.

---

[5] Plaintiffs are not seeking damages for any personal injuries in this Complaint.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). CAFA grants federal courts original jurisdiction over any class action in which the proposed class has at least 100 members, any member of the proposed class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs. A least one putative Class member is a citizen of a state different from the Defendants. On information and belief, the amount in controversy exceeds $5 million.

16.     This Court has personal jurisdiction over Defendants because Defendants transact business throughout the United States, including in Wisconsin and in this judicial district.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of the false statement, occurred within this district.

## PARTIES

18.     Defendant Monsanto Company was and is a Delaware corporation headquartered in St. Louis, Missouri, and a leading marketer of biocides nationwide. Monsanto is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in the states of Wisconsin, Illinois, California, New York, New Jersey, and Florida.

19.     Monsanto manufactures and/or causes the manufacture of Roundup Products, and markets and distributes the Products in retail stores throughout the United States, including in the states of Wisconsin, Illinois, California, New York, New Jersey, and Florida, and through the Internet nationwide.

20.     Defendant Scotts Miracle-Gro Company (Scotts) is an Ohio corporation

headquartered in Marysville, Ohio. Scotts is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in the states of Wisconsin, Illinois, California, New York, New Jersey, and Florida.

21.     Scotts is responsible for marketing and distributing Roundup Products around the United States, including in the states of Wisconsin, Illinois, California, New York, New Jersey, and Florida, and through the Internet nationwide.

22.     Plaintiff Thomas Blitz is a citizen of the state of Wisconsin and a resident of Waunakee, Wisconsin. He purchased Monsanto's Roundup Products on multiple occasions from the Home Depot store, and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Blitz relied on this representation in deciding to purchase those Roundup Products.

23.     Plaintiff Kevin Blair is a citizen of the state of Illinois and a resident of Poplar Grove, Illinois. He purchased Monsanto's Roundup Products on several occasions from a Home Depot store,  and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Blair relied on this representation in deciding to purchase those Roundup Products.

24.     Plaintiff Gregory Chick is a citizen of the state of California and a resident of Ramona, California. He purchased Monsanto's Roundup Products on several occasions in the last four years from, among other retailers, the United Green Mark store and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Chick relied on this representation in deciding to purchase those Roundup Products.

25.     Plaintiff Mario Washington is a citizen of the state of New York and a resident of

Queens, New York. He purchased Monsanto's Roundup Products from New York retail locations on several occasions and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Washington relied on this representation in deciding to purchase those Roundup Products.

26.     Plaintiff Terence D. Moore is a citizen of the state of New Jersey and resident of Millville, New Jersey. He purchased Monsanto's Roundup Products from New Jersey retail locations on several occasions and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Moore relied on this representation in deciding to purchase those Roundup Products.

27.     Plaintiff Richard J. Dulniak is a citizen of the state of Florida and resident of Leesburg, Florida. He purchased Monsanto's Roundup Products from various Florida retail locations on several occasions and the Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Dulniak relied on this representation in deciding to purchase those Roundup Products.

## FACTUAL ALLEGATIONS

### I.      Glyphosate and the Enzyme It Targets

28.     Glyphosate, the active ingredient in Roundup, is a non-selective biocide, meaning that it will kill most plants and many simple organisms. Unlike selective biocides, glyphosate cannot be used on most conventional lawns, as it would kill grass that has not been genetically modified.

29.     Glyphosate kills plants by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, disrupting the fifth of six enzymatic steps in the shikimate

pathway, which processes aromatic amino acids.[6]

30.     The same enzyme—the EPSP synthase that glyphosate "targets"—is present in many beneficial bacteria that inhabit the human and other mammalian gut.[7] Hence, contrary to Defendants' representation that the enzyme targeted by Roundup's glyphosate is ***not*** found in people or pets, that enzyme ***is*** found in people and pets.

31.     Studies show that the health of beneficial gut bacteria is essential to the overall health of humans and other mammals.[8] Microorganisms that populate the human body outnumber human cells 10 to one.[9]

32.     Studies have also demonstrated that even exposure to low doses of glyphosate can have effects in humans and animals.[10]

---

[6] Klaus M. Hermann, *The Shikimate Pathway as an Entry to Aromatic Secondary Metabolism*, 107 Plant Physiology 7 (1995), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC161158/pdf/1070007.pdf; Herke Hollander & Nikolaus Amrhein, *The Site of the Inhibition of the Shikimate Pathway by Glyphosate*, 66 Plant Physiology 823, (1980), *available at* http://www.plantphysiol.org/content/66/5/823.full.pdf; Industry Task Force on Glyphosate, *Glyphosate: Mechanism of Action*, Glyphosate Facts (June 19, 2013), *available at* http://www.glyphosate.eu/glyphosate-mechanism-action.

