## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS BLITZ, a Wisconsin consumer; KEVIN BLAIR, an Illinois consumer; GREGORY CHICK, a California consumer; MARIO WASHINGTON, a New York consumer; TERENCE D. MOORE, a New Jersey consumer; and RICHARD J. DULNIAK, a Florida consumer, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br>   v.<br><br>MONSANTO COMPANY, a Missouri Corporation; and SCOTTS MIRACLE-GRO COMPANY, an Ohio Corporation,<br><br>             Defendants. | Case No. 3:17-cv-00473 |

## DEFENDANT MONSANTO COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

RELEVANT FACTS ....................................................................................................... 4

    A.    The EPA's Oversight of Glyphosate and Its Marketing ........................................ 4

    B.    Plaintiffs' Allegations ....................................................................................... 5

PROCEDURAL POSTURE ............................................................................................ 7

ARGUMENT .................................................................................................................. 9

I.     The Western District of Wisconsin Lacks Personal Jurisdiction Over Monsanto with Respect to the Claims Asserted by Non-Wisconsin Plaintiffs .................................... 9

    A.    The Court Lacks General Jurisdiction Over Monsanto Because Wisconsin is Neither Monsanto's Principal Place of Business nor its State of Incorporation ..................................................................................................... 9

    B.    The Court Lacks Specific Jurisdiction Over Monsanto with Respect to the Claims Asserted by Non-Wisconsin Plaintiffs Because those Claims Do Not "Arise Out of or Relate to" Any Contacts with Wisconsin ................................. 10

II.    The Complaint Fails in its Entirety Because the Label is Not False or Misleading as a Matter of Law ............................................................................................................. 14

    A.    Claims on a Label are Only Actionable if They are Likely to Deceive the Reasonable Consumer ..................................................................................... 14

    B.    The Statement is Not Literally False as a Matter of Law. .................................... 16

    C.    The Statement is Not Misleading as a Matter of Law. ....................................... 16

III.    Plaintiffs' Claims Are Expressly Preempted ..................................................... 19

    A.    FIFRA Expressly Precludes Any State Labeling Requirements that Are "in Addition to or Different" from FIFRA's ............................................................ 19

    B.    Plaintiffs' Claims under the NY GBL § 349, § 350, the FDUTPA, and the ICFA are Barred Because the Roundup® Label is Specifically Authorized by the EPA .................................................................................................... 22

IV.    Plaintiffs' Breach of Express Warranty and unjust enrichment Claims Should be Dismissed for Additional Reasons ............................................................................... 24

    A.    Plaintiffs Blitz, Blair, Washington, Moore, and Dulniak have Failed to Allege they Complied with the UCC's Notice Requirements .............................. 24

    B.    Plaintiffs' Breach of Express Warranty Claims under New York and Florida Law Should be Dismissed for Lack of Privity ...................................................... 25

    C.    Plaintiff Moore's Unjust Enrichment Claim Fails Because He Does Not Allege a Direct Relationship with Monsanto ....................................................... 26

CONCLUSION ............................................................................................................. 26

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese,*
    2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) .......................................................17

*Am. Home Prods. Corp. v. Johnson & Johnson,*
    672 F. Supp. 135 (S.D.N.Y. 1987) ......................................................................23

*Anthony v. Country Life Mfg., LLC,*
    70 F. App'x 379 (7th Cir. 2003) ..........................................................................14

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005)........................................................................................20, 22

*Berryman v. Merit Property Mgmt., Inc.,*
    62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ..........................................................19

*Blair v. Monsanto Co.,*
    No. 3:17-cv-50123 (N.D. Ill. filed Apr. 24, 2017)...............................................7, 8

*Bober v. Glaxo Wellcome PLC,*
    246 F.3d 934 (7th Cir. 2001) .........................................................14, 15, 19, 24

*Bristol-Myers Squibb v. Superior Court of California,*
    137 S.Ct. 1773 (2017).................................................................................1, 2, 11

*Bristol-Myers Squibb v. Superior Court of California,*
    137 S.Ct. 1780 (2017).................................................................................9, 10, 13

*Brockey v. Moore,*
    107 Cal. App. 4th 86 (Cal. Ct. App. 2003) ..........................................................15

*Brownmark Films, LLC v. Comedy Partners,*
    682 F.3d 687 (7th Cir. 2012) .................................................................................6

*Burns v. Volkswagen of Am., Inc.,*
    468 N.Y.S. 2d 958 (N.Y. App. Div. 1983) ...........................................................25

*Carias v. Monsanto Co.,*
    No. 2:15-cv-03677 (E.D.N.Y. Sept. 30, 2016) ..................................................7, 21

*Christensen v. TDS Metrocom LLC,*
    2008 WL 5172804 (Wis. Ct. App. Dec. 11, 2008) ...............................................14

ii

*Cochran v. Oklahoma*,
  2017 WL 3314312 (D. Kan. Aug. 3, 2017) ........................................................................12

*Cooper v. Samsung Elecs. Am., Inc.*,
  2008 WL 4513924 (D.N.J. Sept. 30, 2008) .......................................................................26

*Covington v. Janssen Pham., Inc.*,
  2017 WL 3433611 (E.D. Mo. Aug. 10, 2017) ...................................................................12

*Cox v. Sears Roebuck & Co.*,
  647 A.2d 454 (N.J. 1994) ..................................................................................................14

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
  12 F. Supp. 2d 296 (S.D.N.Y. 1998) .................................................................................23

*Daimler AG v. Bauman*,
  134 S.Ct. 746 (2014) .........................................................................................................10

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ........................................................................14

*De Falco v. Vibram USA, Inc.*,
  2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) ....................................................................25

*Demedicis v. CVS Health Corp.*,
  2017 WL 569157 (N.D. Ill. Feb. 13, 2017) ................................................................12, 13

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) .............................................................................................10

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ..............................................................................................15

*In re Frito-Lay N.A., Inc. All Natural Litigation*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .............................................................16, 23

*In re General Mills Glyphosate Litigation*,
  2017 WL 2983877 (D. Minn. July 12, 2017) ........................................................15, 18, 19

*In re GNC Corp.*,
  789 F.3d 505 (4th Cir. June 19, 2015) .............................................................................2, 16

*Hairston v. S. Beach Beverage Co.*,
  2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................................................................15

*Hill v. Hoover Co.*,
  899 F. Supp. 2d 1259 (N.D. Fla. 2012) .............................................................................25

*Hinkle v. Continental Motors, Inc.*,
   2017 WL 3333120 (M.D. Fl. July 21, 2017) .......................................................12

*Jordan v. Bayer Corp.*,
   2017 WL 3006993 (E.D. Mo. July 14, 2017) .....................................................12

*JPB Installers, LLC v. Dancker, Sellew & Douglas, Inc.*,
   2017 WL 2881142 (M.D.N.C. July 6, 2017) .......................................................12

*Kipp v. Ski Enter. of Wis., Inc.*,
   783 F.3d 695 (7th Cir. 2015) .....................................................................9, 10

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp.2d 274 (S.D.N.Y. 2014).................................................................25

*Kuenzig v. Hormel Foods Corp.*,
   505 F. App'x 937 (11th Cir. 2013) ...................................................................23

*Kury v. Abbott Labs., Inc.*,
   2012 WL 124026 (D.N.J. Jan. 17, 2012) ...........................................................25

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .................................................14, 17

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
   481 F. App'x 622 (2d Cir. 2012) .....................................................................23

*McKinnis v. Kellogg USA*,
   2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) .......................................15, 18, 19

*Mirzaie v. Monsanto Co.*,
   2016 WL 146421 (C.D. Cal. Jan. 1, 2016) ................................................. *passim*

