# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS BLITZ, a Wisconsin consumer; KEVIN BLAIR, an Illinois consumer; GREGORY CHICK, a California consumer; MARIO WASHINGTON, a New York consumer; TERENCE D. MOORE, a New Jersey consumer; and RICHARD J. DULNIAK, a Florida consumer, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br>  v.<br><br>MONSANTO COMPANY, a Missouri Corporation; and SCOTTS MIRACLE-GRO COMPANY, an Ohio Corporation,<br><br>     Defendants. | Case No. 3:17-CV-00473-WMC-SLC |

## THE SCOTTS MIRACLE-GRO COMPANY'S
## MEMORANDUM IN SUPPORT OF ITS
## <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

## CONTENTS

INTRODUCTION ......................................................................................................1

PROCEDURAL HISTORY.......................................................................................2

ARGUMENT ...........................................................................................................3

I.   This Court Lacks Personal Jurisdiction Over Scotts Miracle-Gro Company ........................3

   A.   Wisconsin's Long-Arm Statute Does Not Authorize The Court To Exercise Jurisdiction Over Scotts Because Scotts Does Not Transact Business In Wisconsin................4

   B.   Even If Wisconsin Law Authorized The Exercise Of Personal Jurisdiction, The Due Process Clause Would Prevent The Court From Exercising Personal Jurisdiction Over Scotts ..........................................................................................................7

   C.   The Complaint Must Be Dismissed For Lack Of Personal Jurisdiction ........................11

II.   Even If Scotts Marketed & Distributed Roundup, The Court Lacks Personal Jurisdiction Over Scotts With Respect to Claims Asserted On Behalf of Non-Wisconsin Members of the Putative National Class........................................................................11

III.   Plaintiffs' Claims are Preempted Under FIFRA ..............................................13

IV.   Plaintiffs' Complaint Fails Because the Label is Not False As a Matter of Law ..............14

   A.   Plaintiffs Only Allege That The Challenged Statement is False .................................14

   B.   Plaintiffs' Claims Fail Because They Do Not Adequately Allege Falsity.....................15

V.   Plaintiffs' Express Warranty Claims Fail as a Matter of Law ...................................17

   A.   Plaintiffs' Express Warranty Claims Fail Because Scotts Did Not Make Its Own Warranty And A Distributor Cannot Be Held Liable For A Manufacturer's Express Warranty .........................................................................................................17

   B.   Plaintiffs' Express Warranty Claims Fail Because Plaintiffs Did Not Satisfy UCC Notice Requirements ...............................................................................19

VI.   Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law .........................................20

   A.   Rule 12(b)(6) Standard ...........................................................................................20

   B.   Plaintiffs' Unjust Enrichment Claims Fail Because Plaintiffs Do Not Adequately Allege That They Conferred A Benefit On Scotts, The Value Of The Benefit, Or That Scotts Appreciated Any Such Benefit ...........................................21

VII.   Plaintiffs' Deceptive Trade Practices Act Claims Fail as a Matter of Law .......................23

CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*,
    89 A.D.2d 785 (N.Y. App. Div. 982) ........................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................23, 24

*Auto Chem Labs., Inc. v. Turtle Wax, Inc.*,
    No. 3:07CV156, 2009 WL 3063422 (S.D. Ohio Sept. 21, 2009)..............26

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)..................................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 556 (2007)....................................................................24, 26

*Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, L.L.C.*,
    135 Wash. App. 1025 (Wash. Ct. App. 2006) ..........................................20

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017)...........................................................................9, 10

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017).........................................................................13, 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................10

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ................................................................12, 13

*Cochran v. McDonald*,
    161 P.2d 305 (Wash. 1945) ......................................................................21

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).............................................................................9, 10

*Demedicis v. CVS Health Corp.*,
    No. 16-CV-5973, 2017 WL 569157 (N.D. Ill. Feb. 13, 2017) .................14

*Emirat AG v. High Point Printing LLC*,
    No. 12-C-0789, 2017 WL 1180709 (E.D. Wis. Mar. 29, 2017).........25, 26

*Felland v. Clifton*,
    682 F.3d 665, 673 (7th Cir. 2012) ............................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011)..................................................................................9, 11

*Hasemann v. Gerber Prod. Co.,*
  No. 15-CV-2995, 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) ............................................18

*In re GNC Corp.,*
  789 F.3d 505 (4th Cir. 2015) ...............................................................16, 18, 19

*Jackson v. Blitt & Gaines, P.C.,*
  833 F.3d 860 (7th Cir. 2016) ................................................................23

*Kipp v. Ski Enter. Corp. of Wis.,*
  783 F.3d 695 (7th Cir. 2015) ................................................................3

*Knot Just Beads v. Knot Just Beads, Inc.,*
  217 F. Supp. 2d 932 (E.D. Wis. 2002)......................................................4, 8

*Korolshteyn v. Costco Wholesale Corp.,*
  No. 3:15-CV-709, 2017 WL 3622226 (S.D. Cal. Aug. 23, 2017)......................................17, 18

*Luciano v. World-Wide Volkswagen Corp.,*
  127 A.D.2d 1 (N.Y. App. Div. 1987) .......................................................21, 22

*Lytle v. Roto Lincoln Mercury & Subaru, Inc.,*
  521 N.E.2d 201 (Ill. Ct. App. 1988) .......................................................21

*Malul v. Capital Cabinets, Inc.,*
  191 Misc. 2d 399 (N.Y. Civ. Ct. 2002) ...................................................20

*Moerke v. Altec Indus., Inc.,*
  No. 12-CV-00903, 2013 WL 6185213 (W.D. Wis. Nov. 26, 2013) ........................3, 8, 11, 15

*Motor Homes of Am., Inc. v. O'Donnell,*
  440 So. 2d 422 (Fla. Dist. Ct. App. 1983) ................................................2, 21, 22

*Nagel v. Crain Cutter Co.,*
  184 N.W.2d 876 (Wis. 1971)..............................................................6

