UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS BLITZ, a Wisconsin consumer; KEVIN BLAIR, an Illinois consumer; GREGORY CHICK, a California consumer; MARIO WASHINGTON, a New York consumer; TERENCE D. MOORE, a New Jersey consumer; and RICHARD J. DULNIAK, a Florida consumer, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br>   v.<br><br>MONSANTO COMPANY, a Missouri Corporation; and SCOTTS MIRACLE-GRO COMPANY, an Ohio Corporation,<br><br>              Defendants. | Case No. 3:17-cv-00473 |

**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

MIL-28885829-1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I. PLAINTIFFS' VOLUNTARY DISMISSAL OF NON-WISCONSIN PLAINTIFFS MEANS THAT THIS COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO ANY CLAIMS OF NON-WISCONSIN MEMBERS OF A PUTATIVE NATIONAL CLASS ....................................................... 2

II. PLAINTIFF FAILS TO EXPLAIN WHY THE RECOGNITION BY HIS OWN "EXPERTS" THAT THE STATEMENT AT ISSUE IS WIDELY ACCEPTED AS TRUE SHOULD NOT BE DISPOSITIVE OF HIS FALSE ADVERTISING AND BREACH OF EXPRESS WARRANTY CLAIMS ..................................................... 3

III. PLAINTIFF ADMITS THAT PREEMPTION IS APPROPRIATE WHERE PLAINTIFF SEEKS CHANGES TO AN EPA-APPROVED LABEL ............................. 7

IV. PLAINTIFF ADMITS THAT HE DID NOT PROVIDE NOTICE BEFORE FILING THIS COMPLAINT .............................................................................. 9

V. SINCE PLAINTIFF ADMITS THAT HE DID NOT PURCHASE ROUNDUP® DIRECTLY FROM MONSANTO, HE CANNOT BRING AN UNJUST ENRICHMENT CLAIM ................................................................................... 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barlow v. DeVilbiss Co.*,
 214 F. Supp. 540 (E.D. Wis. 1963) ................................................................................... 11

*Barrera v. Monsanto Co.*,
 2016 WL 4938876 (Del. Super. Sept. 13, 2016) ................................................................ 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 555 (2007) ......................................................................................................... 12

*Bober v. Glaxo Wellcome PLC*,
 246 F.3d 934 (7th Cir. 2001) .............................................................................................. 6

*Bristol-Myers Squibb v. Super. Ct. of California*,
 137 S. Ct. 1780 (2017) ....................................................................................................... 2

*Carias v. Monsanto Co.*,
 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ................................................................... 8

*Coyle v. Hornell Brewing Co.*,
 2010 U.S. Dist. LEXIS 59467 (D.N.J. June 15, 2010) ..................................................... 10

*De Falco v. Vibram USA, Inc.*,
 No. 12 C 7238, 2013 U.S. Dist. LEXIS 36679 (N.D. Ill. Mar. 18, 2013) .................. 10, 11

*Doran v. Salem Inn, Inc.*,
 422 U.S. 922 (1975) ........................................................................................................... 7

*Emirat AG v. High Point Printing LLC*,
 2017 WL 1180709 (E.D. Wis. Mar. 29, 2017) ........................................................... 11, 12

*Giglio v. Monsanto Co.*,
 2016 WL 1722859 (S.D. Cal. April 29, 2016) ................................................................... 8

*In re GNC Corp.*,
 789 F.3d 505 (4th Cir. June 19, 2015) .................................................................... 3, 4, 5, 6

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................................... 6

*Hardeman v. Monsanto Co.*,
 216 F.Supp. 3d 1037 (N.D. Cal. 2016) ............................................................................... 8

*Hasemann v. Gerber Products Co.*,
 2016 WL 5477595 (E.D.N.Y., Sept. 28, 2016) ...........................................................................5

*Hernandez v. Monsanto Company*,
 2016 WL 6822311 (C.D. Cal. July 12, 2016) .............................................................................8