[7] Anthony Samsel & Stephanie Sneff, *Glyphosate's Suppression of Cytochrome P450 Enzymes and Amino Acid Biosynthesis by the Gut Microbiome: Pathways to Modern Diseases*, 15(4) Entropy 1416 (2013), *available at* http://www.mdpi.com/1099-4300/15/4/1416/htm.

[8] Sai Manasa Jandhyala, et al., *Role of the Normal Gut Microbiota*, 21 World J. of Gastroenterology 8787 (2015), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4528021/.

[9] Andrea G. Braundmeier, et al., *Individualized Medicine and the Microbiome in Reproductive Tract*, 6 Frontiers in Physiology 97 (2015), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4381647/.

[10] John P. Myers, et al., *Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement*, 15 Environ. Health 9 (2016), *available at* https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0; *see also* Gilles-Eric Seralini, et al, *Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize*, 26 Environ. Sci. Europe 14 (2014), *available at* http://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5; A.L. Benedetti, et al., *The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb*, 153(2) Toxicol. Lett. 227-32 (2004), *available at* http://www.ncbi.nlm.nih.gov/pubmed/15451553; K. Larsen, et al., *Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on*

---

33.     As a result of such studies, widespread controversy and consumer concern exist regarding glyphosate's effect on humans and animals.

**II.      False Statements and Material Omissions on the Roundup Labeling**

34.     Defendants include a false statement on the labels of their Roundup Products, stating, "Glyphosate targets an enzyme found in plants but not people or pets."

35.     This misrepresentation is presented on certain Roundup product labels under the phrase "DID YOU KNOW?" As shown below, for the Roundup Weed & Grass Killer III and Roundup Weed & Grass Killer Concentrate Plus, the label states, "Glyphosate targets an enzyme found in plants but not people or pets.":

 

*Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats*, 33(4) Int. J. Toxicol. 307-18 (Jul. 2014), *available at* http://www.ncbi.nlm.nih.gov/pubmed/24985121; Robin Mesnage, et al., *Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure*, 14 Environ. Health 70 (2015), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093.




36.     Defendants know[11] consumers are becoming increasingly concerned about Roundup's potential effects on people and animals[12] and that consumers are more likely to buy—and will pay more for—Roundup if they believe it targets an enzyme that is not found in people and animals.

37.     Defendants include these false statements to induce members of the public to purchase (or to purchase more of) the Roundup Products and/or to pay more for them.

---

[11] *See, e.g.*, Eric Sachs, *Conversation Questions Regarding Glyphosate*, Monsanto, http://discover.monsanto.com/posts/conversation-questions-regarding-glyphosate/ (last visited June 19, 2017).

[12] *See, e.g.*, *Two-Thirds of Europeans Support Glyphosate Ban, Says Yougov Poll*, The Guardian, Apr. 11, 2016, *available at* https://www.theguardian.com/environment/2016/apr/11/two-thirds-of-europeans-support-ban-on-glyphosate-says-yougov-poll; *Fears Over Roundup Herbicide Residues Prompt Private Testing*, Washington Post, Apr. 13, 2015, *available at* https://www.washingtonpost.com/national/health-science/worries-about-an-ingredient-in-widely-used-lawn-herbicide-after-who-report/2015/04/13/f6b0a418-df8a-11e4-a1b8-2ed88bc190d2_story.html.

38.     Defendants omit material information from the label of Roundup Products to induce members of the public to purchase (or to purchase more of) the Products and/or to pay more for them.

## II.   Defendants' Knowledge That Their Representations Are False and Omission of Material Information

39.     Glyphosate was invented by Monsanto, an agrochemical and agricultural biotechnology corporation, which began marketing the chemical in 1974 under the trade name Roundup.

40.     Monsanto holds itself out to the public as a trusted expert in herbicides.[13]

41.     In 2003, Monsanto sought a patent for the antimicrobial properties of glyphosate, specifically citing in its application to glyphosate's effect on the shikimate pathway; this United States patent was granted in 2010.[14] Monsanto is therefore well aware of how glyphosate works on the shikimate pathway,[15] and upon information and belief is aware of studies showing that the shikimate pathway is present in bacteria integral to the digestive systems of people and pets.