*O'Grady v. O'Grady*,
   2011 WL 13196250 (W.D. Wis. Feb. 15, 2011)....................................................4

*Oliver v. Ethicon, Inc.*,
   2017 WL 3193652 (S.D. W. Va. July 2017) .......................................................12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   674 N.E. 2d 741 (N.Y. 1995).....................................................................14, 17

*Phelps v. Hormel Foods Corp.*,
   2017 WL 1185514 (S.D. Fla. Mar. 24, 2017)......................................................23

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
   2017 WL 3129147 (E.D. Penn. July 24, 2017)...............................................12, 13

*Price v. Philip Morris, Inc.*,
    848 N.E. 2d 1 (Ill. 2005) ..................................................................................24

*Pye v. Fifth Generation, Inc.*,
    2016 WL 9046788 (N.D. Fla. Sept. 27, 2016) ................................................25

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .................................................18

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp.2d 893 (N.D. Ill. 2013) ...............................................................15

*Santana v. Cook Country Bd. Of Review*,
    679 F.3d 614 (7th Cir. 2012) .............................................................................6

*Semeran v. Blackberry Corp.*,
    2016 WL 406339 (D.N.J. Feb. 2, 2016) .........................................................26

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D. N.J. 2011) ..................................................................14

*Smith v. Hartz Mountain Corp.*,
    2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) ................................................22

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ..............................................................................14

*Turner, et al. v. Boehringer Ingelheim Pharma., Inc.*,
    2017 WL 3310696 (E.D. Mo. Aug. 3, 2017) ..................................................12

*Veal v. Citrus World, Inc.*,
    2013 WL 120761 (N.D. Ala. Jan. 8, 2013) .....................................................18

*Washington v. Monsanto Co.*,
    No. 2:17-cv-02216 (E.D.N.Y. June 19, 2017) ..............................................7, 8

*Weiss v. Rockwell Mfg. Co.*,
    293 N.E. 2d 375 (Ill. App. Ct. 1973) ..............................................................14

*Wilgus v. Hartz Mountain Corp.*,
    2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ..............................................21, 22

*Wilson v. Tuxen*,
    754 N.W. 2d 220 (Wis. App. Ct. 2008) ..........................................................24

**Statutes**

810 ILCS 5/1-201 ..............................................................................................25

810 ILCS 5/2-607(3)(a) ..............................................................................................24

815 ILCS 505/10b .......................................................................................................24

815 ILCS 510/2 ...............................................................................................................8

7 U.S.C. § 136(q)(1)(A) ...............................................................................................20

7 U.S.C. § 136a(a) ........................................................................................................20

7 U.S.C. § 136a(c)(5) .....................................................................................................4

7 U.S.C. § 136a(c)(5)(B) ..............................................................................................20

7 U.S.C. § 136v(b) ........................................................................................................20

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................8

Cal. Bus. & Prof. Code § 17500 *et seq.* ......................................................................8

Cal. Civ. Code §§ 1750–1785 .............................................................................8, 16, 18

Fla. Stat. §§ 501.201, *et seq.* ......................................................................................8

Fla. Stat. § 501.212(1) .................................................................................................23

Fla. Stat. § 672.607(3)(a) ............................................................................................24

GBL § 349 ...........................................................................................................8, 16, 22

GBL § 350 ...........................................................................................................8, 16, 22

GBL § 350-c ..................................................................................................................22

N.J.S.A. 56:8-1 *et seq.* ................................................................................................8

N.J. Stat. Ann. § 12A:2-607(3)(a) ...............................................................................24

N.Y. U.C.C. Law § 2-607(3)(a) ..............................................................................24, 25

Wis. Stat. § 100.18 ........................................................................................................8

Wis. Stat § 402.607(3)(a) ............................................................................................24

Wis. Stat. § 801.05 ........................................................................................................9

**Other Authorities**

40 C.F.R. § 152.50 (1999) ............................................................................................20

40 C.F.R. § 152.112(f) .................................................................................................20

40 C.F.R. § 156.10(a)(5)(ii) ........................................................................................20

F.R.C.P. 41(a)(1)(A)(i) ..................................................................................................8

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Monsanto Company ("Monsanto") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs Thomas Blitz's, Kevin Blair's, Gregory Chick's, Mario Washington's, Terence D. Moore's, and Richard J. Dulniak's ("Plaintiffs") Complaint.

## INTRODUCTION

In this action seeking the certification of putative classes in Wisconsin, Illinois, California, New York, New Jersey, Florida, and a national class, Plaintiffs claim that the labels on Monsanto's consumer Roundup® herbicide products are "false, misleading, and deceptive"— despite being reviewed and approved by federal regulators.  ECF No. 1, Compl. ¶ 3.  According to Plaintiffs, the labels' statement that "glyphosate targets an enzyme found in plants but not in **people or pets**" is "false" because glyphosate (Roundup®'s active ingredient) "targets" a specific enzyme found in various "***gut bacteria***" (despite gut bacteria never being mentioned in the labels).  Without explaining how Roundup® would ever touch "gut bacteria" when used as directed, Plaintiffs assert that glyphosate nevertheless "targets" that "gut bacteria," supposedly resulting in a cascade of speculated health effects.  *Id.* ¶¶ 3, 5, 6, 31.

Plaintiffs bring an eleven-count Complaint based on state consumer fraud statutes from around the country.  Accepting Plaintiffs' allegations as true, for the sole purpose of this motion to dismiss, the Complaint should be dismissed for several independent reasons.

***First, this Court lacks personal jurisdiction over Monsanto with respect to the claims asserted by every Plaintiff except for the Wisconsin Plaintiff.***  All of the Plaintiffs, except for one, make claims stemming from actions having nothing to do with the state of Wisconsin.  The assertion of general jurisdiction over any of Plaintiffs' claims is foreclosed because, as Plaintiffs admit, Monsanto is incorporated in Delaware and headquartered in Missouri.  ECF No. 1, Compl. ¶ 18.  Specific personal jurisdiction is also absent in light of the Supreme Court's recent

1

ruling in *Bristol-Myers Squibb v. Superior Court of California*, 137 S.Ct. 1773 (2017).  These Plaintiffs are residents of states *other than* Wisconsin, assert claims under the laws of their *home states*, and base those claims on activities that occurred *entirely within* their home states. Because these claims do not "arise out of or relate to" Monsanto's activities in Wisconsin, there is no "connection between the forum and the specific claims at issue" and the claims must be dismissed.  *Id.* at 1781.

  ***Second, the statement on the labels is not literally false as a matter of law, because virtually all experts agree that the statement is true.***  Where the alleged "false" statement is based on a scientific claim of literal falsity, the alleged falsity must be based on unanimous expert opinion.  *See In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. June 19, 2015) ("When litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false,'" dismissing false advertising claims.)  Here, it is almost universally accepted by regulators and the scientific community, both within and outside the United States, that glyphosate targets an enzyme ("EPSP synthase") not found in human or animal cells—just as the statement on Roundup®'s labels describes.   The only disagreement is from the purported "experts" upon whose opinions Plaintiffs base their whole Complaint (Anthony Samsel and Stephanie Seneff).  And even these "experts" admit that "the currently accepted dogma" is that the statement is true, and in fact, agree with Monsanto that the biological pathway that creates EPSP synthase is "absent in all mammals."  These "experts" admit that they are only a "vocal minority of experts" that believe the statement is false.  A claim of literal falsity cannot be based on the opinions of a distinct and agenda driven minority of experts.