*Newman v. Kotlow,*
  2017 WI App 50 ............................................................................24

*Novell v. Migliaccio,*
  2008 WI 44 .................................................................................27

*Perkins v. Benguet Consol. Mining Co.,*
  342 U.S. 437 (1952)..........................................................................9

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
No. CV 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017).................................................14

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ...........................................................................3, 8, 11

*Puttkammer v. Minth*,
83 Wis. 2d 686 (1978) .........................................................................................24

*Rasmussen v. Gen. Motors Corp.*,
803 N.W.2d 623 (Wis. 2011)...........................................................................4, 5, 6

*Salfinger v. Fairfax Media Ltd.*,
876 N.W.2d 160 (Wis. Ct. App. 2016) ...................................................................12

*Taylor AG Indus. v. Pure-Gro*,
54 F.3d 555 (9th Cir. 1995) .................................................................................16

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning
Engineers, Inc.*, 755 F.3d 832 (7th Cir. 2014) .........................................................27

*Thorpe v. Hammons Sheet Metal Co.*, 991 S.W.2d 157 (Mo. Ct. App. 1999) ...........................20

*Wagner v. Gen. Nutrition Corp.*,
No. 16-CV-10961, 2017 WL 3070772, at *8 (N.D. Ill. July 19, 2017)....................................19

*Walden v. Fiore*,
134 S. Ct. 1115, 1121 (2014)................................................................................11

*Westlye v. Look Sports, Inc.*,
22 Cal. Rptr. 2d 781 (Cal. Ct. App. 1993)................................................................21

*Wilson v. Tuxen*, 754 N.W. 2d 220 (Wis. App. Ct. 2008) ...........................................................23

## Statutes

7 U.S.C. § 136v(b) ..........................................................................................15

Wis. Stat. § 402.102 ........................................................................................23

Wis. Stat. § 402.313 ........................................................................................20

Wis. Stat. § 402.607 ........................................................................................23

Wis. Stat. § 801.05(1)(d)................................................................................4, 7

Pursuant to Rules 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant The Scotts Miracle-Gro Company ("Scotts") submits this Memorandum of Law in Support of Its Motion To Dismiss Plaintiffs' Complaint (ECF No. 1).[1]

## INTRODUCTION

Scotts should not be here.  Plaintiffs brought this putative class action against Defendants Monsanto Company ("Monsanto") and Scotts (collectively, "Defendants"), alleging that Defendants made false representations regarding certain retail Roundup-brand products ("Roundup Products").  (Compl. ¶ 2.)  Plaintiffs contend that a statement included on the Roundup Products' labels that "glyphosate targets an enzyme found in plants but not people or pets" or "targets an enzyme not found in humans" (the "Challenged Statement") is not true.  (Compl. ¶¶ 22–27, 30, 34.)

Plaintiffs claim that Scotts markets and distributes Roundup Products (Compl. ¶¶ 19, 21, 39, 41–42.), but Scotts should be dismissed.  At the outset, The Scotts Miracle-Gro Company is primarily a holding company that does not engage in the business of marketing or distributing Roundup Products and, as such, cannot be sued for the alleged activities that gave rise to this action.  Scotts is not subject to specific jurisdiction in this case and, as "an Ohio corporation headquartered in Marysville, Ohio" (Compl. ¶ 20), is not subject to general jurisdiction in the State of Wisconsin.

Moreover, even if Scotts did conduct marketing in Wisconsin (and it did not), Plaintiffs' claims would fail as a matter of law for the reasons set forth below and also for the reasons set forth in the Motion to Dismiss filed by Monsanto on August 28, 2017

---

[1] On October 2, 2017, Plaintiffs voluntarily dismissed all claims asserted by Plaintiffs Kevin Blair, Gregory Chick, Mario Washington, Terence D. Moore, and Richard J. Dulniak.  (ECF No. 32.)  As such, this Motion addresses only the claims asserted by Plaintiff Thomas Blitz, which are the only claims remaining in the case. Scotts reserves the right to respond to the dismissed claims if they are later reasserted.

(ECF Nos. 10–12) ("Monsanto Motion").  Scotts would, at most, be a distributor.  As a distributor, Scotts cannot be held liable for any express warranty allegedly contained in the manufacturer's labels.  Merely distributing a product with the manufacturer's label is not enough to find Scotts liable for alleged warranties contained on the product.  *See, e.g.*, *Motor Homes of Am., Inc. v. O'Donnell*, 440 So. 2d 422, 426–27 (Fla. Dist. Ct. App. 1983) ("Delivering, presenting or explaining a manufacturer's warranty, without more, does not render a dealer a co-warrantor by adoption.").  Plaintiffs' other claims likewise fail on multiple grounds.  Accordingly, Plaintiffs' complaint should be dismissed under any scenario.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on June 20, 2017, asserting ten separate causes of action against Scotts,[2] including claims under the laws of six different states—Wisconsin, Illinois, California, New York, New Jersey, and Florida—and common law claims for breach of express warranty and unjust enrichment, while seeking to certify statewide classes for each of the six states and a national class.  (Compl. ¶¶ 10, 59–60.)  On October 2, 2017, Plaintiffs voluntary dismissed the claims asserted by Plaintiffs Kevin Blair, Gregory Chick, Mario Washington, Terence D. Moore, and Richard J. Dulniak, leaving only the claims asserted by Plaintiff Thomas Blitz under Wisconsin law.  (ECF No. 32).  Scotts now brings this motion to dismiss the Complaint.

---

[2] Though the Complaint sets forth a total of 11 cases of action, Plaintiffs assert their Count III claims ("Violations of California's Consumers Legal Remedies Act") only against Monsanto.

## ARGUMENT

I.  **THIS COURT LACKS PERSONAL JURISDICTION OVER SCOTTS MIRACLE-GRO COMPANY**

This Court's exercise of jurisdiction over Scotts comports with neither Wisconsin's long-arm statute nor federal due process.  "Once a defendant has moved for dismissal based on lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (internal citations omitted).  "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003).