*Martin v. Monsanto*,
 2017 WL 659014 (C.D. Cal. Feb. 16, 2017) ...............................................................................8

*Mendoza v. Monsanto Co.*,
 2016 WL 3648966 (E.D. Cal. July 8, 2016) ...............................................................................8

*Mirzaie v. Monsanto Co.*,
 2016 WL 146421 (C.D. Cal. Jan. 12, 2016) ...............................................................................8

*Novell v. Migliaccio*,
 749 N.W. 2d 544 (Wis. 2008) .....................................................................................................6

*Paulson v. Olson Implement Co., Inc.*,
 107 Wis.2d 510 (Wis. 1982) .....................................................................................................10

*Samuels v. Mackell*,
 401 U.S. 66 (1971) .....................................................................................................................7

*Schwarz Pharma, Inc. v. Breckenridge Pharmaceutical, Inc.*,
 388 F. Supp. 2d 967 (E.D. Wis. 2005) .......................................................................................5

*Sheppard v. Monsanto Co.*,
 2016 WL 3629074 (D. Haw. June 29, 2016) .............................................................................8

*Smith v. Hartz Mountain Corp.*,
 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) ............................................................................7

*Strzakowlski v. GMC*,
 2005 U.S. Dist. LEXIS 18111 (D.N.J. Aug. 16, 2005) .............................................................10

*Wilgus v. Hartz Mountain Corp.*,
 2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ..........................................................................7, 9

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ......................................................................................................6

*Wilson v. Tuxen*,
 754 N.W.2d 220 (Wis. Ct. App. 2008) .......................................................................................9

**Statutes**

UCC § 2-607(3)(a) ............................................................................................................................9

Wis. Stat. § 100.18 ................................................................................................................. 5

Wis. Stat. § 402.607(3)(a) ..................................................................................................... 9

Wis. Stat. § 895.466 ............................................................................................................. 5

Wis. Stat. § 943.20 ............................................................................................................... 5

## INTRODUCTION

What was once an 11-count Complaint that asserted violations of the laws of six states on behalf of six putative class plaintiffs has now been reduced to a single plaintiff asserting the violation of Wisconsin's laws.  *See* Notice of Voluntary Dismissal, Dkt. No. 32.  All that remains are Plaintiff Blitz's Wisconsin Deceptive Trade Practices Act, breach of express warranty, and unjust enrichment claims, which he apparently asserts on behalf of himself and a Wisconsin and national class of similarly situated persons.  Even with only Plaintiff's whittled-down claims, Plaintiff's Complaint cannot survive Monsanto's motion to dismiss for the following reasons.

*Plaintiff conceded that the Court lacks personal jurisdiction over Monsanto with respect to non-Wisconsin Plaintiffs.*  Thus, to the extent Plaintiff Blitz purports to represent a "National Class," this Court does not have personal jurisdiction over Monsanto with respect to claims of non-Wisconsin members.

*Plaintiff's Opposition utterly fails to explain why his false advertising and breach of express warranty claims should remain when his own purported experts admit that the statement at issue is widely accepted in the scientific community as true*.  Plaintiff has no answer for what Plaintiff's experts admit is "accepted dogma" that the science behind the statement at issue is true.

*Plaintiff admits that preemption is appropriate where Plaintiff seeks changes to an EPA-approved label*.  The relief Plaintiff seeks would necessarily lead to a change of the label, and is therefore preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").

*Plaintiff admits that he did not provide the statutorily required notice to Monsanto of his claims*.  This admission, by itself, means that Plaintiff's breach of express warranty claims should be dismissed.

***Plaintiff admits that he did not purchase Roundup® directly from Monsanto***.   This admission means that as a matter of law Plaintiff cannot bring a claim for unjust enrichment.