42.     Scotts has been distributing consumer Roundup Products exclusively for Monsanto for many years and also knows that glyphosate targets an enzyme found in humans.

43.     Defendants, therefore, know that glyphosate targets an enzyme present not only in plants, but also in people and pets.

44.     Despite this knowledge, Defendants willfully advertised these Roundup Products using the material false statement.

---

[13] *See, e.g.*, *Roundup/Glyphosate Background Materials*, Monsanto, http://www.monsanto.com/products/pages/roundup-safety-background-materials.aspx (last visited, June 15, 2017).
[14] U.S. Patent No. 7,771,736 (filed Aug. 29, 2003).
[15] Id.; see also, Monsanto, supra note 14.

45.     Defendants willfully omitted material information from Roundup Products' labeling concerning the use of EPSP synthase by bacteria within the human gut biome.

46.     Through the false statements made in their labeling, and through their material omissions, Defendants conceal the truth. Defendants' concealment tolls the applicable statute of limitations.

47.     To this day, Defendants continue to conceal, suppress, and misrepresent the true nature of Roundup and its active ingredient, glyphosate.

**III.     Reasonable Consumers Deceived by the False Statements**

48.     The statement "Glyphosate targets an enzyme found in plants but not in people or pets" was on the label of the Roundup Products that Plaintiffs and Class Members purchased.

49.     Plaintiffs and Class Members saw and were deceived by the false statement, and by the omission of material information.

50.     Consumers have been deceived by these false statements and material omissions.

51.     Consumers cannot discover the falsity of the statement from reading the label. Nor can they discover the falsity of the statement from visiting Roundup's website. Indeed, the website also states, on each Roundup Product's individual webpage, "Glyphosate targets an enzyme found in plants but not people or pets."[16]

52.     Other Roundup webpages, such as one titled "How Do Roundup® Weed & Grass Killer Products Work?", repeat the false statement both in writing and in videos.[17]

---

[16] *See, e.g*., Scotts Miracle-Gro Co., *Roundup® Ready-To-Use Weed & Grass Killer III with Sure Shot® Wand*, Roundup.com, http://www.roundup.com/smg/goprod/roundup-ready-to-use-weed-grass-killer-iii-with-sure-shot-wand/prod11330002?& (last visited June 19, 2017).
[17] Scotts Miracle-Gro Co., *How Do Roundup® Weed & Grass Killer Products Work?*, Roundup.com, http://www.roundup.com/smg/goART3/Howto/how-do-roundup-weed-and-grass-killer-products-work/43200019 (last visited June 19, 2017); *see also* Sachs, *supra* n.11.

53.     Discovery of the true nature of Roundup requires scientific knowledge and research that the average reasonable consumer would or could not undertake. Thus, a reasonable consumer is likely to be deceived by these false statements and material omissions.

54.     These deceptive representations and omissions are material in that an ordinary reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

**IV.     Injury to Plaintiffs and the Class From Defendants' False Statements and Omissions**

55.     As an immediate, direct, and proximate result of the Defendants' misrepresentations and omissions, Defendants injured Plaintiffs and Class Members in that they:

>      (i)     paid more for Roundup Products that were falsely represented than they would have had the Roundup Product not been falsely represented;
>
>      (ii)    purchased Roundup Products that they otherwise would not have purchased, had they not been deceived;
>
>      (iii)   purchased Roundup Products that they otherwise would not have purchased, had they known the truth about glyphosate;
>
>      (iv)    were deprived of the benefit of the bargain because the Roundup Products they purchased were different from what Defendants promised and/or had less value that what was represented; and/or
>
>      (v)     did not receive Roundup Products that measured up to their expectations as created and distributed by Defendants.

56.     Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for Roundup Products than they would have had they not been deceived by the representations and omissions. Had Defendants not made the false statements and omitted material information,

Plaintiffs and the Class Members would not have been injured as listed above.

## CLASS ALLEGATIONS

57.     Plaintiffs re-allege and incorporate by reference the allegations set forth in the

preceding paragraphs of this Complaint.

58.     This action is maintainable as a class action pursuant to Rule 23(a) and 23(b)(3)

of the Federal Rules of Civil Procedure.

59.     Plaintiffs bring this action on behalf of a National Class defined as follows:

National Class: All consumers who purchased Roundup Products, containing the
statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the United States within the applicable statute of
limitations.