*Third, it is implausible to believe that a reasonable consumer would interpret the label in the way suggested by Plaintiffs.*  Plaintiffs claim that average consumers reading the label would understand it to be making claims that glyphosate is safe for gut bacteria.  But the label says nothing about "gut bacteria," and Plaintiffs have pleaded no facts to plausibly suggest any reasonable consumer would misinterpret the Roundup® label as talking about bacteria living in one's gut.  Moreover, it is entirely unreasonable for anyone to be thinking about gut bacteria when reading a label for a pesticide, because no reasonable use of a bottle of Roundup® would ever "target" "gut bacteria."  After all, a reasonable consumer is going to be spraying the product on unwanted weeds as directed by the label—not *drinking* it.

*Fourth, Plaintiffs' claims are expressly preempted by FIFRA.*  The Federal Insecticide Fungicide and Rodenticide Act ("FIFRA") tasks the U.S. Environmental Protection Agency ("EPA") with the responsibility of determining whether a pesticide's label, such as the one on Roundup®, is "misbranded," i.e., "false or misleading."  On this very issue, a court has already dismissed claims for money damages and injunctive relief "with prejudice."  *Mirzaie v. Monsanto Co.*, 2016 WL 146421, at *2–3 (C.D. Cal. Jan. 1, 2016).  There is no reason that this Court should find any differently.

*Fifth, Plaintiffs' breach of express warranty claims should be dismissed because certain Plaintiffs have failed to provide Monsanto with notice before bringing suit.*  Notice of supposed breach is a condition precedent to obtaining relief for breach of a warranty under the Wisconsin, Illinois, New York, New Jersey, and Florida enactments of the U.C.C.  Because these Plaintiffs failed to provide such notice, their breach of express warranty claims must be dismissed.

***Sixth, certain Plaintiffs' claims for breach of express warranty and unjust enrichment should be dismissed because Monsanto does not directly sell Roundup® to consumers.*** Under New York and Florida law, privity of contract is required to make a breach of warranty claim. Similarly, privity is required for an unjust enrichment claim under New Jersey law. Since Monsanto does not sell Roundup® to consumers, there is no privity of contract.

## RELEVANT FACTS

### A.     The EPA's Oversight of Glyphosate and Its Marketing

Glyphosate is the active ingredient in Roundup®. ECF No. 1, Compl. ¶ 2. Glyphosate has been registered by the EPA since 1974, including renewed registration in 1993. *See* Declaration of Paul D. Cranley ("Cranley Decl."), ¶ 3, Ex. 2, Sept. 1993 Reregistration Eligibility Decision ("RED"): Glyphosate, http://www.epa.gov/pesticides/reregistration/REDs/old_reds/glyphosate.pdf.[1] In the process of registering a pesticide, the EPA also approves pesticide labels. *See* 7 U.S.C. § 136a(c)(5). The EPA has concluded that the use of glyphosate-based herbicides in accordance with label directions would "*not pose unreasonable risks or adverse effects to humans or the environment*." RED at 57 (emphasis added).

The labels at issue are registered by the EPA as (1) EPA Reg. No. 71995-25; (2) EPA Reg. No. 71995-29; and (3) EPA Reg. No. 71995-33. On February 28, 2008, the EPA found that the labeling at issue "is acceptable" and approved it for commercial use, including the statement at issue: "Glyphosate targets an enzyme found in plants but not in people or pets." *See* Cranley Decl., ¶ 4, Ex. 3, Feb. 28, 2008 Approval at 1, 17,

---

[1] On a motion to dismiss, a court "may take judicial notice of documents in the public record without converting a motion to dismiss into a motion for summary judgment." *O'Grady v. O'Grady*, 2011 WL 13196250, at *2 (W.D. Wis. Feb. 15, 2011), *aff'd on other grounds*, 445 F. App'x 870 (7th Cir. 2011) (*citing Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008)).

http://www3.epa.gov/pesticides/chem_search/ppls/071995-00033-20080228.pdf;    *see    also*
Cranley Decl., ¶ 5, Ex. 4 at 1, 10 (accepting the master label for 71995-25 on July 21, 2008);
Cranley Decl., ¶ 6, Ex. 5 at 1, 12 (accepting the master label for 71995-29 on July 21, 2008.)  As
recently as March 16, 2014, the EPA reviewed the labeling at issue and found it "acceptable,"
again approving both the label and the specific statement at issue, as well as the product itself,
for    commercial    use.    Cranley    Decl.    ¶ 7,    Ex.    6    at    1,    16,
https://www3.epa.gov/pesticides/chem_search/ppls/071995-00033-20140307.pdf.

### B.      Plaintiffs' Allegations

Glyphosate kills plants by inhibiting an enzyme called EPSP synthase.  ECF No. 1,
Compl. ¶ 29.  EPSP synthase is part of a process in plants called the Shikimate Pathway (a multi-
step chemical pathway), which creates aromatic amino acids that plants need to live.  *Id.*  When
EPSP synthase is inhibited, the Shikimate Pathway is disrupted, and the plants are unable to
generate these essential amino acids.  *Id.*

It is universally accepted that people and animal cells do not have such a pathway.  Here,
Plaintiffs do not claim that people or pets have the Shikimate Pathway, or produce EPSP
synthase, or that EPSP synthase is in animal cells, or that EPSP synthase performs any function
whatsoever in animals, including humans.  Instead, Plaintiffs allege that the phrase appearing on
the Roundup® consumer labels—"*Glyphosate targets an enzyme found in plants but not in
people or pets*"—is false, misleading, and deceptive because EPSP synthase is present in certain
bacteria that may live in the guts of humans and animals.  *Id.* ¶¶ 3, 30.

Plaintiffs make this assertion based on the work of purported experts Anthony Samsel
and Stephanie Seneff, whom Plaintiffs cite in their Complaint.  ECF No. 1, Compl. ¶ 30 n.7.  But
even these "experts" admit that the "***currently accepted dogma is that glyphosate is not harmful
to humans or to any mammals because the shikimate pathway is absent in all animals***."

Cranley Decl., ¶ 2, Ex. 1, Anthony Samsel & Stephanie Seneff, *Glyphosate's Suppression of Cytochrome P450 Enzymes and Amino Acid Biosynthesis by the Gut Microbiome: Pathways to Modern Diseases*, 15(4) Entropy 1416 at 1417 (2013) (emphasis added), available at http://www.mdpi.com/1099-4300/15/4/1416 (cited in ECF No. 1, Compl. ¶ 30 n. 7).[2]  In fact, these "experts," upon whose opinions Plaintiffs' entire Complaint is based, admit that they are merely the "***vocal minority***" who believe what Plaintiffs assert.  *Id*. (emphasis added).[3]

In addition, Plaintiffs make no allegations about how glyphosate would enter the human body, or "target" "gut bacteria," if one used Roundup® in accordance with the label's directions when spraying weeds around one's home.  Indeed, Roundup® is labeled as a "Weed & Grass Killer."  *See* ECF No. 1, Compl. ¶¶ 2, 35.  It is not meant to be consumed.

---

[2] In the Seventh Circuit, a court may properly consider on a motion to dismiss documents that were referred to in the complaint, if they are central to the plaintiffs' claims and undisputedly authentic.  *Santana v. Cook Country Bd. Of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (holding that a news segment was not a matter outside of the pleadings even though Plaintiff did not attach the segment to their complaint because it was a document to which the complaint had referred, was concededly authentic, and central to the plaintiffs' claim).  *See also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

[3] The publisher of Samsel and Seneff's article has added a note to the article that states that "[t]he editors of the journal have been alerted to concerns over potential bias in opinions and bias in the choice of citation sources used in this article…. Since the nature of the claims against the paper concern speculation and opinion, and not fraud or academic misconduct, the editors would like to issue an *Expression of Concern* to make readers aware that the approach to collating literature citations for this article was likely not systematic and may not reflect the spectrum of opinions on the issues covered by the article."  http://www.mdpi.com/1099-4300/15/4/1416

## PROCEDURAL POSTURE

Plaintiffs' claims are not new. This very issue was first brought before the U.S. District Court for the Central District of California in 2015. The Court there dismissed the case with prejudice. *See Mirzaie v. Monsanto Co.*, 2016 WL 146421, at *1–2 (C.D. Cal. Jan. 1, 2016).