"In Wisconsin, this is a two-step inquiry.  First, the court must determine whether the defendant falls within the grasp of Wisconsin's long-arm statute, Wis. Stat. § 801.05.  If the statutory requirements are satisfied, the court must consider whether the exercise of jurisdiction over the defendant comports with due process requirements of the Fourteenth Amendment of the United States Constitution." *Moerke v. Altec Indus., Inc.*, No. 12-CV-00903, 2013 WL 6185213, at *2 (W.D. Wis. Nov. 26, 2013)  (internal citations omitted).  Wisconsin courts can "consider documentary evidence and weigh affidavits in reaching a determination as to whether" personal jurisdiction has been met. *Rasmussen v. Gen. Motors Corp.*, 803 N.W.2d 623, 629 (Wis. 2011).  Here, jurisdiction over Scotts is lacking under both Wisconsin's long-arm statute and federal due process.  Accordingly, this Court should grant Scotts' Motion to Dismiss.

## A.   Wisconsin's Long-Arm Statute Does Not Authorize The Court To Exercise Jurisdiction Over Scotts Because Scotts Does Not Transact Business In Wisconsin.

Wisconsin's long-arm statute is designed "to confer jurisdiction to the extent allowed by due process." *Knot Just Beads v. Knot Just Beads, Inc.*, 217 F. Supp. 2d 932, 933 (E.D. Wis. 2002).  "Under the statute, Wisconsin can exercise two types of personal jurisdiction over a nonresident defendant, general and specific." *Id.*  Here, it is unclear on what basis Plaintiffs allege that Scotts is subject to personal jurisdiction.  They merely state that the "Court has personal jurisdiction over Defendants because Defendants transact business throughout the United States, including in Wisconsin and in this judicial district."  (Compl. ¶ 16.)  As set forth below, that is not true.

### 1.   Wisconsin's long-arm statute does not confer general personal jurisdiction over Scotts.

Wisconsin's long-arm statute provides for general jurisdiction over a defendant when the defendant "is engaged in substantial and not isolated activities within this state."  Wis. Stat. § 801.05(1)(d).  In determining whether the defendant has engaged in "substantial and not isolated activities" in Wisconsin, Wisconsin courts examine a defendant's general contacts in the state, analyzing the following factors:  (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the contacts to the claim made; (4) the interest of Wisconsin in the action; and (5) the convenience of the parties.  *Rasmussen*, 803 N.W.2d at 630.  This analysis is akin to a general jurisdiction analysis under federal due process.  *Id.* at 630, 633.

Plaintiffs have failed to allege any specific facts even suggesting that Scotts transacts business in Wisconsin, let alone facts sufficient to support a finding that they have the necessary quality or quantity of contacts in Wisconsin to support jurisdiction.

Plaintiffs state that "Scotts is responsible for marketing and distributing Roundup Products around the United States, including in . . . Wisconsin." (Compl. ¶ 21.)  This is incorrect.  Contrary to the allegations in the Complaint, Scotts is primarily a holding company that does not engage in the business of marketing or distributing Roundup Products.  Affidavit of Kathiea Uttley ("Uttley Affidavit"), ¶¶ 6–7.  Scotts is not incorporated in Wisconsin; has no agent for service of process in Wisconsin; has no offices, employees, or mailing addresses in Wisconsin; maintains no books or records in Wisconsin, does not own or lease any real property in Wisconsin; has no bank accounts with Wisconsin-chartered banks; has never been licensed to do business in Wisconsin; and has no business operations or customers in Wisconsin.  Uttley Affidavit, ¶¶ 9–20.  Scotts also has not conducted the activities that Plaintiffs attack:  Scotts does not market or distribute Roundup Products bearing the Challenged Statement.  Uttley Affidavit, ¶ 17.  There is no scenario under which Scotts has "engaged in substantial and not isolated activities" in Wisconsin for purposes of the long-arm statute.  *See, e.g.*, *Nagel v. Crain Cutter Co.*, 184 N.W.2d 876, 877 (Wis. 1971) (finding no jurisdiction over out-of-state corporation where it was incorporated outside of Wisconsin; was not licensed to do business in Wisconsin; and had no offices, employees, warehouse, stock of goods or inventory, bank account, or telephone listing in Wisconsin).

The only fact that could even arguably connect Scotts to Wisconsin is that subsidiaries of Scotts may engage in marketing or distributing Roundup Products.  But that is not enough.  Generally, a subsidiary's actions are *not* imputed to a parent for purposes of establishing personal jurisdiction, and the law presumes corporate separateness.  *Rasmussen*, 803 N.W.2d at 632–35.  "In assessing corporate separateness,

Wisconsin courts have focused most directly on the amount of control that one corporation exercises . . . over the other; whether both corporations employ independent decision-making; whether corporate formalities were observed; whether the corporations operated as one corporation; and whether observing the corporate separateness would facilitate fraud." *Id.* at 634–35.  Here, Plaintiffs do not allege and cannot allege facts sufficient to reach Scotts.  To the contrary, Scotts and its subsidiaries observe corporate formalities, including separate officers, directors, and meetings.  Uttley Affidavit, ¶ 8. Thus, there is no basis to find that Scotts engaged in "substantial and not isolated activities" in Wisconsin and therefore no basis for general jurisdiction under Wisconsin's long-arm statute.

> ### 2.   Wisconsin's long-arm statute does not confer specific personal jurisdiction over Scotts.

Wisconsin's long-arm statute confers specific personal jurisdiction over a defendant "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant" if either: "(a) solicitation or service activities were carried on within this state by or on behalf of the defendant; or (b) products, materials, or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."  Wis. Stat. § 801.05(4).  Under Wisconsin law, "the mere existence of a parent-subsidiary relationship is insufficient to establish that a principal-agent relationship exists between two entities." *Id.*  A parent's financial gain from the commercial activities of a subsidiary is not enough to find personal jurisdiction based on an agency relationship, nor is the fact that a parent corporation exerts some influence over the subsidiary.  *Id.* (finding no specific personal

jurisdiction over parent holding company whose indirect subsidiary sold cigarettes in Wisconsin).