## ARGUMENT

**I.   PLAINTIFFS' VOLUNTARY DISMISSAL OF NON-WISCONSIN PLAINTIFFS MEANS THAT THIS COURT LACKS PERSONAL JURISDICTION WITH RESPECT TO ANY CLAIMS OF NON-WISCONSIN MEMBERS OF A PUTATIVE NATIONAL CLASS**

In response to Monsanto's Motion to Dismiss, "and in light of recent Supreme Court guidance, Plaintiffs … elected to dismiss [non-Wisconsin] claims voluntarily." *See* Pls.' Opp. to Def. Monsanto Company's Mot. to Dismiss Pls.' Compl. at 2, Dkt. No. 31 [hereinafter "Opp."]. But Plaintiff Blitz appears to be still asserting claims on behalf of members of a putative "National Class" who reside in states other than Wisconsin and who did not suffer any alleged harm in Wisconsin.  To the extent Blitz is still seeking a national class, this Court lacks personal jurisdiction to entertain those claims for the same reasons that non-Wisconsin Plaintiffs conceded that this Court lacked personal jurisdiction. *See Bristol-Myers Squibb v. Super. Ct. of California*, 137 S. Ct. 1780, 1783 (2017) (holding that a California state court did not have personal jurisdiction over a nonresident defendant with respect to the nonresident plaintiffs' products liability, negligent representation, and misleading advertising claims, which were brought under California law); *see also* Def. Monsanto Company's Brief in Support of its Mot. to Dismiss Pls.' Compl. at 9–13, Dkt. No. 12 [hereinafter "Mot. to Dismiss"].[1]

---

[1] Plaintiff disingenuously suggests that by pursuing the Motion to Dismiss on an "archaic notion of personal jurisdiction" that Monsanto is forcing Plaintiff to turn a single case before a single court into many cases involving many courts.  *See* Opp. at 2.  Plaintiff fails to advise the Court that both before and after the filing of its Motion to Dismiss, Monsanto had several conversations with Plaintiff's counsel regarding how these claims might be resolved in front of a single court.  This included a conversation with Plaintiff's counsel (before filing the Motion to Dismiss) regarding the lack of personal jurisdiction over the non-Wisconsin claims in light of the Supreme Court's holding in *Bristol-Myers Squibb*.  During that call, Monsanto inquired whether all Plaintiffs would be amenable to dismissing the instant actions in Wisconsin and refiling their

II. **PLAINTIFF FAILS TO EXPLAIN WHY THE RECOGNITION BY HIS OWN "EXPERTS" THAT THE STATEMENT AT ISSUE IS WIDELY ACCEPTED AS TRUE SHOULD NOT BE DISPOSITIVE OF HIS FALSE ADVERTISING AND BREACH OF EXPRESS WARRANTY CLAIMS**

Plaintiff has no answer to the fact that it is universally accepted by regulators and the scientific community that glyphosate targets a Shikimate pathway enzyme (EPSP synthase) that is ***not*** found in human or animal cells—just as the statement at issue describes.  *See* Mot. to Dismiss at 2, 16.  Plaintiff does not deny that even the purported experts on which he relies for his assertion of falsity, *see* Compl. ¶ 30, p. 7 n.7, readily admit that the "***currently accepted dogma is that glyphosate in not harmful to humans or to any mammals because the shikimate pathway is absent in all animals***."  Mot. to Dismiss at 5-6, 16.  Such a concession is fatal to Plaintiff's claims because, where the alleged "false" statement is based on a scientific claim of literal falsity—as it is here—the alleged falsity must be based on unanimous expert opinion.  *See In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. June 19, 2015) ("When litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'").  Far from unanimous expert opinion showing that Monsanto's statement is false, the "accepted dogma" is that the statement is true—that the "the shikimate pathway is absent in all animals."[2]  Plaintiff's arguments to combat or otherwise argue around this admission fail.