60.     Plaintiffs also bring this action on behalf of Wisconsin, Illinois, California, New

York, New Jersey, and Florida Classes, defined as follows:

Wisconsin Class: All consumers who purchased Roundup Products, containing
the statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the State of Wisconsin within the applicable statute of
limitations.

Illinois Class: All consumers who purchased Roundup Products, containing the
statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the State of Illinois within the applicable statute of
limitations.

California Class: All consumers who purchased Roundup Products, containing the
statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the State of California within the applicable statute of
limitations.

New York Class: All consumers who purchased Roundup Products, containing
the statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the State of New York within the applicable statute of
limitations.

New Jersey Class: All consumers who purchased Roundup Products, containing
the statement "Glyphosate targets an enzyme found in plants but not in people or
pets" on the labeling, in the State of New Jersey within the applicable statute of

limitations.

Florida Class: All consumers who purchased Roundup Products, containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling, in the State of Florida within the applicable statute of limitations.

61.     All members of the Classes were similarly affected by the misrepresentation on the Roundup Products, and by Defendants' omissions, and the relief sought herein is for the benefit of Plaintiffs and members of the Classes.

**I.      Numerosity**

62.     On information and belief, Roundup Products are the best-selling residential herbicides in the United States.

63.     Based on the sales and popularity of the Roundup Products, the number of consumers in the Classes is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**II.     Commonality**

64.     There are numerous questions of law and fact common to Plaintiffs and the other Class Members that predominate over questions affecting only individual members, including:

    a.     Whether Defendants' representation that "Glyphosate targets an enzyme found in plants but not in people or pets" is false, misleading, or deceptive;

    b.     Whether Defendants omitted material information from the labels of the Roundup Products;

    c.     Whether practices related to the marketing, labeling, and sales of the

Roundup Products were unfair, deceptive, fraudulent, and/or unlawful;

d.      Whether Defendants breached an express warranty created through the labeling and marketing of the Roundup Products;

e.      Whether Defendants were unjustly enriched through the use of the misrepresentation and/or omission; and

f.      Whether Defendants' conduct economically injured Plaintiffs and Class Members.

**III.    Typicality**

65.    The claims asserted by Plaintiffs in this action are typical of the claims of the respective Classes, as they arise from the same course of conduct by Defendants, and the relief sought within the Classes is common to the Class Members. There are no defenses available to Defendants that are unique to Plaintiffs.

**IV.    Adequacy**

66.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class Members they seek to represent and they have retained counsel competent and experienced in both a wide variety of actions seeking to protect consumers from fraudulent and deceptive practices and class action litigation generally. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the members of the Classes.

**V.    Rule 23(b)(3) Allegations**

67.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of the Class Members is not practicable, and

questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Each Class Member has been damaged and is entitled to recovery because of the violations alleged herein.

68.     Moreover, because the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

69.     Plaintiffs are unaware of any difficulties in managing this case that should preclude class action.

70.     Common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendants deliberately made a false and misleading statement concerning the effect of glyphosate on humans and pets. That statement was material and caused injury to Class members. All of these common issues, which drive these claims, can be established with common evidence, untethered to individual issues. To the extent individual issues do exist, they are predominated by the numerous common issues raised in this Complaint, i.e., whether glyphosate does, in fact, target an enzyme found in humans and whether Defendants falsely represented otherwise.

## COUNT I
### Violations of Wisconsin's Deceptive Trade Practices Act

71.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

72.     Plaintiff Blitz brings this cause of action as a member of the Wisconsin Class.

73.     This cause of action is brought pursuant to Wisconsin's Deceptive Trade Practices

Act, Wisconsin Statutes § 100.18 (the "DTPA").

74.     Defendants' conduct violates Wis. Stat. § 100.18, which provides that no "firm, corporation or association … with intent to sell, distribute, increase the consumption of … any … merchandise … directly or indirectly, to the public for sale … shall make, publish, disseminate, circulate, or place before the public … in this state, in a … label … or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public … which … contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

75.     Plaintiff Blitz and Wisconsin Class Members "suffer[ed] pecuniary loss because of a violation" of 100.18. Wis. Stat. § 100.18(11)(b)(2).

76.     As alleged throughout this Complaint, Defendants deliberately engaged in deceptive and unlawful marketing in violation of Wisconsin law by representing to the Wisconsin Class that glyphosate targets an enzyme not found in humans, when in fact, it does.