Before filing this Complaint, Plaintiff Chick served a demand letter on Monsanto, and threatened to bring a lawsuit in California federal court, despite the ruling that had already been made in *Mirzaie*. *See* Cranley Decl., ¶ 8, Ex. 7. Monsanto responded to that letter, and cited the *Mirzaie* case. Cranley Decl., ¶ 9, Ex. 8. Instead of filing in California, as first threatened, on April 24, 2017, Plaintiffs Chick and Blair commenced a punitive class action in the U.S. District Court for the Northern District of Illinois, asserting claims under Illinois and California law, and seeking to certify Illinois and California classes. *See* Cranley Decl., ¶ 11, Ex. 10, Compl., Dkt. 1, *Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. filed Apr. 24, 2017). Monsanto filed a motion to dismiss that case on May 26, 2017. *See* Cranley Decl. ¶ 12, Ex. 11, Def. Monsanto Co.'s Mot. to Dismiss Pls.' Compl., Dkt. 11, *Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. June 21, 2017).

On April 12, 2017, Plaintiff Washington commenced a similar punitive class action in the U.S. District Court for the Eastern District of New York, asserting claims under New York law, and seeking to certify a New York class. *See* Cranley Decl. ¶ 13, Ex. 12, Compl., Dkt. 1, *Washington v. Monsanto Co.*, No. 2:17-cv-02216 (E.D.N.Y. June 19, 2017). Plaintiff Washington was previously a named plaintiff in *Carias v. Monsanto Co.*, No. 2:15-cv-03677 (E.D.N.Y. Sept. 30, 2016), where he made the same allegations. *See* Cranley Decl. ¶ 14, Ex. 13, Compl., Dkt. 1 ¶¶ 11–14, *Carias*, No. 2:15-cv-03677. Plaintiff Washington was subsequently dropped as a named plaintiff from the *Carias* case when the Complaint was amended to add strict liability and negligence claims, and only plaintiffs who were alleging physical injuries from

exposure to Roundup® were included. *See* Cranley Decl. ¶ 15, Ex. 14, Dkt. 16 ¶¶ 7–63, 165–200, *Carias*, No. 2:15-cv-03677.[4]   On May 23, 2017, Monsanto served a motion to dismiss on Plaintiff Washington.  Cranley Decl., ¶ 10, Ex. 9.

Rather than oppose Monsanto's motions to dismiss, Plaintiffs Chick, Blair, and Washington voluntarily dismissed their complaints. *See* Cranley Decl. ¶ 16, Ex. 15, Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), Dkt. 23, *Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. June 21, 2017); *id.* at ¶ 17, Ex. 16.   Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), Dkt. 12, *Washington v. Monsanto Co.*, No. 2:17-cv-02216 (E.D.N.Y. June 19, 2017).   Then, on June 20, 2017, Plaintiffs Chick, Blair, and Washington, along with a couple of additional Plaintiffs, filed this putative class action, based on the same allegations.   This time, Plaintiffs filed in this Court in Wisconsin, bringing an eleven-count Complaint to include claims based upon various state laws:

- **Wisconsin** - Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("WDTPA");
- **Illinois** - Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/2 ("Illinois CFA");
- **California** - Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1785 (the "CLRA"); False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL"); Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL");
- **New York** - General Business Law ("GBL") § 349; New York GBL § 350;
- **New Jersey** - Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"); and
- **Florida** - Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").

Plaintiffs also assert claims of breach of express warranty and unjust enrichment.  Plaintiffs seek to certify statewide classes in Wisconsin, Illinois, California, New York, New Jersey, and Florida, as well as a national class.  ECF No. 1, Compl. ¶¶ 59, 60.  Moreover, despite alleging no

---

[4] Presumably, Plaintiff Washington was dropped as a named plaintiff in *Carias* because he alleged no physical injury or harm, and did not fit into the class alleged, namely those who "purchased Roundup, or Roundup-related products in New York and who suffered a personal injury as a direct result of exposure to Roundup."  *Id.* at ¶ 145.

harm to their health, Plaintiffs seek a declaration that the Roundup® labels violate the laws of Wisconsin, Illinois, California, New York, New Jersey, and Florida, and seek restitution, disgorgement, punitive damages, and other monetary damages.  *Id.* at Prayer for Relief.

## ARGUMENT

I.   **THE WESTERN DISTRICT OF WISCONSIN LACKS PERSONAL JURISDICTION OVER MONSANTO WITH RESPECT TO THE CLAIMS ASSERTED BY NON-WISCONSIN PLAINTIFFS**

Under Wisconsin law, a court may only exercise personal jurisdiction over a nonresident defendant if doing so is consistent with Wisconsin's long-arm statute, Wis. Stat. § 801.05, and the Due Process Clause of the Fourteenth Amendment.  *Kipp v. Ski Enter. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).  Jurisdiction over nonresident defendants is consistent with the Due Process Clause where the defendant has "certain minimum contacts with the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kipp*, 783 F.3d at 697 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Such minimum contacts can exist under two theories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction.  *See Kipp*, 783 F.3d at 697.  Regardless of the theory asserted, "the plaintiff bears the burden of demonstrating the existence of jurisdiction" when a defendant moves to dismiss for lack of personal jurisdiction.  *Id*. at 697 (quoting *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).  Here, Plaintiffs cannot show that this Court has personal jurisdiction for Non-Wisconsin Plaintiffs' claims against Monsanto based on either general or specific jurisdiction.

A.   **The Court Lacks General Jurisdiction Over Monsanto Because Wisconsin is Neither Monsanto's Principal Place of Business nor its State of Incorporation**

Because "[a] court with general jurisdiction may hear *any* claims against that defendant," *Bristol-Myers Squibb v. Superior Court of California*, 137 S.Ct. 1780 (2017) [hereinafter *BMS*],

the Supreme Court has emphasized that general jurisdiction "should not lightly be found." *Kipp*, 783 F.3d at 698. General jurisdiction exists only where a defendant's "affiliations with the State in which suit is brought are *so constant and pervasive* as to render it *essentially at home* in the forum State." *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (emphasis added). "Thus far, the Court has identified only two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation." *Kipp*, 783 F.3d at 698 (citing *Daimler*, 134 S.Ct. at 760).

Plaintiffs do not allege that Monsanto has such contacts in Wisconsin. Rather, Plaintiffs plead that "Monsanto Company was and is a Delaware corporation headquartered in St. Louis, Missouri." ECF No. 1, Compl. ¶ 18. Although Monsanto's products are sold by distributors around the world, it lacks the "limited set of affiliations" with Wisconsin that would "render [it] amenable to 'general jurisdiction in that state.'" *BMS*, 137 S.Ct. at 1780 (quoting *Daimler*, 134 S.Ct. at 760). Monsanto is *only* subject to general personal jurisdiction in Delaware and Missouri. *See Kipp*, 783 F.3d at 698.

**B.    The Court Lacks Specific Jurisdiction Over Monsanto with Respect to the Claims Asserted by Non-Wisconsin Plaintiffs Because those Claims Do Not "Arise Out of or Relate to" Any Contacts with Wisconsin**

Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *BMS*, 137 S.Ct. at 1780. There are "three essential requirements" for establishing specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted).