Plaintiffs have not, and cannot, establish that this Court has jurisdiction over Scotts based on Section 801.05(4) of Wisconsin's long-arm statute. As already mentioned, contrary to the allegations in the Complaint, the Roundup products at issue in this case were not "manufactured or serviced" by Scotts, and thus Section 801.05(4)(b) is inapplicable. *See* Uttley Affidavit, ¶¶ 6–7, 17. Thus, the only way Plaintiffs can establish specific personal jurisdiction under Wisconsin's long-arm statute is by showing that "solicitation or service activities were carried on within this state . . . on behalf of the defendant." Wis. Stat. § 801.05(4)(a). But Plaintiffs have not, and cannot, make this showing. The mere fact that Scotts may have subsidiaries carrying on activities in Wisconsin is insufficient. *See Insolia*, 31 F. Supp. 2d at 671. Thus, there is no specific personal jurisdiction over Scotts under Wisconsin's long-arm statute. Because Wisconsin's long-arm statute does not establish a basis for personal jurisdiction over Scotts, the Court need not determine whether or not the exercise of personal jurisdiction would comport with due process. *Knot Just Beads*, 217 F. Supp. 2d at 935. Nonetheless, as set forth below, federal due process would not allow this Court to exercise jurisdiction over Scotts in this case.

**B.      Even If Wisconsin Law Authorized The Exercise Of Personal Jurisdiction, The Due Process Clause Would Prevent The Court From Exercising Personal Jurisdiction Over Scotts**

Even if Wisconsin's long-arm statute were to authorize the exercise of personal jurisdiction over Scotts (it does not), this Court cannot exercise jurisdiction over Scotts because doing so would offend federal due process. Personal jurisdiction under the Fifth Amendment's Due Process Clause is divided into two parts: (1) general jurisdiction,

which means that the defendant "may be called into court there to answer for any alleged wrong, committed in any place," *Moerke,* 2013 WL 6185213, at *3, and (2) specific jurisdiction, which focuses on "whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation," *Purdue Research Found.*, 338 F.3d at 780.

### 1. This Court does not have general personal jurisdiction over Scotts under the Due Process Clause analysis.

Courts may exercise general jurisdiction over only those defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).  Recent Supreme Court decisions have emphasized the high bar for exercising jurisdiction over a defendant corporation based outside the forum state, holding that, in all but the most "exceptional case[s]," general jurisdiction over a corporation arises only where the corporation is incorporated and where it maintains its principal place of business—i.e., where the corporation can be said to be "at home." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 & n.19 (2014).

Plaintiffs come nowhere close to meeting the high bar necessary to establish general jurisdiction.  Indeed, Plaintiffs' own Complaint acknowledges that Scotts is an Ohio corporation headquartered in Marysville, Ohio.  (*See* Compl. ¶ 20.)  Under recent Supreme Court precedent, this all but ends the inquiry.  While there may be an occasional "exceptional case" in which a corporation is subject to general personal jurisdiction in a forum other than its state of incorporation or principal place of business, the Supreme Court has recognized only one such exceptional case, which has no application here.  *See*

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (finding company subject to general jurisdiction in state to which it had temporarily moved its operations during wartime); *see also Tyrrell*, 137 S. Ct. at 1561–62 (Sotomayor, J., concurring in part and dissenting in part) (noting that the opinion of the Court "could be understood to limit [the 'exceptional cases'] exception to the exact facts of *Perkins*" and that the Court's "reading is so narrow as to read the exception out of existence entirely").

In contrast, the Court recently held that a state could *not* assert general jurisdiction over a corporation that had over 2,000 miles of railroad track and over 2,000 employees in that state, *Tyrrell*, 137 S. Ct. at 1554, 1559, and that another state did not have general jurisdiction over a corporation with $4.6 billion of annual sales in that state, *Bauman*, 134 S. Ct. at 752, 761–62. That is because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Bauman*, 134 S. Ct. at 762 n.20. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761–62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, Scotts cannot be said to be at home in Wisconsin. Scotts is primarily a holding company incorporated in Ohio with its principal place of business in Ohio. Uttley Affidavit, ¶¶ 3, 6. Thus, Wisconsin is not one of the "paradigm all-purpose forums" for general jurisdiction over Scotts, nor does Scotts have the requisite contacts— or any contacts at all—with Wisconsin such that it could qualify as an "exceptional case." Accordingly, the Court may not exercise general jurisdiction over Scotts.

**2.     This Court does not have specific personal jurisdiction over Scotts under the Due Process Clause analysis.**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). The defendant must have sufficient "minimum contacts" with the forum state so that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Brown*, 564 U.S. at 923 (internal quotation marks omitted). The three elements of personal jurisdiction are: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Moerke*, 2013 WL 6185213, at *3 (citing *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)).

"Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the . . . activity of . . . some other entity." *Purdue Research Found.*, 338 F.3d at 780. In particular, "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Id.* at 788.(finding no personal jurisdiction over parent where there was no evidence that parent "exerts an unusually high degree of control over [subsidiary]"). Thus, "where corporate formalities are substantially observed and the parent does not dominate the subsidiary," there can be no jurisdiction over the parent based on the subsidiary because "the parent and subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).

As set forth previously, Scotts does not have *any* direct contacts with Wisconsin, so there is no specific jurisdiction over Scotts.  Scotts has not purposefully availed itself of Wisconsin since it does not conduct business operations there, nor did the alleged injury arise from any activities conducted by Scotts.  *See supra* Part I.A.1; Uttley Affidavit, ¶¶ 9–20.  Even if Plaintiffs had alleged that the injury arose from the conduct of a subsidiary of Scotts, that would not be enough.  *See Salfinger v. Fairfax Media Ltd.*, 876 N.W.2d 160, 170 (Wis. Ct. App. 2016) ("[Plaintiff] fails to explain how or why the [parent corporations'] *subsidiary*'s presence and actions in Wisconsin establish that [the parent corporations] have sufficient minimum contacts with Wisconsin. [Plaintiff] likewise fails to cite to any legal authority to support the position that sufficient minimum contacts can be established through a subsidiary.").  Indeed, there is no allegation that Scotts and its subsidiaries failed to observe corporate formalities or that Scotts "dominates" its subsidiaries, so the acts of its subsidiaries cannot be attributed to Scotts. *Reimer Express World Corp.*, 230 F.3d at 944.