---

action in the Eastern District of Missouri, where general jurisdiction exists over Monsanto, and which is, therefore, an appropriate jurisdiction for pursuing claims under the various state laws then pled.  Plaintiffs' counsel advised Monsanto's counsel that it did not believe the *Bristol-Myers Squibb* decision impacted their ability to pursue the non-Wisconsin claims before this Court and, thus, would not be dismissing their non-Wisconsin claims.  Plaintiffs do have available a jurisdiction to pursue all of their claims before a single District Court.  The choice to pursue individual actions in multiple states is unfortunate, but it is a choice Plaintiffs themselves have made.

[2] Plaintiff also asserts that the "statement is simply false, and no expert exists who would validate it."  Opp. at 6.  Again, this is contradicted by Plaintiff's sole purported experts, who

*First,* Plaintiff attempts to recast the statement at issue as "not a 'scientific claim'" but merely a factual statement that does not require expert analysis. Opp. at 5. But Plaintiff's own Complaint belies such argument. Plaintiff cites to scientific expert analysis as the basis for pleading that the statement is false. Compl. ¶¶ 29-30. He further acknowledges that one must look to "scientific evidence" to determine the truth or falsity of the statement: "in fact scientific evidence indicates that glyphosate targets an enzyme that is found in people and pets." *Id.* ¶¶ 152, 164; *see also id.* at ¶ 53 (claiming the statement at issue "requires scientific knowledge and research" to understand "the true nature" of glyphosate). Since Plaintiff's Complaint concedes that the statement at issue is a scientific one, the unanimous expert opinion standard from *GNC* applies. As noted above, Plaintiff acknowledges he cannot and does not meet this standard.

*Second*, Plaintiff attempts to distinguish the enzyme EPSP synthase from the Shikimate Pathway, claiming their allegations only concern the presence or absence of the former, not the latter. Opp. at 5. But EPSP synthase is a ***component*** of the Shikimate Pathway, which Plaintiff's Complaint specifically recognizes. *See* Compl. ¶ 29 ("Glyphosate kills plants by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, disrupting the fifth of six enzymatic steps in the shikimate pathway, which processes aromatic amino acids."). Plaintiff's experts recognize this as well: "[G]lyphosate, a member of the general class of organophosphates, inhibits the enzyme 5-enolpyruvylshikimic acid-3-phosphate synthase (EPSP synthase), ***the rate-limiting step in the synthesis of aromatic amino acids in the shikimate pathway*** in plants." Mot. to Dismiss, Ex. 1 at 4 (emphasis added.) Thus, this is a distinction without a difference, as Plaintiff's experts agree that "[t]his pathway, [is] not present in mammals." *Id*. If the "accepted dogma" is that the Shikimate Pathway is not present in

---

recognize not only that the "accepted dogma" is that the statement is true, but also that they are merely part of a "vocal minority" who assert the statement's falsity. Mot. to Dismiss at 6.

mammals, it is also the "accepted dogma" that EPSP synthase is not present in mammals. Plaintiff's attempt to divest the two from one another in another attempt to circumvent *GNC* fails.

*Third,* Plaintiff incorrectly asserts that "Monsanto's motion does not dispute that EPSP can be found inside the bodies of people or pets. Nor does Monsanto contend that any experts or scientists dispute that EPSP is found in inside the bodies of people or pets." Opp. at 6. To be clear, Monsanto's position is that the statement is true – neither literally false nor misleading. Indeed, Monsanto – as well as experts throughout the world – dispute that EPSP can be found inside the bodies of people or pets. It is only the Plaintiff's experts – the "vocal minority" – who claim otherwise. *See* Mot. to Dismiss at 6. As noted above, this is insufficient to establish falsity.