77.     Plaintiff Blitz and the Wisconsin Class relied upon Defendants' deceptive and unlawful marketing practices.

78.     Plaintiff Blitz and Wisconsin Class Members are entitled to:

        a.     damages;

        b.     "costs, including reasonable attorney fees"; and

        c.     other relief which the court deems proper.

Wis. Stat. § 100.18(11)(b)(2)

79.     Plaintiff Blitz and Wisconsin Class Members are entitled to punitive damages. Wis. Stat. § 100.20(5).

## COUNT II
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

80.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

81.     Plaintiff Blair brings this cause of action on behalf of members of the Illinois Class.

82.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation . . . or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2] . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

83.     In using a false statement to market their Roundup Products, Defendants employed deception, fraud, false pretense, false promise, and misrepresentation.

84.     Defendants violated 815 ILCS 505/2, by:

   a.     Representing that Roundup Products have "characteristics, … benefits, [and] quantities that they do not have," 815 ILCS 510/2 (a)(5);

   b.     Representing that Roundup Products "are of a particular standard, quality, [and] grade" when "they are of another," 815 ILCS 510/2 (a)(7);

   c.     Labeling Roundup Products "with intent not to sell them as advertised," 815 ILCS 510/2 (a)(9); and

   d.     Engaging in "conduct which similarly creates a likelihood of confusion or misunderstanding," 815 ILCS 510/2 (a)(12).

85.     Defendants' conduct offends public policies and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

86.     Defendants' sale of the Roundup Products is an unfair method of competition, unconscionable act and practice, and an unfair and deceptive act and practice in the conduct of their business.

87.     Plaintiff Blair and the Illinois Class relied upon the Defendants' deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in humans, in deciding to purchase Roundup.

88.     Plaintiff Blair and Illinois Class Members suffered "actual damage" as a result of a violation of this Act. *See* 815 ILCS 505/10a(a).

89.     Plaintiff Blair and Illinois Class Members are entitled to

  a.  "actual economic damages";

  b.  "reasonable attorney's fees and costs"; and

  c.  "other relief which the court deems proper."

815 ILCS 505/10a (a).

90.     Plaintiff Blair and Illinois Class Members are entitled to punitive damages.

## COUNT III
### Violations of California's Consumers Legal Remedies Act

91.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

92.     Plaintiff Chick brings this cause of action against Defendant Monsanto on behalf of members of the California Class.

93.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

94.     Plaintiff Chick and the California Class Members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the falsely labeled Roundup Products for personal, family, or household purposes.

95.     Defendant Monsanto violated Cal. Civ. Code § 1770 by:

     a.     "Representing that goods . . . have . . . characteristics [or] benefits . . . which they do not have," Cal. Civ. Code § 1770(a)(5);

     b.     "Representing that goods . . . are of a particular standard, quality, or grade . . . if they are of another," Cal. Civ. Code § 1770(a)(7); and

     c.     "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9).

96.     Plaintiff Chick and the California Class Members suffered "damage as a result of" Defendant Monsanto's violation of Section 1770.

97.     Pursuant to Cal. Civ. Code § 1782, Plaintiff Chick, via letter dated March 15, 2017, provided notice to Monsanto of its violation of Section 1770 and of his intention to file this action if Monsanto did not agree to rectify said violation within 30 days. Monsanto responded via letter dated April 12, 2017, and declined to take any steps remedying the violation.

98.     Plaintiff Chick and the California Class relied upon Monsanto's deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in humans, in deciding to purchase Roundup.

99.     Plaintiff Chick and the California Class Members are entitled to:

     a.     "Actual damages";

     b.     "Punitive damages";

     c.     "Any other relief that the court deems proper," Cal. Civ. Code § 1780(a); and

     d.     "court costs and attorney's fees," Cal. Civ. Code § 1780(e).

## <u>COUNT IV</u>
**Violations of California's False Advertising Law (FAL)**

100.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

101.     Plaintiff Chick brings this cause of action on behalf of members of the California Class.

102.     This cause of action is brought pursuant to California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.

103.     The FAL prohibits any "firm, corporation or association . . . with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate . . . before the public in [California] . . . in . . . any advertising device . . . including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

104.     The misrepresentations by Defendants of the material facts detailed herein constitute false and misleading advertising, and therefore constitute a violation of FAL.