10

Just months ago, in *BMS,* the Supreme Court elaborated on the second element of the test: the relatedness requirement.  There, the Court ruled that a California state court did not have personal jurisdiction over a nonresident defendant with respect to the nonresident plaintiffs' products liability, negligent representation, and misleading advertising claims arising under California law.  137 S.Ct. at 1777, 1783.  The Court reaffirmed "settled principles" of specific personal jurisdiction, under which "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In other words, "'the *suit*' must 'arise out of or relate to the defendant's contacts with the *forum*.'"  *Id.* at 1780 (emphasis in original.)

*BMS* involved allegations by both California residents and nonresidents under California law in a California state court.  The defendant, BMS, was neither headquartered nor incorporated in the state.  *Id.* at 1777–79.  The plaintiffs all alleged that they had been injured by BMS's prescription drug, Plavix.  *Id.* at 1777.  However, the nonresident plaintiffs did not allege any connection between their claims and BMS's activities in California.  The nonresident plaintiffs were not prescribed Plavix in California, had not ingested Plavix in California, and were not injured by Plavix in California.  *Id.* at 1778.  Nor did BMS develop the drug in California, create a marketing strategy for the drug in California, or "manufacture, label, package, or work on the regulatory approval of the product in California."  *Id.*  Although "*other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents"—the connection between the forum state and the nonresidents' specific claims was entirely lacking.  *Id.* at 1781.  It did not matter that BMS had conducted

11

research in California on matters unrelated to Plavix. *Id.* Without an allegation that tied the nonresidents' specific claims to BMS's activities in California, the Court held personal jurisdiction did not exist over the nonresident defendant. *Id.*

Courts around the country have similarly dismissed class action claims (like those asserted here) brought under the laws of foreign states where no connection between the claims and the nonresident defendant's conduct in the forum state existed. For example, in *Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *4 (N.D. Ill. Feb. 13, 2017), an Illinois federal court dismissed putative class action claims under the consumer fraud statutes of eight states because the "potential out-of-state class members' claims arise from Defendants' conduct in those states" and the court had "no jurisdiction over claims based on out-of-state consumer fraud laws." Likewise, in *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 3129147, at *1, 9 (E.D. Penn. July 24, 2017), a Pennsylvania district court dismissed claims arising under the consumer protection laws of 48 states and two territories because the "Non-Pennsylvania Claims do not arise out of or relate to any of Selling Defendants' conduct within the forum state."[5]

---

[5] *See also Jordan v. Bayer Corp.*, 2017 WL 3006993, at *4 (E.D. Mo. July 14, 2017) (dismissing the claims of non-Missouri plaintiffs because the Missouri federal court lacked personal jurisdiction over their claims where there was "no connection between the forum and the specific claims at issue") (*quoting BMS*, 137 S.Ct. at 1781); *Covington v. Janssen Pham., Inc.*, 2017 WL 3433611, at *5 (E.D. Mo. Aug. 10, 2017) (dismissing the claims of 53 out of 54 plaintiffs because their claims did not arise out of the defendants' contacts with the state and thus the court lacked personal jurisdiction over defendants); *Hinkle v. Continental Motors, Inc.*, 2017 WL 3333120, at *11 (M.D. Fl. July 21, 2017) (granting defendant's motion to dismiss for lack of personal jurisdiction because the plaintiffs' claims had "nothing to do with anything" that occurred in Florida); *Oliver v. Ethicon, Inc.*, 2017 WL 3193652, at *2-3 (S.D. W. Va. July 2017) (applying Minnesota law to grant defendant's motion to dismiss for lack of personal jurisdiction when there was "no connection" between the defendant's conduct in the forum state and plaintiff's injuries); *JPB Installers, LLC v. Dancker, Sellew & Douglas, Inc.*, 2017 WL 2881142, at *7 (M.D.N.C. July 6, 2017) (granting defendant's motion to dismiss because "this court lacks specific jurisdiction over Fidelity because this suit does not arise out of nor is it related to Fidelity's contacts with North Carolina"); *Cochran v. Oklahoma*, 2017 WL 3314312, at *4-5 (D. Kan. Aug. 3, 2017) (recommending the district court dismiss plaintiff's complaint for lack of

As in *Demedicis* and *Plumbers' Local*, there are no grounds for asserting personal jurisdiction over Monsanto. Non-Wisconsin Plaintiffs' claims do not arise out of or relate to events that are factually related to Wisconsin. *See Demedicis*, 2017 WL 569157, at *4; *Plumbers' Local*, 2017 WL 3129147, at *9. Not only do non-Wisconsin Plaintiffs not allege that they bought Roundup® in Wisconsin, read the label at issue or were exposed to the allegedly deceptive advertising in Wisconsin, or were in any way deceived in Wisconsin, non-Wisconsin Plaintiffs *expressly* allege that they bought and used Roundup®, and relied on Monsanto's advertising, *in their home states*. *See* ECF No. 1, Compl. ¶¶ 23, 24, 25, 26, 27. Non-Wisconsin Plaintiffs thus affirmatively disclaim any notion that their "suit . . . arise[s] out of or relate[s] to [Monsanto's] contacts with the *forum*." *BMS*, 137 S.Ct. at 1780 (internal quotation marks omitted). Moreover, non-Wisconsin Plaintiffs here do not even assert claims under Wisconsin law. Instead, each non-Wisconsin Plaintiff alleges violations of the laws of his home state. ECF No. 1, Compl. ¶¶ 81–82, 92–93, 101–02, 110–11, 120–21, 132–33, 155, 168. Such an omission is telling, and undercuts any argument that non-Wisconsin Plaintiffs' suits "arise out of or relate" in any way to the state of Wisconsin.[6] Thus, this court lacks jurisdiction over non-Wisconsin Plaintiffs' claims and they should be dismissed.

---

personal jurisdiction when "all of the factual allegations [underlying the complaint] occurred in Oklahoma"); *Turner, et al. v. Boehringer Ingelheim Pharma., Inc.*, 2017 WL 3310696, at *3 (E.D. Mo. Aug. 3, 2017) (dismissing for lack of personal jurisdiction claims of non-Missouri plaintiffs "who have not alleged that they were prescribed, purchased, ingested, or were injured by Pradaxa in Missouri").

[6] Neither Monsanto's nationwide advertising efforts nor the fact that Plaintiff Blitz is alleged to have purchased Roundup® in Wisconsin provide support for Plaintiffs' assertion of jurisdiction. The Court in *BMS* squarely rejected a "sliding scale approach" wherein specific personal jurisdiction might be found if the claims of nonresident plaintiffs were similar enough to the claims of resident plaintiffs. *BMS*, 137 S.Ct. at 1781. Such an approach would "expand[] specific jurisdiction to the point that, for a large category of defendants, it becomes indistinguishable from general jurisdiction." *Id.* at 1779.

## II.   THE COMPLAINT FAILS IN ITS ENTIRETY BECAUSE THE LABEL IS NOT FALSE OR MISLEADING AS A MATTER OF LAW

### A.   Claims on a Label are Only Actionable if They are Likely to Deceive the Reasonable Consumer

The linchpin of an action for false advertising is whether a statement in advertising is "likely to deceive" the consumer. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003).[7]  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers *viewing it in an unreasonable manner.*"  *Id.* at 508 (emphasis added).  "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, *acting reasonably in the circumstances*, could be misled."  *Id.* (emphasis added); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 674 N.E. 2d 741, 745 (N.Y. 1995) (noting that deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances").