### C.  The Complaint Must Be Dismissed For Lack Of Personal Jurisdiction

Because neither the Wisconsin long-arm statute nor federal due process allow this Court to assert personal jurisdiction over Scotts in this case, Scotts' motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure should be granted and the Complaint dismissed in its entirety as to Scotts.

## II.  EVEN IF SCOTTS MARKETED & DISTRIBUTED ROUNDUP, THE COURT LACKS PERSONAL JURISDICTION OVER SCOTTS WITH RESPECT TO CLAIMS ASSERTED ON BEHALF OF NON-WISCONSIN MEMBERS OF THE PUTATIVE NATIONAL CLASS

Even if, as wrongly alleged by Plaintiffs, Scotts was "responsible for marketing and distributing Roundup Products," (Compl. ¶ 21), this Court lacks personal jurisdiction

over Scotts with respect to the claims asserted on behalf of members of the putative

"National Class" who reside outside of Wisconsin and did not suffer any alleged harm in

Wisconsin.[3]  As explained above, Scotts is not subject to general jurisdiction in

Wisconsin.  *See supra* Parts I.A.1 and I.B.1.  Because the alleged conduct giving rise to

the claims of the non-Wisconsin members of the putative National Class occurred outside

of Wisconsin, Scotts is also not subject to specific jurisdiction in Wisconsin with respect

to their claims.  *See* Monsanto Motion Part I.B; *cf. Bristol-Myers Squibb v. Super. Ct. of

Cal.*, 137 S. Ct. 1773 (2017) (holding state court lacked jurisdiction over claims of out-

of-state consumers arising from conduct in the consumers' home states).

  As discussed at Part I.B. of the Monsanto Motion, which Scotts incorporates as if

fully set forth here, the U.S. Supreme Court's recent decision in *Bristol-Myers Squibb*

made clear that state courts cannot assert personal jurisdiction over foreign corporations

with respect to claims of out-of-state consumers that are based on the corporations'

alleged out-of-state conduct.  137 S. Ct. at 1782.  This was true even where the out-of-

state plaintiffs asserted their claims under the laws of the forum state, *id.* at 1778, and

where the alleged harm to the out-of-state plaintiffs and the in-state plaintiffs was of the

same nature, *id.* at 1781.

  Though *Bristol-Myers Squibb* concerned claims brought in a state court, federal

courts across the nation have recognized that the same principles apply where plaintiffs in

federal court attempt to bring a class action that aggregates claims of both in-state and

out-of-state individuals in a jurisdiction in which the defendant is not subject to general

---

[3] While Plaintiffs dismissed all claims asserted by the non-Wisconsin Plaintiffs and, by extension, the non-Wisconsin putative state classes (ECF No. 32), the notice of voluntary dismissal does not indicate that Plaintiffs have also dismissed the claims brought on behalf of the putative National Class.  (See Compl. ¶¶ 59, 170–74, 176–79.)

jurisdiction. *See Demedicis v. CVS Health Corp.*, No. 16-CV-5973, 2017 WL 569157, at *5 (N.D. Ill. Feb. 13, 2017) (dismissing claims brought on behalf of out-of-state class members for lack of personal jurisdiction); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 3129147, at *9 (E.D. Pa. July 24, 2017) (same); *see also* Monsanto Motion at 12 n.5 (citing cases).

Here, Plaintiffs attempt to bundle together the claims of both in-state and out-of-state consumers in a jurisdiction in which Scotts is not subject to general jurisdiction, thereby asking this Court to find that it has specific jurisdiction over Scotts with respect to claims brought on behalf of non-Wisconsin consumers for alleged conduct that occurred outside of Wisconsin.  This effort must fail.  Because Plaintiffs cannot show that, with respect to the non-Wisconsin members of the putative National Class, the "alleged injury [arose] from the defendant's forum-related activities," *Moerke*, 2013 WL 6185213, at *3, this Court must dismiss the claims asserted on behalf of the National Class to the extent they apply to non-Wisconsin consumers.

## III.   PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER FIFRA

As explained at Part III.A. of the Monsanto Motion, which Scotts incorporates as if set forth here, Plaintiffs' claims should be dismissed because they are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  FIFRA sets requirements for pesticide labeling and expressly prohibits states from "impos[ing] . . . any requirements for labeling or packaging in addition to or different from those required" by FIFRA.  7 U.S.C. § 136v(b).  This preemption provision applies not only to claims brought under state statutes and regulations, but to state common law claims, as well.  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005).

Further, even if Scotts marketed and distributed Roundup Products as alleged, courts have recognized that "[w]here[,] as here, the distributor's liability is essentially predicated upon the language in the manufacturer's label, . . . FIFRA's preemption provision [applies] equally to manufacturers and distributors," because "[r]equiring the distributor to research the accuracy of each manufacturer's label would place an undue burden on the distributor who is the least likely to have access to such information." *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 562–63 (9th Cir. 1995); *see also Hughes v. S. States Co-op, Inc.*, 180 F. Supp. 2d 1295, 1298 n.3 (M.D. Ala. 2001) (holding that FIFRA preemption applies equally to manufacturers and distributors).  Therefore, just as Plaintiffs' claims against Monsanto are preempted under FIFRA, so too are their claims against Scotts.