*Fourth*, Plaintiff attempts to distinguish *GNC Corp.* by citing two other cases. Plaintiff argues that *Hasemann v. Gerber Products Co.*, 2016 WL 5477595 (E.D.N.Y., Sept. 28, 2016) distinguished *GNC Corp.* on the basis that *GNC Corp.* "did not involve claims made under the Wisconsin false statements statute." Opp. at 6. But Plaintiff's Complaint *also* does not involve claims under the Wisconsin false statement statutes. Plaintiff asserts claims under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("WDTPA"), *not* the state's false statement statutes, Wis. Stat. §§ 895.466 and 943.20, which the *Hasemann* court was discussing when it referenced *GNC Corp. See Hasemann*, 2016 WL 5477595 at *17, *17 n.22. Moreover, the court in *Hasemann* granted the defendants' motion to dismiss, determining that the plaintiffs had *not* sufficiently alleged a false statement under Wisconsin law. *Id.* at *17.

The other case cited by Plaintiff, *Schwarz Pharma, Inc. v. Breckenridge Pharmaceutical, Inc.*, 388 F. Supp. 2d 967 (E.D. Wis. 2005), which predates *GNC Corp.* by ten years, is also

inapplicable.  There, the court refused to grant summary judgment under the Lanham Act and the WDTPA where there was "conflicting evidence in the record."  Opp. at 6; *Schwarz Pharma*, 388 F. Supp. 2d at 976.  Here, however, there is no conflicting evidence.  There is only the admission of the sole purported experts on which Plaintiff relies, which establishes that the scientific community understands and recognizes that the statement at issue is true.

*Finally*, Plaintiff claims that he adequately pled deception (Opp. at 6-7) which would mean that the statement is true, but somehow misleading.  *See id.* at 3-4.  But just like in *GNC Corp.*, "Plaintiff[] ha[s] consistently argued . . . that the challenged representations are false . . . . The [Complaint] nowhere alleges, and Plaintiff[] ha[s] at no time argued, that any of the representations are literally true but misleading."  789 F.3d at 514.  "Because Plaintiff[] elected to plead that the Companies' representations are false rather than true but misleading, we must determine whether the [Complaint] states facts showing that the representations are literally false."  *Id*. at 514-15.  Nowhere in his Complaint does Plaintiff claim the statement is true but misleading.  His repeated, and only, allegation is that it is false.  As described above, the statement cannot, as a matter of law, be considered literally false.[3]  Accordingly, Monsanto is entitled to dismissal.

---

[3] Plaintiff mentions non-controlling caselaw in which courts have stated that the question of consumer deception is "***best*** left to the trier of fact" and "***usually*** a question of fact."  Opp. at 7 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014)) (emphases added).  But Plaintiff fails to address the caselaw cited by Monsanto for the proposition that this general rule does not apply here.  *See*, *e.g., Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (affirming dismissal of Illinois consumer fraud claims based on review of product packaging information and other information appended to the complaint, because "[a]s a matter of law, none of the three statements on which Bober based his CFA claims is deceptive"); Mot. to Dismiss at 17–19 (discussing cases in which courts dismissed false advertising claims for failure to state a claim when the plaintiff alleged an implausible interpretation of the advertising claim).  In fact, it is Wisconsin law that an allegation that consumers are deceived by a statement based on an unreasonable interpretation of the statement

### III. PLAINTIFF ADMITS THAT PREEMPTION IS APPROPRIATE WHERE PLAINTIFF SEEKS CHANGES TO AN EPA-APPROVED LABEL

Plaintiff admits that if his claims seek to change Monsanto's EPA-approved labels, they would be preempted by FIFRA. *See* Opp. at 8. So, in an attempt to avoid the preemption of his claims, Plaintiff argues that FIFRA preemption can *only* apply if injunctive relief is requested. *Id*. That is simply not the case.[4]

The caselaw does not hold that preemption only applies to injunctive relief. Plaintiff does not dispute that in both *Wilgus v. Hartz Mountain Corp.*, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013) and *Smith v. Hartz Mountain Corp*., 2012 WL 5451726, *4 (N.D. Ohio Nov. 7, 2012), the plaintiffs were seeking monetary damages. *See* Mot. to Dismiss at 21-22. Yet, the courts held that preemption was appropriate because plaintiffs were clearly seeking a change in EPA-approved labels. *See Wilgus*, 2013 WL 653707 at *7 ("Plaintiffs can argue all they want that their claims are not preempted because they are not specifically seeking changes to the labeling of Hartz's product, but the allegations made throughout their Complaint make it clear that all of their claims in this case are based on . . . express reference[s] to the product label and claims [that] it is inadequate."); *Smith*, 2012 WL 5451726 at *4 ("any claim that asserts Hartz is liable