105.     The above acts of Defendants were likely to deceive reasonable consumers.

106.     The business practices alleged above are unlawful under the FAL, which forbids misleading and deceptive advertising.

107.     Plaintiff Chick and the other members of the California Class have suffered injury in fact and have lost money or property as a result of Defendants' violations of the FAL.

108.     As a result, Defendants have been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff Chick and members of the California Class, pursuant to California Business and Professions Code § 17535, are entitled to such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and restore to any

person in interest any money paid for the falsely labeled Products as a result of Defendants'
wrongful conduct.

<u>**COUNT V**</u>
**Violations of California's Unfair Competition Law**

109.   All of the foregoing paragraphs are re-alleged as if fully set forth herein.

110.   Plaintiff Chick brings this cause of action on behalf of members of the California
Class.

111.   This cause of action is brought pursuant to California's Unfair Competition Law
(the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

112.   By committing the acts and practices alleged herein, Defendants have engaged in
deceptive, unfair, and unlawful business practices in violation of the UCL.

113.   Defendants have violated the UCL's proscription against engaging in unlawful
conduct in that their conduct violates 21 U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code §
1750 et seq.; Cal. Com. Code § 2313; and Cal. Bus. & Prof. Code § 17500 *et seq.*

114.   There is no benefit to consumers or competition from Defendants deceptively
marketing and labeling their Roundup Products. Indeed, the harm to consumers and competition
from this conduct is substantial. Plaintiff Chick and the other members of the California Class
who purchased the Roundup Products suffered a substantial injury as alleged herein.

115.   Plaintiff Chick and the other members of the California Class who purchased the
Roundup Products had no way of reasonably avoiding the injury each of them suffered.

116.   Defendants' acts constitute unfair business practices under Cal. Bus. & Prof. Code
§ 17200 because the gravity of the consequences of Defendants' conduct outweighs any
legitimate reasons, justifications, and/or motives for engaging in such conduct, if any,
particularly considering the available legal alternatives which exist in the marketplace.

117.    Defendants' conduct is immoral, unethical, and unscrupulous, offends established public policy, and is substantially injurious to Plaintiff Chick and the other members of the Class.

118.    Defendants' violations continue to this day. Pursuant to California Business and Professions Code § 17203, Plaintiff Chick and the other members of the California Class seek such orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Roundup Products as a result of Defendants' wrongful conduct.

## COUNT VI
### Violation of New York General Business Law § 349

119.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

120.    Plaintiff Washington brings this cause of action on behalf of members of the New York Class.

121.    This cause of action is brought pursuant to New York General Business Law § 349.

122.    Defendants, in selling Roundup Products in the State of New York, have engaged in a consumer-oriented business practice or act.

123.    Defendants' labeling and advertising of Roundup Products as "target[ing] an enzyme found in plants but not in people or pets" misrepresents, tends to mislead, and omits material facts regarding the nature of Roundup.

124.    The representations omit the truth about Roundup, namely, that its active ingredient, glyphosate, targets an enzyme found in humans and animals, upon which they depend for their overall health.

125.    Roundup lacks the characteristics, benefits, styles and standards that Defendants state and imply in their labeling and advertisements.

126.    These misstatements, innuendo, and omissions are material and have the tendency to mislead.

127.    Defendants knowingly sold their Roundup Products not as advertised.

128.    Plaintiff Washington and members of the New York Class were in fact deceived and mislead. Defendants knew or should have known that because of their misrepresentations, reasonable consumers would believe that Roundup Products do not target an enzyme found in humans and animals, upon which they depend for their overall health.

129.    Because Defendants misrepresent the characteristics, ingredients, and benefits of Roundup; misrepresents the standard, quality, and grade of Roundup; misrepresent, fail to state, and use innuendo and ambiguity in ways which tend to mislead and deceive reasonable consumers with regard to material facts about Roundup; and advertise Roundup without the intent to sell it as advertised; Defendants' labeling and marketing of Roundup violates New York General Business Law § 349.

130.    Plaintiff Washington and the New York Class Members are entitled to:

        a.    Actual damages and/or statutory damages;

        b.    Punitive damages; and

        c.    Reasonable attorney's fees.

New York GBL § 349(h).

## COUNT VII
### Violations of New York' General Business Law § 350

131.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

132.    Plaintiff Washington brings this cause of action on behalf of members of the New

York Class.