As to the express warranty claims, a plaintiff must show that the statement in question is an "affirmation of fact" and "is false." *Weiss v. Rockwell Mfg. Co.*, 293 N.E. 2d 375, 381 (Ill. App. Ct. 1973).[8]  Although the issue of consumer deception is typically a factual question, the

---

[7] *See also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (Illinois law); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (New York law); *Christensen v. TDS Metrocom LLC*, 2008 WL 5172804, at *3 (Wis. Ct. App. Dec. 11, 2008); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 674 N.E. 2d 741, 745 (N.Y. 1995); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

[8] *See also Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 383 (7th Cir. 2003) ("[A] plaintiff must allege that a product failed to conform with an affirmative statement of fact or promise or an express description of the goods."); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 103 (D. N.J. 2011) (noting that "goods [must] ultimately [] not conform to the affirmation, promise, or description" to state express warranty claim under New Jersey law).  Where there is no misrepresentation on a product label, there is no breach of an express warranty.  *Anthony*, 70 F. App'x at 383 (affirming dismissal under Illinois law where "the products displayed . . .

Court can properly make this determination and resolve such claims based on its review of the product packaging. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (dismissing Illinois consumer fraud claims based on review of product packaging information and other information appended to the complaint, because "[a]s a matter of law, none of the three statements on which Bober based his CFA claims is deceptive"); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."); *see Reid v. Unilever U.S., Inc.*, 964 F. Supp.2d 893, 918–19 (N.D. Ill. 2013) (dismissing in part a complaint under Illinois law where it found no deception based on a review of the packaging); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal. Ct. App. 2003) (agreeing that "the primary evidence in a false advertising case is the advertising itself").   "Thus, where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012); *see In re General Mills Glyphosate Litigation*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (granting motion to dismiss where it was "not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label").

---

consisted of exactly what was disclosed on the labels"); *In re General Mills Glyphosate Litigation*, 2017 WL 2983877, at *7 (D. Minn. July 12, 2017) ("Plaintiffs failed to plausibly allege a breach of warranty . . . .   The product packaging states 'Made with 100% Natural Whole Grain Oats.' And there is no dispute that the Products were made with whole grain oats that, themselves, are '100% Natural.' . . .   [T]here is no allegation that the oats, themselves, are not natural."); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing express warranty claims where the complained of statement on a cereal box was "entirely accurate").

**B.      The Statement is Not Literally False as a Matter of Law.**

Where the alleged "false" statement is based on a scientific claim of literal falsity, the alleged falsity must be based on unanimous expert opinion.  The Fourth Circuit's decision in *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), is instructive.  There, the plaintiffs asserted that certain scientific claims on nutritional supplement labels were false under a variety of state laws, including California's UCL and CLRA, Illinois's CFA, Florida's DPUTA, New York's GBL §§ 349 and 350, and New Jersey's CFA.  *Id.* at 510.  The Fourth Circuit held that "in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that ***all reasonable experts in the field agree that the representations are false.***"  *Id.* at 516 (emphasis added).  Because the complaint did not plead "that *all* scientists agree that glucosamine and chondroitin are ineffective at providing the promised joint health benefits," the complaint was properly dismissed.  *Id*. at 515.

Here, Plaintiffs' Complaint is based on the work of purported experts Samsel and Seneff, whom Plaintiffs cite in their Complaint.  ECF No. 1, Compl. ¶ 30 n.7.  Rather than claim that "all reasonable experts" agree with Samsel and Seneff, they admit the opposite (i.e., that the statement is accurate): the "***currently accepted dogma is that glyphosate in not harmful to humans or to any mammals because the shikimate pathway is absent in all animals***."  Cranley Decl. ¶ 2, Ex. 1 (emphasis added.)  In fact, they admit that they are the "***vocal minority***" rather than a consensus of all experts.  *Id*.  A "minority" is well short of the standard that "*all* scientists [must] agree" before a statement on a label can be considered literally false under the law.  *In re GNC Corp.*, 789 F.3d at 515.

**C.      The Statement is Not Misleading as a Matter of Law.**

Even under their own subjective misinterpretation of the Roundup® label, Plaintiffs do not plead any facts to support their claim that the statement is misleading.  To do so, Plaintiffs

would have to plead facts showing that the Roundup® consumer actually believes that glyphosate "targets" an enzyme in "gut bacteria."  But the Complaint does not allege how a consumer using the Roundup® product, following label instructions or through any reasonable use, would ever *ingest* the product or how the product would otherwise "target" "gut bacteria." After all, a reasonable consumer is going to be spraying the product on unwanted weeds as directed by the label—not *drinking* it.  A "reasonable consumer acting reasonably under the circumstances" would use Roundup® to spray and kill weeds around his home.  *Oswego Laborers' Local*, 674 N.E. 2d at 745.  Plaintiffs cannot—and do not—allege that any reasonable use of Roundup® would cause the product to "target" "gut bacteria," and therefore it is unreasonable to believe that consumers would understand the labels as having anything to do with gut bacteria.

Indeed, the Complaint does not plead that a reasonable consumer, reading the complained-of statement on the label, would believe that statement is talking about "gut bacteria" or would have any expectations, assumptions, or misconceptions about "gut bacteria" based on that statement.  Dismissal of misleading labeling claims is appropriate in cases where it is implausible to believe that a reasonable consumer would interpret the label in the way suggested by the plaintiffs.  *See Lavie*, 105 Cal. App. 4th at 507 ("A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed."); *see also In re 100% Grated Parmesan Cheese*, 2017 WL 3642076, at *6 (N.D. Ill. Aug. 24, 2017) ("Cheese is a dairy product, after all, and reasonable consumers are well aware

that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time.").[9]

In *In re General Mills Glyphosate Litigation*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017), for example, the court dismissed the plaintiffs' complaint alleging false advertising and breach of express warranty as implausible on its face. The plaintiffs alleged that the label "Made with 100% Natural Whole Grain Oats" was misleading because the products (granola bars, breakfast biscuits, and oatmeal squares) contained small amounts of glyphosate, "a synthetic chemical [] that a reasonable consumer would not expect" to be found in those products. *Id.* at *5. The court disagreed. It was implausible, the court determined, "that a reasonable consumer would believe that a product labelled as having one ingredient—oats—that is '100% Natural' could not contain a trace amount of glyphosate that is far below the amount permitted for organic products." *Id.* at *5. No "reasonable consumer" would interpret the label to mean that there was no trace amount of glyphosate in the products. *Id.* at *6.

Likewise, in *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *3–5 (C.D. Cal. Sept. 19, 2007), the court dismissed claims under the California UCL, FAL, and CLRA, and claims for breach of express warranty, when consumers alleged they were deceived by the use of the word "Froot," pictures of "ring-shaped cereal resembling actual fruit," and the words "NATURAL

---

[9] *Veal v. Citrus World, Inc.*, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) ("The plaintiff makes much ado about believing the packaged containers of orange juice contained 'fresh squeezed' orange juice. As a matter of common sense, whatever is in a container on a store shelf with an expiration date some weeks hence cannot contain 'fresh' anything. Even if the product began its life as 'fresh squeezed orange juice,' common sense dictates that by the time the same makes its way to a grocery store and sits on a shelf waiting purchase, it is no longer 'fresh.'"); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Plaintiffs' theory of the case is that the packaging suggests the product is healthy and contains a significant amount of vegetables, because the packaging boasts that the crackers are made with real vegetables and depicts vegetables. The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.").

FRUIT FLAVORS" on a "Froot Loops" cereal box.  The court concluded that "[n]o reasonable consumer would view the trademark 'FROOT LOOPS' name as describing the ingredients of cereal," and that the "allegation that the cereal pieces themselves resemble fruit is not rational, let alone reasonable."  *Id.* at *4.  The ingredients to the cereal listed on the box did not include fruit and the "brightly colored rings . . . in no way resemble[d] any currently known fruit."  *Id.* Moreover, because "FDA regulations permit illustrations of fruit on product label to indicate that product's 'characterizing flavor,'" the court concluded that the "[p]laintiffs [could not] claim surprise over these labels, which have long been required on food products and are familiar to a reasonable consumer."  *Id.* at *4.