## IV.   PLAINTIFFS' COMPLAINT FAILS BECAUSE THE LABEL IS NOT FALSE AS A MATTER OF LAW

### A.   Plaintiffs Only Allege That The Challenged Statement is False

"Courts uniformly interpret 'false or misleading' as creating two different theories of recovery in a false advertising claim:  A plaintiff must allege either (i) that the challenged representation is literally false or (ii) that it is literally true but nevertheless misleading."  *In re GNC Corp.*, 789 F.3d 505, 514 (4th Cir. 2015) (citing cases).  Where Plaintiffs purport to allege both "false" and "misleading" theories, courts must look to the substance of the pleadings to determine the true nature of Plaintiffs' claims.  As one federal court recently found:

> [N]otwithstanding Plaintiff's arguments otherwise, Plaintiff is only alleging the
> former—that the Label Claims are literally false.  Although the [Complaint]
> alleges and Plaintiff argues on summary judgment that the Label Claims are "false

and misleading," she is really alleging and arguing that the Label Claims are misleading *because they are false*.  Plaintiff is not arguing that the Label Claims are literally true but misleading for some other reason.  Doing so would undercut her literal falsity argument.  Whether the Label Claims are true or false is a binary choice—they are true, or they are false.

*Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-CV-709, 2017 WL 3622226, at *5 (S.D. Cal. Aug. 23, 2017) (emphasis original), *appeal docketed*, No. 17-56435 (9th Cir. Sept. 21, 2017).

Here, it is clear that Plaintiffs are asserting only that the Challenged Statement is *literally false*, not that it is also misleading.  While Plaintiffs do state in conclusory fashion that the Challenged Statement is misleading (*e.g.*, Compl. ¶¶ 3, 4, 70), they are "really alleging and arguing that the [Challenged Statement is] misleading *because [it is] false*."  *Korolshteyn*, 2017 WL 3622226, at *5.  Throughout the Complaint, Plaintiffs characterize the Challenged Statement simply as "false" (*e.g.*, Compl. ¶¶ 2 & n.1, 5–9, 12, 14, 17, 22–27, 34, 37, 44, 46, 49, 50–53, 55–56, 83).  Nowhere in the Complaint do they allege in the alternative that, though literally true, the statement is nonetheless misleading.  Even where Plaintiffs allege that they were deceived, the allegation is that they were "deceived *by the false statements*."  (Compl., Part III (emphasis added).)  As such, Plaintiffs must adequately allege literal falsity in order to sustain their claims.[4]

## B.     Plaintiffs' Claims Fail Because They Do Not Adequately Allege Falsity

Where Plaintiffs assert that a scientific representation is literally false, they "must allege that *all* reasonable experts in the field agree that the representations are false."

---

[4] Though Plaintiffs do not allege that the Challenged Statement is misleading, their claims would fail even if they did for the reasons set forth in the Monsanto Motion at Part II.C., which Scotts incorporates as if fully set forth here.

-15-

*GNC*, 789 F.3d at 516 (emphasis original) (granting motion to dismiss for failure to state a claim); *see also Korolshteyn*, 2017 WL 3622226, at *6 (granting summary judgment where "defendant present[ed] admissible expert testimony that scientific studies support the advertised claim"); *cf. Hasemann v. Gerber Prod. Co.*, No. 15-CV-2995, 2016 WL 5477595, at *17 n.22 (E.D.N.Y. Sept. 28, 2016) (noting that scientific support for the defendant's claim "is irrelevant to the Court's determination [on a motion to dismiss] as the issue is whether or not the qualified health claim is misleading . . . , not whether the qualifying health claim is literally false."). This is because, "[w]hen the scientific evidence is equivocal, it is impossible to prove that an advertised claim is either literally true or literally false." *Korolshteyn*, 2017 WL 3622226, at *5. As the Fourth Circuit explained:

> When litigants concede that some reasonable and duly qualified scientific experts
> agree with a scientific proposition, they cannot also argue that the proposition is
> "literally false." Either the experts supporting the Companies are unreasonable
> and unqualified . . . [,] or they reflect a reasonable difference of scientific opinion
> (in which case the challenged representations cannot be said to be literally false).

*In re GNC Corp.*, 789 F.3d at 515.

While Plaintiffs allege that "Monsanto is [] well aware of how glyphosate works on the shikimate pathway, and . . . is aware of studies showing that the shikimate pathway is present in bacteria integral to the digestive systems of people and pets," (Compl. ¶¶ 41), the very study upon which Plaintiffs rely concedes that the majority of scientists have come to the *opposite* conclusion. *See* Monsanto Motion, Ex. 1 at 1417 (ECF No. 11-1) (cited by Plaintiffs at Compl. ¶ 30 n.7). The authors of that study expressly admit

that the "*currently accepted dogma* is that glyphosate is not harmful to humans or to any

mammals because *the shikimate pathway is absent in all animals*" and that only a "vocal

*minority* of experts" believes glyphosate presents a greater risk than that asserted by the

industry.  *Id.* (emphasis added).  Therefore, Plaintiffs not only fail to allege that "all

reasonable experts" agree that the Challenged Statement is false, but their own source

establishes that the current scientific consensus rejects Plaintiffs' argument.  Thus,

Plaintiffs have "effectively pled themselves out of court."  *Wagner v. Gen. Nutrition

Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *8 (N.D. Ill. July 19, 2017) (discussing

*In re GNC Corp.*, 789 F. 3d 505, in which plaintiffs conceded the existence of "some

reasonable experts" who supported the defendant's position).

## V.     PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL AS A MATTER OF LAW

### A.     Plaintiffs' Express Warranty Claims Fail Because Scotts Did Not Make Its Own Warranty And A Distributor Cannot Be Held Liable For A Manufacturer's Express Warranty

Plaintiffs' claims for breach of express warranty against Scotts must be dismissed

because Plaintiffs failed to allege that Scotts engaged in any affirmative conduct that

could amount to an express warranty and any alleged express warranty made by

Monsanto cannot render Scotts liable.  An express warranty is created by (1) "[a]ny

affirmation of fact or promise made by the seller to the buyer which relates to the goods

and becomes part of the basis of the bargain"; or (2) "[a]ny descriptions of the goods

which is made part of the bargain."  Wis. Stat. § 402.313.