---

– as is the case here – may be subject to dismissal as a matter of law. *See* Mot. to Dismiss at 17–19; *Novell v. Migliaccio*, 749 N.W. 2d 544, 554 (Wis. 2008) ("[A] circuit court may determine as a matter of law that a plaintiff's belief of a defendant's representation is unreasonable . . . .").

[4] Plaintiff's distinction between declaratory relief and injunctive relief is of no moment. The Supreme Court has recognized that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of" federal law as an injunction. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971). Therefore, "the practical effect of [injunctive and declaratory] relief will be virtually identical." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). Indeed, Plaintiff recognizes that if he is successful on his complaint, Monsanto's *only* options are to *change its label* or else continue to face legal action. Opp. p. 9 (noting Monsanto can either "continue to engage in deceptive conduct, [or] remove the false statement from its labels…., [or] petition the EPA for approval of different labels"). Whether Plaintiffs wants to call declaratory or injunctive or equitable relief, at its core Plaintiff's claim is that Monsanto must change its federally-approved label. Such a claim is preempted, as explained herein.

to Plaintiffs for producing a product label in a manner consistent with the EPA's requirements seeks to impose an additional or different labeling requirement, and is preempted by FIFRA.").

Plaintiff also does not dispute that in *Mirzaie v. Monsanto Co.*, 2016 WL 146421, *2-3 (C.D. Cal. Jan. 12, 2016) (emphasis added), the Central District of California dismissed the entire Complaint "***with prejudice***," based on preemption, even though the plaintiff sought injunctive relief and "an award of money damages as compensation" for the same statement at issue here. *See* Mot. to Dismiss at 20-21. Thus, based on the EPA's approval of the label at issue, the Central District of California would not allow the plaintiffs to pursue any type of damages—even damages beyond injunctive relief—the same damages that Plaintiff is seeking here.

Plaintiff also mischaracterizes *Carias v. Monsanto Co.*, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016). While it is true that the court in *Carias* denied dismissal of plaintiff's damages claims, it did so not because, as Plaintiff suggests, FIFRA could not preempt such claims, but because the false advertising claims in that case were intertwined with toxic tort claims alleging personal injury and the court did not want to decide the factual issue of whether Roundup® has any detrimental effect on human health on a motion to dismiss. *See Carias*, 2016 WL 6803780 at *9.[5] In contrast here, Plaintiff has not alleged that any individual consumer has suffered any

---

[5] In fact, most of the cases Plaintiff relies on in claiming that only injunctive relief can trigger FIFRA preemption are, like *Carias*, cases where false advertising and personal injury claims are entangled in such a way that it would be difficult for a court to separate the two. *See Mendoza v. Monsanto Co.*, 2016 WL 3648966 at *3 (E.D. Cal. July 8, 2016) (plaintiff alleged she contracted cancer after being exposed to Roundup® products); *Hernandez v. Monsanto Company*, 2016 WL 6822311, at *2 (C.D. Cal. July 12, 2016) (same); *Sheppard v. Monsanto Co.*, 2016 WL 3629074, at *1 (D. Haw. June 29, 2016) (same); *Giglio v. Monsanto Co.*, 2016 WL 1722859, at *1 (S.D. Cal. April 29, 2016) (same); *Hardeman v. Monsanto Co.*, 216 F.Supp. 3d 1037, Dkt. 1 Compl. ¶¶ 112-115 (N.D. Cal. 2016) (same); *Barrera v. Monsanto Co.*, 2016 WL 4938876 (Del. Super. Sept. 13, 2016) (same). The only case Plaintiff relies on that does not involve a personal injury claim is *Martin v. Monsanto*, 2017 WL 659014, at *4 (C.D. Cal. Feb. 16, 2017), which relies on

health effects from using Roundup®, and in fact, he is "*not* seeking damages for any personal injuries in this Complaint." Compl. at 3, n.5 (emphasis added).