133.    This cause of action is brought pursuant to New York General Business Law § 350.

134.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

135.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

136.    As sellers of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

137.    Defendants' representations made by statement, word, design, device, sound, or any combination thereof, and the extent to which Defendants' advertising fails to reveal material facts with respect to the Roundup Products, as described above, constitute false advertising in violation of the New York General Business Law.

138.    Defendants' false advertising was knowing and intentional.

139.    Defendants' actions led to direct, foreseeable and proximate injury to Plaintiff Washington and the New York Class.

140.    Plaintiff Washington and the New York Class relied upon the Defendants' deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in humans, in deciding to purchase Roundup Products.

141.    As a consequence of Defendants' deceptive marketing scheme, Plaintiff Washington and the other members of the New York Class suffered an ascertainable loss, insofar as they (i) would not have purchased the Roundup Products had the truth been known, or (ii)

would have purchased the Roundup Products on different terms, or would otherwise purchase a competing product, or (iii) paid a premium price for Roundup Products, and as a result of Defendants' conduct, received a product of less value than what they paid for.

142.    Plaintiff Washington and the New York Class Members are entitled to:

        a.      Actual damages and/or statutory damages;

        b.      Punitive damages; and

        c.      Reasonable attorney's fees.

New York GBL § 350-e(3).

## COUNT VIII
### Violations of New Jersey's Consumer Protection Act

143.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

144.    At all times relevant to this action, there was in full force and effect the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.*, which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

145.    N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . Whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

146.    At all relevant times, Plaintiff Moore, the New Jersey Class, and Defendants were "persons" within the meaning of N.J.S.A. § 56:8-1.

147.    Roundup, which was manufactured, marketed, and sold by Defendants, is merchandise within the meaning of the NJCFA, and Plaintiff Moore and the New Jersey Class are consumers within the meaning of the NJCFA and entitled to the statutory remedies made available therein.

148.     Defendants violated the NJCFA by representing that Roundup had characteristics, uses, and benefits which it did not have and which Defendants knew it did not have.

149.     Defendants violated the NJCFA by advertising and promoting Roundup in the manner described above, when they knew, or should have known, that those representations and advertisements were false and/or misleading.

150.     Defendants intended that Plaintiff Moore and the New Jersey Class would rely on their deception by purchasing the Roundup, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the NJCFA.

151.     Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and/or deceptive business practices within the meaning of the NJCFA.

152.     Defendants' conduct was malicious, fraudulent, and wanton, by providing misleading information concerning Roundup, indicating that glyphosate targets an enzyme found only in plants and ***not*** in people and pets, when in fact scientific evidence indicates that glyphosate targets an enzyme that *is* found in people and pets.

153.     Defendants' conduct has proximately caused damage to Plaintiff Moore and the New Jersey Consumer Class, in the form of, *inter alia*, monies spent to purchase Roundup.

154.     Had Defendants disclosed all material information regarding Roundup in their advertising, marketing, and/or labeling, Plaintiffs Moore and the New Jersey Class would not have purchased the Roundup, would have paid less, or would have placed a significantly different value on the product than what they received.

155.     As a result of Defendants' violations of the foregoing state consumer protection statute, Plaintiff Moore and the New Jersey Consumer Class are entitled to compensatory damages, full refund damages, punitive or exemplary damages, and/or attorneys' fees.

## COUNT IX
### Violations of Florida's Deceptive and Unfair Trade Practices Act

156.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

157.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"). The purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

158.    Plaintiff Dulniak is a consumer as defined by Fla. Stat. § 501.203 and Roundup is a good within the meaning of the FDUTPA. Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

159.    Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

160.    Defendants violated the FDUTPA by representing that Roundup had characteristics, uses, and benefits which it did not have and advertising Roundup as having characteristics, uses, and benefits which Defendants knows Roundup does not, i.e., that Roundup does, in fact, target an enzyme found in humans.

161.    Defendants violated the FDUTPA by advertising and promoting Roundup in the manner described above, when they knew, or should have known, that those representations and advertisements were false and/or misleading.

162.    Defendants intended that Plaintiff Dulniak and the Florida Class would rely on their deception by purchasing Roundup, unaware of the material facts described above, i.e., that

the product posed a significant risk to humans. This conduct constitutes consumer fraud within the meaning of the FDUTPA.