As in *General Mills* and *McKinnis*, there is nothing in the label that remotely would cause a misapprehension about gut bacteria.  The distinction that the label draws is that glyphosate targets an enzyme found *in plants* and not *in people* and *pets*.  The label says nothing about "gut bacteria"; it makes no claims one way or the other about them.  It is implausible to suggest that a reasonable consumer reading the Roundup® label for use in spraying weeds in one's lawn would be misled into believing that the statement has anything to do with microbes in one's intestines.[10]

## III.    PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED

### A.    FIFRA Expressly Precludes Any State Labeling Requirements that Are "in Addition to or Different" from FIFRA's

While Plaintiffs attack Monsanto's labeling as violating various state statutes, Plaintiffs make no allegation that the Roundup® labels violate any particular section of FIFRA or EPA regulations.  Nor can Plaintiffs, as the entirety of the labeling package was accepted by the EPA

---

[10] Under California and Illinois law, claims for unjust enrichment "rise[] and fall[]" with the consumer fraud claims.  *See Bober*, 246 F.3d at 943; *Berryman v. Merit Property Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 188 (Cal. Ct. App. 2007).  Because Plaintiffs' consumer fraud claims under Illinois and California law should be dismissed for the reasons just discussed, Plaintiffs' claims for unjust enrichment under California and Illinois law should fail as well.

as being in compliance with FIFRA.  *See* Cranley Decl. ¶¶ 4–7, Exs. 3–6.  Because application of these statutes would impose a different "labeling requirement" than FIFRA, Plaintiffs' claims are preempted.

Under FIFRA, all pesticides sold in the United States must be registered with the EPA. *See* 7 U.S.C. § 136a(a).  In the registration application, manufacturers submit draft label language addressing a number of different topics, including the ingredients, directions for use, and any claims they intend to make on the label.  40 C.F.R. § 152.50 (1999).  Prior to registering a pesticide, the EPA must find that the pesticide's labeling complies with FIFRA's requirements. 7 U.S.C. § 136a(c)(5)(B).  FIFRA's requirements include a requirement that the pesticide is not "misbranded," 40 C.F.R. § 152.112(f), meaning that it is not "false or misleading," 7 U.S.C. § 136(q)(1)(A); 40 C.F.R. § 156.10(a)(5)(ii), and the EPA reviews labels for compliance with that standard.  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 438 (2005) (discussing these requirements).  To ensure the uniformity and the supremacy of the EPA's role in pesticide labeling, FIFRA provides that a state "*shall not impose* or continue in effect *any* requirements for *labeling . . . in addition to or different from* those required under this subchapter."  7 U.S.C. § 136v(b) (emphasis added).

This very issue has already been decided by the Central District of California.  In *Mirzaie v. Monsanto*, the plaintiff sought injunctive relief and "an award of money damages as compensation" for the statement "Glyphosate targets an enzyme found in plants but not in people or pets," based on California law.  *See* Compl., Dkt. 1-1 at Prayer for Relief, No. 2:15-cv-04361. The court dismissed the entire complaint "with prejudice," because it concluded that "[t]here can be no dispute that Plaintiffs seek to impose a labeling requirement different or in addition to that required under FIFRA, as the Roundup label to which Plaintiffs object, and which Plaintiffs seek

to alter, was approved by the Environmental Protection Agency in 2008." *Mirzaie*, 2016 WL 146421, at \*2–3.

Similarly, in *Carias v. Monsanto Co*., the plaintiffs sought injunctive relief and money damages based on the same statement. The Eastern District of New York found it was "undoubtedly correct" that "FIFRA preempts courts from ordering a defendant to change a pesticide label." 2016 WL 6803780 at \*7. "Because EPA has the exclusive authority to approve changes to Roundup's label, this Court cannot order defendant to alter its labeling in order to remedy a violation of state law." *Id.* (dismissing plaintiff's injunctive relief claims).[11]

Likewise, in *Wilgus v. Hartz Mountain Corp.*, 2013 WL 653707, at \*5 (N.D. Ind. Feb. 19, 2013), the Northern District of Indiana dismissed the plaintiffs' claim under Indiana law in its entirety, holding that the claim was preempted by FIFRA for challenging "the adequacy of a pesticide's label." There, the plaintiffs claimed that warnings on the label were inadequate, even though the warnings were accepted by the EPA. *Id.* And just like here, "plaintiffs do not assert that the [] label violates any particular section of FIFRA or EPA regulations." *Id*. As such, the court explained why such allegations are preempted: "Plaintiffs can argue all they want that their claims are not preempted because they are not specifically seeking changes to the labeling

---

[11] The *Carias* court denied dismissal of the plaintiff's damages claims, given the false advertising allegations were intertwined with toxic tort allegations that the plaintiff's various maladies were caused by exposure to Roundup®. The court explained that "the notion that Roundup affects gut bacteria in a manner that is any way detrimental to human health" was a factual issue that could not be decided on a motion to dismiss. *See Carias*, 2016 WL 6803780 at \*9. In contrast here, no actual human health effects of any individual consumer are alleged to have occurred and/or will be proved in Plaintiffs' case. Thus, this case is more akin to *Mirzaie*, 2016 WL 146421 at \*1–2 (dismissing essentially identical allegations in total in non-personal injury case filed under the California false advertising statutes). Moreover, as noted above, the Complaint fails to allege how a consumer using Roundup® through any reasonable use would ever expose or otherwise "target" "gut bacteria" to glyphosate. As such, Plaintiffs fail to state a claim, and the Complaint should be dismissed. *Supra* Part II.C.

21

of Hartz's product, but the allegations made throughout their Complaint make it clear that all of their claims in this case are based on . . . express reference[s] to the product label and claims [that] it is inadequate." *Id.* at *7. Plaintiffs' claims therefore, "no matter how those claims are couched, run afoul of FIFRA and cannot move forward." *Id.*[12]

Here, the EPA accepted the entire label. *See* Cranley Decl. ¶ 3, Ex. 2. This includes the "Glyphosate targets an enzyme found in plants but not in people or pets" statement. Like in *Mirzaie* and *Wilgus*, Plaintiffs directly challenge this label, claiming that the label is "false and misleading." ECF No. 1, Compl. ¶¶ 4, 70, 158. Thus, since Plaintiffs are claiming that the EPA-approved label is inadequate, just like in *Mirzaie and Wilgus*, Plaintiffs' claims should be dismissed because they are preempted.

**B.     Plaintiffs' Claims under the NY GBL § 349, § 350, the FDUTPA, and the ICFA are Barred Because the Roundup® Label is Specifically Authorized by the EPA**

As Roundup®'s label has been approved for use by the EPA, the safe harbor provisions of New York, Florida, and Illinois prohibit any false advertising claims under those state statutes.

Under New York law, it is a "complete defense" to an action brought under GBL §§ 349 and 350 that the complained of act or practice is "subject to and complies with the rules and regulations of, and the statutes administered by, the Federal Trade Commission or any official department, division, commission or agency of the state of New York." GBL § 349(d); *see* GBL § 350-c. Courts have construed the safe harbor provisions of GBL §§ 349 and 350 to be

---

[12] Similarly, in *Smith v. Hartz Mountain Corp.*, 2012 WL 5451726, at *4 (N.D. Ohio Nov. 7, 2012), the plaintiffs brought a claim for monetary damages under the Ohio Consumer Sales Practices Act, alleging that the product did not contain a warning "that advised that the product was unsafe or dangerous to humans or ever posed a risk to humans," in violation of the state statute. *Id.* The court dismissed this claim under *Bates*, holding "any claim that asserts Hartz is liable to Plaintiffs for producing a product label in a manner consistent with the EPA's requirements seeks to impose an additional or different labeling requirement, and is preempted by FIFRA." *Id.*

congruent and also to cover regulations promulgated by federal agencies other than the FTC.  *See Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 626 (2d Cir. 2012) (affirming dismissal of trade practices claim because complaint alleged that defendant was compliant with the Electronic Funds Availability Act); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) ("[R]epresentations . . . that comport substantively with statements approved as accurate by the FDA cannot supply the basis for [plaintiff's NY GBL] claims."); *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144, 146 (S.D.N.Y. 1987) (applying statutory safe harbor where the FDA expressly approved drug label challenged as inadequate); *cf. In re Frito-Lay N.A., Inc. All Natural Litigation*, 2013 WL 4647512, at *22 (E.D.N.Y. Aug. 29, 2013) (stating that safe harbor provision applies when government agency "has explicitly endorsed the particular facet of the labeling which is claimed to be inadequate").