"An agent, dealer, or distributor cannot be held liable on a manufacturer's express

warranty unless he has adopted it."  *Thorpe v. Hammons Sheet Metal Co.*, 991 S.W.2d

157, 158 (Mo. Ct. App. 1999); *see also Berschauer Phillips Const. Co. v. Concrete Sci.*

*Servs. of Seattle, L.L.C.*, 135 Wash. App. 1025 (Wash. Ct. App. 2006) ("A seller is not liable for the express warranties made by a manufacturer unless the seller specifically adopts the statements."); *Malul v. Capital Cabinets, Inc.*, 191 Misc. 2d 399, 403 (N.Y. Civ. Ct. 2002) (statement in advertisement by cabinet distributor "did not qualif[y] as an express warranty on behalf of [the cabinet distributor]" when accompanied by manufacturer's logo and name because "the statements seem clearly to refer to some written warranty by [the manufacturer]"); *cf. Westlye v. Look Sports, Inc.*, 22 Cal. Rptr. 2d 781, 788, n. 8 (Cal. Ct. App. 1993) (upholding grant of summary judgment in favor of defendant ski equipment distributors where "the only express statements upon which plaintiff relied were those of [ski rental company]").

"Delivering, presenting or explaining a manufacturer's warranty, without more, does not render a dealer a co-warrantor by adoption." *O'Donnell*, 440 So. 2d at 426–27; *see also Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 521 N.E.2d 201, 205 (Ill. Ct. App. 1988) (finding dealer did not adopt car manufacturer's warranty by "merely present[ing]" it to buyer, and noting that, while no Illinois cases were on point, "[s]everal cases from other jurisdictions . . . have held that the mere delivery, presentation or explanation of a manufacturer's warranty, without more, does not render a dealer a cowarrantor by adoption"); *Luciano v. World-Wide Volkswagen Corp.,* 127 A.D.2d 1, 3–4 (N.Y. App. Div. 1987) (finding express warranty claim against defendant dealer should have been dismissed when defendant "acted only as a distributor in the original sale and . . . the written, new car warranty was not issued in its name"); *Cochran v. McDonald*, 161 P.2d 305, 306 (Wash. 1945) ("[B]y merely selling the goods, [a party] does not adopt the warranty of the manufacturer as his own."); *cf. Arthur Jaffee Assocs. v. Bilsco Auto Serv.,*

*Inc.*, 89 A.D.2d 785, 785 (N.Y. App. Div. 982), *aff'd*, 448 N.E.2d 792 (N.Y. Ct. App. 1983) (finding summary judgment should have been granted in favor of defendant Fiat when express warranty at issue was made only on behalf of dealer and Fiat "made no express warranty on behalf of itself").

Nowhere in Plaintiffs' Complaint do they allege that Scotts made any affirmations or promises that would qualify as an express warranty let alone any purported warranty that was relied on by Plaintiffs and became part of the basis of the bargain.  Given that "there has been no showing that [Scotts] made [its own] express representations as to the quality of the [product] in its own promotional advertising . . . [Scotts] is not liable for breach of express warranty, as a matter of law." *Luciano*, 127 A.D.2d at 3–4.

Nor can Scotts, as the distributor, be held liable for any express warranty contained in the labeling approved by Monsanto, the manufacturer.  Merely distributing the product with the manufacturer's label is not enough to find Scotts liable based on any express warranty contained on the product. *See, e.g.*, *O'Donnell*, 440 So. 2d at 426–27 ("Delivering, presenting or explaining a manufacturer's warranty, without more, does not render a dealer a co-warrantor by adoption.").  As such, Plaintiffs fail to allege that any express warranty was made by Scotts and the claims against Scotts for breach of express warranty must be dismissed for failure to state a claim for relief.

### B.   Plaintiffs' Express Warranty Claims Fail Because Plaintiffs Did Not Satisfy UCC Notice Requirements

To bring a claim for breach of express warranty, Plaintiffs must comply with the requirements of the Uniform Commercial Code ("UCC"), which has been adopted by Wisconsin.  With respect to all "transactions in goods," the UCC provides that "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered

any breach, notify the seller of breach or be barred from any remedy." Wis. Stat. §§ 402.102, 402.607(3)(a). Plaintiffs fail to allege in their Complaint that they provided any such notice to Scotts. Because a breach of express warranty claim cannot be sustained where a buyer fails to provide the notice required by the UCC, Plaintiffs' breach of warranty claims under Wisconsin law must be dismissed. *See Wilson v. Tuxen*, 754 N.W. 2d 220, 233 (Wis. App. Ct. 2008) ("The law of this state remains that a buyer must give notice 'or be barred from any remedy.'")

## VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW

### A. Rule 12(b)(6) Standard

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a complaint must "state a claim to relief that is plausible on its face." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While a court should accept as true any well pleaded factual allegations and then determine whether those facts plausibly state a claim for relief, "a formulaic recitation of the elements of a cause of action will not do" and a court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.      Plaintiffs' Unjust Enrichment Claims Fail Because Plaintiffs Do Not Adequately Allege That They Conferred A Benefit On Scotts, The Value Of The Benefit, Or That Scotts Appreciated Any Such Benefit**

To state an unjust enrichment claim under Wisconsin law, Plaintiffs must adequately allege "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the fact of such benefit, and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Newman v. Kotlow*, 2017 WI App 50, ¶ 13 (citing *Puttkammer v. Minth*, 83 Wis. 2d 686, 688-89 (1978)).  Here, Plaintiffs' claims fail on two grounds: (1) they cannot allege that Plaintiffs conferred a benefit upon Scotts and (2) they do not allege facts sufficient to bring a claim as to what "benefit" was conferred and that Scotts "appreciated" it.