As Plaintiff's Complaint makes clear, the claims in this case are based on the idea that Roundup®'s EPA-approved product label is somehow inadequate. That means that allegations regarding the adequacy of that Monsanto's label, "no matter how those claims are couched, run afoul of FIFRA and cannot move forward." *Wilgus*, 2013 WL 653707 at *7.

## IV. PLAINTIFF ADMITS THAT HE DID NOT PROVIDE NOTICE BEFORE FILING THIS COMPLAINT

Plaintiff does not dispute that he failed to provide notice to Monsanto before bringing this Complaint and making a claim of breach of express warranty. Wisconsin law is very clear that notice is required before a Complaint can be filed: A buyer "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Wis. Stat. § 402.607(3)(a).[6] This admission alone means that Plaintiff's breach of express warranty claim should be dismissed. None of Plaintiff's arguments excuse this failure.

*First*, Plaintiff argues that "[w]hether or not notice was timely given is a fact issue not usually appropriate for consideration on a motion to dismiss." Opp. at 14. But here, there is no dispute on the timeliness of the notice – there was no notice given at all. Therefore, Plaintiff's express warranty claim must be dismissed. *Wilson v. Tuxen*, 754 N.W.2d 220, 233 (Wis. Ct.

---

the personal injury cases of *Carias* and *Hardeman* and does not address the fact that the court dismissed *Mirazie* with prejudice.

[6] Plaintiff states that "Monsanto seeks to dismiss Plaintiffs' express warranty claims on the grounds of insufficient prior notice given pursuant to UCC § 2-607(3)(a)." Opp. at 14. However, in its motion to dismiss, Monsanto more accurately cites Wis. Stat. § 402.607(3)(a) as the Wisconsin statute governing Plaintiff's express warranty claim. Mot. to Dismiss at 24-25.

App. 2008) ("The law of this state remains that a buyer must give notice 'or be barred from any remedy.'").[7]

*Second,* Plaintiff argues that there are applicable exceptions to the notice requirement, but notably cites no Wisconsin law recognizing those exceptions. *See* Opp. at 14-15. Instead, Plaintiff cites two New Jersey cases for the supposed exception that notice is not required because Monsanto is a manufacturer and Roundup® is sold through retail channels. *See Coyle v. Hornell Brewing Co.,* 2010 U.S. Dist. LEXIS 59467, at *19-*21 (D.N.J. June 15, 2010); *Strzakowlski v. GMC*, 2005 U.S. Dist. LEXIS 18111, at *14-*15 (D.N.J. Aug. 16, 2005). But this exception does not exist under Wisconsin law and hence is of no avail to Plaintiff. *See Paulson v. Olson Implement Co., Inc.*, 107 Wis.2d 510, 522-527 (Wis. 1982) (finding that a plaintiff, who bought the product from a dealer distributor, was required to provide notice to the manufacturer to maintain an express warranty claim).

Plaintiff next cites to one Illinois case which notes that notice may not be required when either "(1) the seller has actual knowledge of the claimed defect; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of warranty." *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 U.S. Dist. LEXIS 36679, at *24 (N.D. Ill. Mar. 18, 2013). The plaintiff in *De Falco* brought claims under Illinois law alleging that the defendant manufacturer made false representations in its marketing regarding its product's health impact. *Id.* Similar claims had been brought against the defendant previously. *Id.* In spite of the previous claims, the court in *De Falco* dismissed the plaintiff's breach of warranty claim for lack of notice, because the actual knowledge exception applies "only where

---

[7] For the same reason, Plaintiff's argument that he is not required to provide Monsanto with notice because the notice requirement is triggered by "discovery" of the breach is inapplicable. Timing is not the issue here. Plaintiff did not provide any notice of the alleged breach to Monsanto.

the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id*. Plaintiff has not – and cannot – claim that Monsanto had actual knowledge of the alleged trouble with Plaintiff's particular transaction.  Therefore, these exceptions do not apply.