163.    Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and/or deceptive business practices within the meaning of the FDUTPA. Defendants violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

164.    Defendants' conduct was malicious, fraudulent, and wanton, by providing misleading information concerning Roundup, indicating that glyphosate targets an enzyme found only in plants and ***not*** in people and pets, when in fact scientific evidence clearly indicates that glyphosate targets an enzyme that ***is*** found in people and pets.

165.    Defendants' conduct has proximately caused damage to Plaintiff Dulniak and the Florida Class, in the form of, *inter alia*, monies spent to purchase Roundup.

166.    Had Defendants disclosed all material information regarding Roundup in their advertising, marketing, and/or labeling, Plaintiffs Dulniak and the Florida Class would not have purchased the Roundup, would have paid less, or would have placed a significantly different value on the product than what they received.

167.    Defendants' unfair and deceptive practices are likely to mislead—and have misled—consumers acting reasonably in the circumstances, and in violation of Fla. Stat. § 500.04, and 21 U.S.C. § 343.

168.    As a result of Defendants' violations of the foregoing state consumer protection statute, Plaintiffs Dulniak and the Florida Class are entitled to compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, and/or restitution.

## COUNT X
## Breach of Express Warranty

169.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

170.    Plaintiffs bring this claim on behalf of the National Class and the various state Classes set forth herein.

171.    Defendants provided Plaintiffs and members of the National Class with written express warranties including, but not limited to, warranties that the glyphosate present in Roundup "targets an enzyme found in plants but not in people or pets."

172.    Plaintiffs and members of the National Class purchased Roundup Products believing them to conform to the express warranties.

173.    Defendants breached these warranties.

174.    As a proximate result of the breach of warranties by Defendants, Plaintiffs and the members of the National Class did not receive goods as warranted and did not receive the benefit of the bargain. They have, therefore, been injured and have suffered damages in an amount to be proven at trial.

## COUNT XI
## Unjust Enrichment

175.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

176.    Plaintiffs bring this claim on behalf of the National Class and the State Classes set forth herein.

177.    To the extent required by law, this cause of action is pleaded in the alternative to Plaintiffs' contract-based claims.

178.    As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members.

179.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs and the National Class Members, in light of the fact that the Roundup Products they purchased were not what Defendants purported them to be.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed Classes, providing such relief as follows:

A.    Certification of the National Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiffs as representatives of the National Class; and appointment of their undersigned counsel as counsel for the National Class;

B.    Certification of Wisconsin, Illinois, California, New York, New Jersey, and Florida Classes under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiff Blitz as representative of the Wisconsin Class; appointment of Plaintiff Blair as representative of the Illinois Class; appointment of Plaintiff Chick as representative of the California Class; appointment of Plaintiff Washington as representative of the New York Class; appointment of Plaintiff Moore as representative of the New Jersey Class; appointment of Plaintiff Dulniak as representative of the Florida Class; and appointment of the undersigned counsel as counsel for each Class;

C.    An order declaring that Defendants are financially responsible for notifying members of the Classes of the pendency of this suit in the event the putative class is certified;

D.      An order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

E.      An order declaring Defendants' conduct to be in violation of applicable law;

F.      An order awarding restitution, disgorgement, punitive damages, monetary damages in an amount to be determined at trial, together with costs and disbursements, including reasonable attorneys' fees and costs as allowed by law;

G.      Prejudgment interest at the maximum rate allowable by law; and

H.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 20, 2017                            Respectfully submitted,

**TURKE & STRAUSS LLP**

Mary C. Turke
mary@turkestrauss.com
Samuel J. Strauss
sam@turkestrauss.com
613 Williamson Street #209
Madison, Wisconsin 53703
Telephone: (608) 237-1775

**RICHMAN LAW GROUP**
Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, New York
Telephone: (212) 687-8291

**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**

Michael L. Baum
mbaum@baumhedlund.com
R. Brent Wisner
bwisner@baumhedlund.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: (310) 207-3233

**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322

**ANDRUS WAGSTAFF LLP**
Aimee H. Wagstaff
aimee.wagstaff@andruswagstaff.com
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone: (720) 208-9414

**MILLER FIRM LLC**
Michael J. Miller
mmiller@millerfirmllc.com
108 Railroad Avenue
Orange, Virginia 22960
Telephone: (540) 672-4224

**WEITZ & LUXENBERG P.C.**
Robin L. Greenwald
rgreenwald@weitzlux.com
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500

**KENNEDY & MADONNA, LLP**
Robert F. Kennedy
48 Dewitt Mills Road
Hurley, New York 12443
Telephone: (845) 481-2622