The Florida statute, the FDUTPA, contains a similar safe harbor provision, which states that the Act "does not apply to an act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1).  *See Phelps v. Hormel Foods Corp.*, 2017 WL 1185514, at *5 (S.D. Fla. Mar. 24, 2017) ("Defendant cannot be liable under FDUTPA because the challenged labels were approved by FSIS [United States Department of Agriculture's Food Safety Inspection Service] and therefore fall within the safe harbor provision [of FDUTPA.]"); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) ("[P]ursuant to its safe harbor provision, the FDUTPA does not apply to acts specifically permitted by federal law.  *See* Fla. Stat. § 501.212(1).  Defendants' labels were specifically permitted by federal law.  The labels complied with federal regulations regarding the use of percentage fat-free claims and were approved by FSIS prior to their commercial use.  Accordingly, Kraft and Hormel could not be liable pursuant to the FDUTPA's safe harbor provision.").

Finally, Plaintiffs' claims under Illinois law are also barred because the allegedly deceptive statement on the Roundup® label has been specifically authorized by the EPA pursuant to federal law. Section 10b(1) of the ICFA provides that "[n]othing in this Act shall apply to . . . [a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b. In other words, "[i]f the parties are doing something specifically authorized by federal law, section 10b(1) will protect them from liability under the [I]CFA." *Bober*, 246 F.3d at 941; *see also Price v. Philip Morris, Inc.*, 848 N.E. 2d 1, 36 (Ill. 2005). Although the authorization must be specific, the agency need not have engaged in formal rulemaking. *Price*, 848 N.E. 2d at 42.

## IV.   PLAINTIFFS' BREACH OF EXPRESS WARRANTY AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS

### A.   Plaintiffs Blitz, Blair, Washington, Moore, and Dulniak have Failed to Allege they Complied with the UCC's Notice Requirements

Notice of breach is a condition precedent to recovery for warranty claims under the Wisconsin, Illinois, New York, New Jersey, and Florida enactments of the Uniform Commercial Code ("UCC"). *See* Wis. Stat § 402.607(3)(a) ("[T]he buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."); 810 ILCS 5/2-607(3)(a) (same); N.Y. U.C.C. Law § 2-607(3)(a) (same); N.J. Stat. Ann. § 12A:2-607(3)(a) (same); Fla. Stat. § 672.607(3)(a) (same). Here, Plaintiffs Blitz, Blair, Washington, Moore, and Dulniak's breach of warranty claims must be dismissed because they have not provided such prior notice of breach to Monsanto.

Where notice is not given, as required by the state's UCCs, a plaintiff's warranty claims are barred. *See Wilson v. Tuxen*, 754 N.W. 2d 220, 233 (Wis. App. Ct. 2008) ("The law of this

state remains that a buyer must give notice 'or be barred from any remedy.'"); *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *8 (N.D. Ill. Mar. 18, 2013) (dismissing plaintiffs' breach of warranty claims against a manufacturer where the plaintiffs failed to provide notice as required by 810 ILCS 5/1-201); *Pye v. Fifth Generation, Inc*., 2016 WL 9046788, at *3 (N.D. Fla. Sept. 27, 2016) ("Under Florida law, a prerequisite to an express-warranty claim is notice to the manufacturer of the breach."); *Burns v. Volkswagen of Am., Inc.*, 468 N.Y.S. 2d 958, 959 (N.Y. App. Div. 1983) (affirming the lower court's ruling that a breach of express warranty claim against a manufacturer must be dismissed because plaintiff failed to give notice to the manufacturer as required by § 2-607(3)(a)); *Kury v. Abbott Labs., Inc.*, 2012 WL 124026, at *7 (D.N.J. Jan. 17, 2012) ("Dispositive of the claim for breach of express warranty is Plaintiff's failure to provide a pre-litigation notice to Defendants regarding the alleged breach.").

As these Plaintiffs have not provided the required notice, their breach of express warranty claims should be dismissed.  Nor can they claim that notice was somehow impossible, as Plaintiff Chick provided such notice to Monsanto.  *See* Ex. 7.

**B.    Plaintiffs' Breach of Express Warranty Claims under New York and Florida Law Should be Dismissed for Lack of Privity**

New York and Florida law explicitly require privity of contract in an action for breach of express warranty.  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp.2d 274, 290 (S.D.N.Y. 2014) ("[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured."); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1268 (N.D. Fla. 2012) ("[T]he Plaintiff has failed to plead that she was in privity of contract with the Defendants, and thus cannot bring forth her claim for breach of express warranty.")  Here, neither Plaintiffs Washington nor Dulniak has alleged a purchase of Roundup® from Monsanto.   Nor could Plaintiffs plausibly make such an allegation, because

25

Monsanto does not sell Roundup® directly to consumers.  Thus, Plaintiffs cannot plausibly allege privity of contract with Monsanto.

### C. Plaintiff Moore's Unjust Enrichment Claim Fails Because He Does Not Allege a Direct Relationship with Monsanto

Under New Jersey law, a plaintiff must allege he had a "direct relationship" with the defendant in order to successfully plead a claim for unjust enrichment.  *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016).  Where, as here, a plaintiff attempts to bring a claim of unjust enrichment against a product's manufacturer instead of its seller, New Jersey courts have dismissed the claim because the "direct relationship" requirement is not satisfied.  *See id.* (dismissing a claim for unjust enrichment against the manufacturer of a phone under New Jersey law when plaintiff "fail[ed] to allege that he purchased the phone directly from Defendant."); *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) (concluding that the plaintiff had insufficiently pled a claim for unjust enrichment because he did not allege that he purchased the products directly from the defendant).[13]

### CONCLUSION

For the forgoing reasons, Monsanto respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

---

[13] Plaintiffs' Complaint does not specifically allege under which states' breach of express warranty and unjust enrichment laws they are making their claims.  *See* Compl. ¶¶ 169-179.  For purposes of this Motion to Dismiss, Monsanto is only examining the laws of the specific states mentioned in the Complaint.  To the extent Plaintiffs are relying on other states' laws not mentioned, Monsanto expressly reserves its rights to move to dismiss those claims.

Respectfully submitted this 28th day of August, 2017.

Attorneys for Monsanto Co.

HUSCH BLACKWELL LLP

By:  *s/ Thomas P. Heneghan*
       Thomas P. Heneghan
       State Bar No. 1024057
       Paul D. Cranley
       State Bar No. 1050029

33 E. Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
Phone:  (608) 255.4440
Fax:  (608) 258.7138
Tom.Heneghan@huschblackwell.com
Paul.Cranley@huschblackwell.com

WINSTON & STRAWN LLP

       John J. Rosenthal (pro hac vice
       forthcoming)
       Adam S. Nadelhaft  (*pro hac vice*
       forthcoming

1700 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5000
Fax: (202) 282-5100
jrosenthal@winston.com
anadelhaft@winston.com