Where plaintiffs make a purchase not directly from the defendant but from an intermediate third party, plaintiffs cannot establish the first of these elements: "a benefit conferred upon the defendant by the plaintiff."  *See Emirat AG v. High Point Printing LLC*, No. 12-C-0789, 2017 WL 1180709, at *19 (E.D. Wis. Mar. 29, 2017), *appeal docketed*, No. 17-1893 (7th Cir. Apr. 28, 2017).  In *Emirat*, the Eastern District of Wisconsin court, applying Wisconsin law, found that Emirat's unjust enrichment claim against the defendant manufacturer (WS Packaging) failed because Emirat had purchased the goods at issue not from the manufacturer but from a third party broker (High Point).  *Id.* at *1–3, 19.  As a result:

> Emirat conferred no benefit on WS Packaging.  Any payment WS Packaging received for production of the game cards came from High Point, not Emirat.  Emirat may have paid High Point, but it did not pay WS Packaging.  Any benefit to WS Packaging . . . was indirect at most.

-21-

*Id.* at 19. The court held that this lack of direct benefit conferral was a "fundamental problem [that] causes Emirat's [unjust enrichment] claim to fail." *Id.*

As in *Emirat*, Plaintiffs here do not allege that they purchased Roundup Products directly from Scotts, but rather from intermediate third parties. (Compl. ¶ 22.) Consequently, based on the allegations in the Complaint, third parties, not Scotts, would have received payment for Roundup Products from Plaintiffs, and any benefit conferred on Scotts as a result of such purchases would have been "indirect at most" and would have *entirely different* amounts than whatever the plaintiffs allegedly paid, which is insufficient to sustain a claim for unjust enrichment. *See Emirat*, 2017 WL 1180709, at *19. Plaintiffs' only effort to support their claim despite this "fundamental problem" is their general allegation that "Defendants have been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members" (Compl. ¶ 178), but that is precisely the type of "legal conclusion couched as a factual allegation" that cannot save Plaintiffs' claim, even at the pleading stage. *Twombly*, 550 U.S. at 555.

Moreover, separate and apart from that deficiency, Plaintiffs must allege that a specific "benefit" was conferred upon Scotts and that Scotts "appreciated" it. Here, Plaintiffs plead no facts to prove either. The Plaintiffs purchased a product and used it. What was the specific value of the product with the allegedly false statement compared to the same product without the statement? Plaintiffs do not purport to tell us. Plaintiffs failure to plead facts identifying or quantifying that alleged "benefit" itself dooms their unjust enrichment claims. *See Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07CV156, 2009 WL 3063422, at *9 (S.D. Ohio Sept. 21, 2009) (allegations setting forth "the **types** of benefits," but not "the **value** of the benefits," are "insufficient to state a

claim for relief based on a theory of unjust enrichment because the reader is left to speculate as to the amount of value Plaintiffs provided to [the defendant].").  And Plaintiffs certainly plead no facts suggesting that Scotts "appreciated" that any such "benefit" was conferred by Plaintiffs when the products were alleged distributed.  Nor could Plaintiffs plead such facts here.  Therefore, Plaintiffs have failed to state a claim upon which relief can be granted and their unjust enrichment claims must be dismissed.

## VII.   PLAINTIFFS' DECEPTIVE TRADE PRACTICES ACT CLAIMS FAIL AS A MATTER OF LAW

"To assert a claim under the [Deceptive Trade Practices Act], [a plaintiff] must allege, among other things, at least three elements: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss."  *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 49) (internal quotation marks omitted).  Plaintiffs' Deceptive Trade Practices Act ("DTPA") claims fail because they do not allege that Scotts "made a representation to the public with the intent to induce an obligation."[5]

Quite simply, Plaintiffs fail to allege that *Scotts* made any representation that any plaintiff reviewed, saw, or relied upon.  As asserted by Plaintiffs, Monsanto invented and patented glyphosate and manufactures Roundup. (Compl. ¶¶ 19, 39, 41.)  Further, it is Monsanto that is responsible for obtaining approval of the Roundup Product labels—and

---

[5] As explained above, the DTPA claims also fail because Plaintiffs do not adequately allege "that the representation was untrue, deceptive or misleading."  *See* Part IV.

the statements contained on those labels—from the EPA.  *See* Monsanto Motion, Exs. 3–6 (ECF Nos. 11-3–11-6).  Scotts does not take title to the Round-Up products at issue nor does Plaintiffs' Complaint allege that Scotts ever took title to the Roundup Products or that Scotts itself made any allegedly false or misleading statements independent of those made by Monsanto that any Plaintiff reviewed, saw, or relied upon.  And because Plaintiffs fail to allege that Scotts made *any* representation, they necessary fail to adequately allege that Scotts made a representation "with the intent to induce an obligation."

## CONCLUSION

For the foregoing reasons, Scotts respectfully requests that this action be dismissed in its entirety.


Dated:  October 9, 2017                              Respectfully submitted,

                                                     */s/ Michelle L. Dama*
                                                     Michelle L. Dama (WI# 1041809)
                                                     Albert Bianchi, Jr. (WI# 1056920)
                                                     MICHAEL BEST & FRIEDRICH LLP
                                                     One South Pinckney Street, Suite 700
                                                     Madison, WI 53703
                                                     Phone:  (608) 257-3501
                                                     Fax:      (608) 283-2275
                                                     Email:  mldama@michaelbest.com
                                                     Email:  abianchi@michaelbest.com

                                                     Jeffrey J. Jones (MI# P80231)
                                                     *pro hac vice forthcoming*
                                                     JONES DAY
                                                     150 West Jefferson St., Suite 2100
                                                     Detroit, MI 48226
                                                     Phone:  (313) 733-3939
                                                     Fax:      (313) 230-7997
                                                     Email:  jjjones@jonesday.com

                                                     Benjamin B. Menker (OH# 91995)
                                                     *pro hac vice forthcoming*
                                                     JONES DAY
                                                     325 John H. McConnell Blvd., Suite 600
                                                     Columbus, OH 43215
                                                     Phone:  (614) 469-3939
                                                     Fax:      (614) 461-4198
                                                     Email:  bmenker@jonesday.com

                                                     ***Counsel for Defendant***
                                                     ***The Scotts Miracle-Gro Company***

-25-