*Finally*, Plaintiff argues that notice was unnecessary because Monsanto is in receipt of a demand letter dated March 15, 2017, complete with a draft complaint alleging breach of express warranty.  Opp. at 15.  This demand letter, however, was sent on behalf of Gregory Chick and a California class and alerted Monsanto only that Mr. Chick was planning on bringing a breach of express warranty claim under California law.  *See* Ex. 7 to Decl. of Paul D. Cranley ¶¶ 89-92, Dkt. No. 11-7.  Neither the draft complaint nor the demand letter mention Mr. Blitz, a Wisconsin class, or any Wisconsin law claims.  *See id.*  The fact that other Plaintiffs, now voluntarily dismissed from this action, have filed "the same allegations," under the laws of states other than Wisconsin, based on facts that occurred outside of Wisconsin, does not excuse Plaintiff from providing the proper notice under Wisconsin law.  *Barlow v. DeVilbiss Co*., 214 F. Supp. 540, 545 (E.D. Wis. 1963) (seller's knowledge of facts constituting breach of warranty did not obviate need for giving of statutory notice or preclude failure to give timely notice from constituting bar to recovery).

**V.    SINCE PLAINTIFF ADMITS THAT HE DID NOT PURCHASE ROUNDUP® DIRECTLY FROM MONSANTO, HE CANNOT BRING AN UNJUST ENRICHMENT CLAIM**

Plaintiff admits that he purchased Roundup®, not from Monsanto, but "from the Home Depot store."  Compl. ¶ 22.  This admission destroys Plaintiff's unjust enrichment claim.  *See Emirat AG v. High Point Printing LLC*, 2017 WL 1180709, at *19 (E.D. Wis. Mar. 29, 2017).  In *Emirat*, the Eastern District of Wisconsin court, applying Wisconsin law, found that Emirat's unjust enrichment claim against the defendant manufacturer (WS Packaging) failed because

Emirat had purchased the goods at issue not from the manufacturer but from a third-party broker (High Point).  *Id.* at *1–3, 19.  Consequently, based on the allegations in the Complaint, it was the retail store, **not** Monsanto, that received payment for Roundup® from Plaintiff, and any benefit conferred on Monsanto as a result of such purchases would have been "indirect at most" and would have *entirely different* amounts than whatever the Plaintiff allegedly paid, which is insufficient to sustain a claim for unjust enrichment.  *See id.* at *19 (holding that the lack of direct benefit conferral was a fundamental problem that causes an unjust enrichment claim to fail).  Plaintiff's only effort to support his claim despite this "fundamental problem" is his general allegation that "Defendants have been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members."  Compl. ¶ 178.  But that is precisely the type of "legal conclusion couched as a factual allegation" that cannot save Plaintiff's claim, even at the pleading stage.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 556 (2007).

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 26th day of October, 2017.

                Attorneys for Monsanto Co.

                HUSCH BLACKWELL LLP

By:  *s/ Paul D. Cranley*
      Thomas P. Heneghan
      State Bar No. 1024057
      Paul D. Cranley
      State Bar No. 1050029

33 E. Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
Phone:  (608) 255.4440
Fax:  (608) 258.7138
Tom.Heneghan@huschblackwell.com
Paul.Cranley@huschblackwell.com

                WINSTON & STRAWN LLP

By:  *s/ John J. Rosenthal*
      John J. Rosenthal (admitted *pro hac vice*)
      Adam S. Nadelhaft  (admitted *pro hac vice*)

1700 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5000
Fax: (202) 282-5100
jrosenthal@winston.com
anadelhaft@winston.com