IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS BLITZ,

                                Plaintiff,                              OPINION AND ORDER

        v.
                                                                         17-cv-473-wmc
MONSANTO COMPANY,

                                Defendant.

Plaintiff Thomas Blitz filed this putative class action against Monsanto Company, alleging that the label on its product includes the following false, misleading and deceptive statement: "Glyphosate targets an enzyme found in plants but not in people or pets." (*See* Compl. (dkt. #1) ¶ 34.) Presently before the court is defendant's motion to dismiss. (Dkt. #10.) For the reasons discussed below, that motion is granted in part and denied in part.

FACTS[1]

Plaintiff Thomas Blitz resides in Waunakee, Wisconsin. (Compl. (dkt. #1) ¶ 22.) He purchased Roundup from a Home Depot store. (*Id.*) Blitz alleges that the statement on the label intimating that Roundup was safe to use around people and pets induced him to purchase the product, and that he suffered pecuniary loss as a result. (*Id.* at ¶ 22, ¶75.)

Monsanto Company is a Delaware corporation headquartered in Missouri. (*Id.* at

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

¶ 18.)  Monsanto manufactures Roundup®, a weed and grass-killing product.[2]  (Compl. (dkt. #1) ¶ 1.)  The active ingredient in Roundup is glyphosate, (*Id.* at ¶ 2), which kills weeds and grasses by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, thus disrupting one of the steps in the so-called "shikimate pathway."[3]  (*Id.* at ¶ 29.)

Roundup's label reads: "DID YOU KNOW?  Glyphosate targets an enzyme found in plants but not in people or pets."  (*Id.* at ¶ 35.)  The Environmental Protection Agency ("EPA") has registered glyphosate as a pesticide since 1974, and it renewed that registration in 1993.  (Mot. to Dismiss Br. (dkt. #12) 12.)  The EPA also approved the Roundup labels at issue as (1) EPA Reg. No. 71995-25; (2) EPA Reg. No. 71995-29; and (3) EPA Reg. No. 71995-33.  (*Id.*)  Each label includes the same statement "Glyphosate targets an enzyme found in plants but not in people or pets."  (*Id.* at 13.)

The parties appear to agree that EPSP is not found in human and animal *cells* as evidenced by the absence of the shikimate pathway.  (*See* Br. in Opp. (dkt. #31) 6; *accord* Reply (dkt. #41) 8.)  Taking plaintiff's allegations as true, however, EPSP is found in bacteria that inhabit the human and other mammalian guts.  (Compl. (dkt. #1) ¶ 30.)

OPINION

Defendant seeks dismissal of plaintiff's claims for failure to state a claim.  A

---

[2] Plaintiff purports in referring to "Roundup" to include any and all products sold by Monsanto under that trademark.

[3] The shikimate pathway is a multi-step chemical pathway that creates amino acids that plants need to live.  (Mot. to Dismiss Br. (dkt. #12) 13.)  By disrupting this pathway, glyphosate kills plants.  (Compl. (dkt. #1) ¶ 29.)

motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "To survive a motion to dismiss under Rule 12(b)(6)," a plaintiff must allege sufficient facts to "'state a claim for relief that is plausible on its face.'" *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570). As this court has previously emphasized, the motion to dismiss phase of the proceedings "is not an opportunity for the court to find facts or weigh evidence." *My Health, Inc. v. Gen. Elec. Co.*, No. 15-CV-80-JDP, 2015 WL 9474293, at *2 (W.D. Wis. Dec. 28, 2015). The court must "tak[e] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

Defendant makes four arguments in support of its motion to dismiss: (1) federal law expressly preempts plaintiff's claims; (2) the Roundup label is not false or misleading as a matter of law; (3) the breach of express warranty claim fails because plaintiff failed to give proper notice; and (4) the unjust enrichment claim fails because plaintiff did not confer a benefit on defendant. Defendant also challenges plaintiff's request for certification of a national class under Federal Rules of Civil Procedure 23(a) and (b)(3).

## I. Personal Jurisdiction

Because this is a court of limited jurisdiction, the court begins there. The complaint originally alleged violations of six different states' deceptive trade practices

laws on behalf of six putative class representatives, including Blitz, a Wisconsinite, and five non-resident plaintiffs. (Compl. (dkt. #1) ¶¶ 22-27.) However, in light of the Supreme Court's decision in *Bristol-Myers Squibb v. Super. Ct. of California*, 137 S.Ct. 1780 (2017), the five non-resident plaintiffs were dismissed voluntarily. (*See* dkt. #43.) Having rendered moot defendant's argument that the court lacks personal jurisdiction over the claims of the five non-Wisconsin plaintiffs, two jurisdictional questions remain: (1) whether the court has personal jurisdiction over the claims asserted by Blitz; and (2) whether the court has personal jurisdiction over a nationwide class action.

As to named-plaintiff Blitz's claims, this court clearly has personal jurisdiction. Blitz is a Wisconsin resident. (Compl. (dkt. #1) ¶ 22.) He purchased Roundup from a Home Depot store in Wisconsin. (*Id.*) Because that transaction creates an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State," *Bristol-Myers Squibb*, 137 S.Ct. at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)), this court may exercise specific personal jurisdiction over Blitz's claims against Monsanto. Indeed, defendant does not contest that the court has personal jurisdiction over Blitz's claims against it. (Mot. to Dismiss Br. (dkt. #12) 9.)

As to plaintiff's apparent desire to have certified a nationwide class of persons who purchased Roundup under Rules 23(a) and 23(b)(3) of the Federal Rules (Compl. (dkt. #1) 31), defendant argues that this court may not exercise specific personal jurisdiction over the claims of non-resident plaintiffs under *Bristol-Myers Squibb*, including as members of a putative nationwide class. (Reply (dkt. #41) 7.) However, *Bristol-Myers*

*Squibb* concerned the power of a *state* court to exercise specific personal jurisdiction over non-resident class members, expressly leaving open the question "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a *federal* court." *Bristol-Myers Squibb*, 137 S.Ct. at 1784 (emphasis added). Because this question need not be decided now, and the court would no doubt benefit from greater factual and legal briefing before resolving, the court will also reserve judgment on the question of whether it can exercise personal jurisdiction over the claims of a nationwide class, at this time.[4]

## II. Preemption

Defendant also argues that plaintiff's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, because the EPA registered glyphosate and approved the Roundup label. (Mot. to Dismiss Br. (dkt. #12) 27-30.) Under FIFRA, all pesticides must be registered with the EPA before sale or distribution. 7 U.S.C. § 136a(a). The EPA then registers a pesticide if its labeling complies with FIFRA's requirements, 7 U.S.C. § 136a(c)(5)(B), meaning that the EPA will not register a "misbranded" pesticide. 7 U.S.C. § 136(q)(1)(A). A pesticide is "misbranded" if "its labeling bears any statement, design, or graphic representation

---

[4] The court recognizes that delaying a determination of this question of personal jurisdiction may delay a determination of the amount in controversy under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A), (5)(B) (diversity under CAFA is met if "any member of a class of [at least 100] plaintiffs is a citizen of a state different from any defendant," and more than $5,000,000 is at issue). However, the determination whether the amount in controversy exceeds the jurisdictional threshold is made at the time the case is filed. *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997) ("[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction." (citations omitted)).

relative thereto or to its ingredients which is false or misleading in any particular." *Id.*

Finally, registration constitutes *prima facie* evidence that the pesticide's labeling complies

with FIFRA's requirements, but registration may *not* serve as a defense to any FIFRA

violation. 7 U.S.C. § 136a(f)(2).

FIFRA also includes an express preemption statement, which reads:

> (a) In general
> A State may regulate the sale or use of any federally registered
> pesticide or device in the State, but only if and to the extent
> the regulation does not permit any sale or use prohibited by
> this subchapter.
>
> (b) Uniformity
> Such State shall not impose or continue in effect any
> requirements for labeling or packaging in addition to or
> different from those required under this subchapter.

7 U.S.C. § 136v(a)-(b).

The United States Supreme Court has devised a two-part test to determine

whether FIFRA preempts a state rule: "First, it must be a requirement 'for labeling or

packaging'; rules governing the design of a product, for example, are not preempted.

Second, it must impose a labeling or packaging requirement that is '*in addition to or

different from* those required under this subchapter.'" *Bates v. Dow Agrosciences LLC*, 544

U.S. 431, 444 (2005) (emphasis in original); *see also* 7 U.S.C. § 136v(b). Thus, if a state-

law requirement is equivalent to that under FIFRA, the state law survives preemption.

*Bates*, 544 U.S. at 453. Even where the state-law requirement imposes a broader

obligation than a FIFRA requirement, the state law is preempted only "to the extent of

that difference." *Id.* Moreover, the state-law requirement need not be linguistically

identical to the FIFRA requirement, only substantively equivalent. *Id.* at 454.

In light of the *Bates* test, district courts presiding over similar cases involving Roundup have reached a consensus that FIFRA preempts any injunctive relief, which would necessarily impose a labeling *requirement* "in addition to or different from" that under FIFRA, but that FIFRA does *not* preempt claims for damages under state law.  *See, e.g.*, *Carias v. Monsanto Co.*, No. 15CV3677JMAGRB, 2016 WL 6803780, at *3-*4, *7 (E.D.N.Y. Sept. 30, 2016); *Sheppard v. Monsanto Co.*, No. 16-00043 JMS-RLP, 2016 WL 3629074, at *7 (D. Haw. June 29, 2016); *Giglio v. Monsanto Co.*, No. 15CV2279 BTM(NLS), 2016 WL 1722859, at *2 (S.D. Cal. Apr. 29, 2016); *Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037, 1039 (N.D. Cal. 2016); *Mirzaie v. Monsanto Co.*, No. CV1504361DDPFFMX, 2016 WL 146421, at *2 (C.D. Cal. Jan. 12, 2016), *appeal dismissed* (Apr. 4, 2016).  However imperfect, the court is inclined to follow the general demarcation suggested in these decisions with some nuances.[5]

Applying the reasoning in these cases, defendant argues first that plaintiff's state-law cause of action necessarily imposes requirements "in addition to or different from" FIFRA's requirements.  (Mot. to Dismiss Br. (dkt. #12) 27-30.)  Specifically, under the Wisconsin Deceptive Trade Practices Act ("WDTPA"):

> No . . . corporation . . . with intent to sell, distribute, increase the consumption of . . . any merchandise . . . or with intent to induce the public in any manner to . . . purchase . . .

---

[5] For example, the court addresses below the obvious objection by defendant that imposition of monetary damages or sanctions for labeling could be viewed as the equivalent of a "requirement." Similarly, while under FIFRA, only the EPA may order a label change, to the extent that any of these decisions imply that other types of relief are necessarily preempted by FIFRA, the court disagrees.  For example, "[p]rivate remedies that *enforce* federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA."  *Bates*, 544 U.S. at 451 (emphasis added); *see also Hardeman*, 216 F. Supp. 3d at 1038 ("[T]he EPA's authority to enforce FIFRA does not prohibit private litigants from also enforcing that statute.").

> merchandise . . . shall make, publish, disseminate, circulate, or place before the public . . . [a] label . . . which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1). So, the question arguably remains whether this requirement is "in addition to or different from" FIFRA's requirements. Notably, WDTPA's prohibition on "untrue, deceptive or misleading" representations is linguistically similar to FIFRA's prohibition on "misbranded" pesticides -- those whose "labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A). Substantively, § 100.18(1) of the WDTPA does not appear to require anything different or additional. Under *Bates*, therefore, the two statutes' requirements are "equivalent." As a result, the court thus rejects defendant's first preemption argument.

Defendant next insists that what plaintiff is really seeking *is* injunctive relief in the form of a label change. In this respect, defendant argues that *Mirzaie* is controlling, since the *Mirzaie* court dismissed the entire complaint with prejudice after concluding that the plaintiffs sought "to impose a labeling requirement different or in addition to that required under FIFRA." 2016 WL 146421, at *2(; *see* Mot. to Dismiss Br. (dkt. #12) 28-29). However, in *Mirzaie*, the plaintiffs sued under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, which *only* provides for injunctive relief to private individuals, not an award of monetary damages. 2016 WL 146421, at *2 n.2. Thus, the relief requested by the *Mirzaie* plaintiffs fell squarely under FIFRA's express preemption. In contrast, the WDTPA authorizes the award of monetary damages to private individuals. Wis. Stat. § 100.18(11)(b)2. Therefore, the court finds that *Mirzaie* does

not apply to the extent plaintiff is seeking monetary damages.[6]

Defendant next argues that the distinction between injunctive and other kinds of relief is irrelevant to FIFRA preemption because "Monsanto's only options are to change its label or else continue to face legal action," if plaintiff is successful. (Reply (dkt. #41) 12 n.4 (emphasis omitted).) As a practical matter, this argument has some force except that the Supreme Court foreclosed this line of argument in *Bates*:

> The prohibitions in § 136v(b) apply only to "requirements." An occurrence that merely motivates an optional decision does not qualify as a requirement. The Court of Appeals was therefore quite wrong when it assumed that any event, such as a jury verdict, that might "induce" a pesticide manufacturer to change its label should be viewed as a requirement.

544 U.S. at 443. Although a verdict awarding damages in favor of plaintiff might well motivate defendant to change Roundup's label, the *Bates* Court held such a verdict does not create the kind of legal "requirement" prohibited under FIFRA's preemption statement. *Id.*; *see also* 7 U.S.C. § 136v(b).

Finally, to the extent that defendant is arguing that the EPA's registration of glyphosate and approval of the Roundup label carry any preemptive force, defendant is simply mistaken. Again, while registration of a pesticide constitutes *prima facie* evidence

---

[6] The other cases defendant offers in support of this preemption argument are also inapposite. *See Wilgus v. Hartz Mountain Corp.*, No. 3:12-CV-86, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013); *Smith v. Hartz Mountain Corp.*, No. 3:12-CV-00662, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012). The *Wilgus* and *Smith* plaintiffs made failure-to-warn arguments and alleged *inadequate* labeling. *See, e.g., Smith*, 2012 WL 5451726, at *3 ("UltraGuard Powder 'was defective due to *inadequate* warning or instruction on the product or container.'" (emphasis added)). Here, plaintiff does not challenge the adequacy of Roundup's labels, alleging rather that the label is "untrue, deceptive or misleading." (Compl. (dkt. #1) ¶ 74.) Furthermore, while *Wilgus* and *Smith* both mention that registration of a pesticide is prima facie evidence of compliance with FIFRA, *see, e.g., Wilgus*, 2013 WL 653707, at *4, neither case addresses the fact that registration may not serve as a defense for any FIFRA violation, 7 U.S.C. § 136a(f)(2).

that the pesticide's labeling complies with FIFRA, registration may not serve as a defense to a FIFRA violation.  7 U.S.C. § 136a(f)(2).  Similarly, there is no "indication that the EPA's approval of Roundup's label ha[s] the force of law."  *Hardeman*, 216 F. Supp. 3d at 1038.  In sum, although only the EPA may order a label change, defendant has overstated the legal effect of the EPA's approval, as well as the import of the relief requested by plaintiff, particularly since plaintiff seeks to recover monetary damages for allegedly false statements that FIFRA itself prohibits.  Accordingly, plaintiff's claims are not preempted by FIFRA.

### III.  Untrue, Deceptive or Misleading Representations

Defendant argues that plaintiff's claim that defendant violated Wisconsin's Deceptive Trade Practices Act must be dismissed because the challenged statement on the label is not false or misleading as a matter of law.  (Mot. to Dismiss Br. (dkt. #12) 22-27.)  First, defendant argues that plaintiff cannot plead literal falsity unless supported by unanimous expert opinion.  (*Id.* at 24.)  Second, defendant argues that plaintiff's allegation that the statement is false precludes an allegation that the statement is deceptive or misleading.  (*Id.* at 24-27.)  For the reasons below, the court rejects both arguments.

### A.  Literal Falsity

The Roundup label includes the following statement: "Glyphosate targets an enzyme found in plants but not in people or pets."  (*See* Compl. (dkt. #1) ¶ 34.)  Defendant argues this statement on the Roundup label is not literally false as a matter of

law.  (Mot. to Dismiss Br. (dkt. #12) 24.)  For plaintiff to maintain a claim of literal falsity, defendant asserts that this claim must be supported by unanimous expert opinion, citing *In re GNC Corp.*, 789 F.3d 505, 514-15 (4th Cir. 2015).  *Id.*  The *GNC* plaintiffs alleged that the products in that case were "incapable of providing the advertised joint health benefits, and that they would not have purchased the products but for the Companies' false advertising."  *Id.* at 510.  In support, the plaintiffs cited several peer-reviewed, published studies demonstrating that two of the products' active ingredients were ineffective at treating the symptoms of osteoarthritis as advertised.  *Id.* at 510-11. However, because the plaintiffs did "not allege that *all* scientists agree that glucosamine and chondroitin are ineffective at providing the promised joint health benefits," they could not allege literal falsity.  *Id.* at 515.

However, *In re GNC* is at least arguably distinguishable.  The scientific claims at issue in that case revolved around the "clinical effectiveness" of two ingredients.  By contrast, plaintiff's allegation that EPSP is found in gut bacteria present in human bodies is seemingly more of a binary proposition:  either the enzyme is found in gut bacteria present in humans or it is not.  Specifically, defendant emphasizes that the "currently accepted dogma is that glyphosate i[s] not harmful to humans or to any mammals because the shikimate pathway is absent in all animals."  (Mot. to Dismiss Br. (dkt. #12) 24.)  However, plaintiff does not allege physical harm as a result of the alleged misrepresentation, but rather pecuniary loss.  (Compl. (dkt. #1) ¶ 75.)  At this point, the *GNC* standard would also seem inapplicable because even defendant has not suggested that the scientific community is equivocal as to the presence of EPSP in human and other

mammalian gut bacteria, which (as discussed already) is a separate inquiry from whether human and other mammalian *cells* contain EPSP. Regardless, for the purposes of evaluating defendant's motion to dismiss, the court must accept as true plaintiff's allegation that EPSP is present in gut bacteria found in human bodies, making the challenged statement on the Roundup label "literally false."

Defendant nevertheless insists that "it is almost universally accepted by regulators and the scientific community, both within and outside the United States, that glyphosate targets an enzyme ('EPSP synthase') not found in human or animal cells -- just as the statement on Roundup®'s labels describes." (Mot. to Dismiss Br. (dkt. #12) 10.) Again, however, the Roundup label says nothing about cells, only that EPSP is "found in plants but not in people or pets." (*Id.* at 12.) Although defendant may ultimately prevail on its essential argument that the distinction is not material, on the limited record currently before the court, a reasonable consumer could take this statement to mean that EPSP is not found *in* people, rather than to mean that EPSP is simply not found in human cells, as opposed to bacteria present in the human gut. Similarly, as defendant notes, the Roundup label says nothing about "gut bacteria." (*Id.* at 11.) As defendant sees it, "it is entirely unreasonable for anyone to be thinking about gut bacteria when reading" the Roundup label, but on this limited record, it is unclear why that is so. Indeed, at least on its face, many consumers might well think gut bacteria are located *in* people. Under that view, the Roundup label would again be literally false. Regardless, the court is not prepared to hold otherwise at the pleading stage of this lawsuit.

## B. Deceptive or Misleading Representations

Defendant additionally argues that plaintiff has not sufficiently pleaded facts to support a claim that the Roundup label is deceptive or misleading under Wis. Stat. § 100.18. (Mot. to Dismiss Br. (dkt. #12) 24-27.) *In re GNC* noted that "[i]f a representation is false, we assume as a matter of law that it is also misleading." 789 F.3d at 514. Thus, the court could reasonably conclude as a matter of law that because plaintiff has sufficiently pleaded a claim of literal falsity, plaintiff has also satisfied the pleading standard for a claim that the label is misleading. Still, the court will provide some separate analysis as to whether plaintiff has sufficiently pleaded a claim that the label is deceptive or misleading.

A claim under Wis. Stat. § 100.18(1) is divided into three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553. Because the statute prohibits only "assertion[s], representation[s] or statement[s]," it does not prohibit omissions. *See* Wis. Stat. § 100.18(1); *see also Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 169-71, 677 N.W.2d 233, 245.[7]

Notably, the statute is disjunctive, prohibiting "untrue, deceptive *or* misleading" representations. Wis. Stat. § 100.18(1) (emphasis added). Nothing in § 100.18(1)

---

[7] Because the WDTPA prohibits only affirmative assertions, representations or statements, the court does not consider any of plaintiff's references to "material omissions." (*See, e.g.*, Compl. (dkt. #1) ¶¶ 45-46.)

states that a plaintiff must plead that a representation is untrue. Or that it is true but deceptive or misleading. In the same vein, Wisconsin case law does not suggest that a plaintiff must allege the representation was literally true but deceptive or misleading. *See, e.g.*, *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 445-446, 597 N.W.2d 462, 473 (Wis. Ct. App. 1999) (reversing grant of summary judgment to defendant and noting that "when conflicting inferences can be drawn, the determination whether [a] promise is *deceptive, misleading or untrue* . . . is a question of fact that must be determined by the trier of fact"); *MBS-Certified Pub. Accountants, LLC v. Wisconsin Bell Inc.*, 2013 WI App 14, ¶ 19, 346 Wis. 2d 173, 189, 828 N.W.2d 575, 583 (noting that the second element in a § 100.18 cause of action is whether the representation was "*untrue, deceptive or misleading.*"). Thus, the case law demonstrates that Wisconsin courts group these three concepts together, while defendant has cited to no Wisconsin case that divides claims under Wis. Stat. § 100.18 in this way.[8]

Finally, "reasonable reliance is not an element of a statutory false representation claim." *Novell*, 2008 WI 44, ¶ 27, 309 Wis. 2d at 144, 749 N.W.2d at 550; *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶¶ 34-36, 301 Wis. 2d 109, 128-130,

---

[8] Again, defendant cites only to *In re GNC*, which relied on Lanham Act precedent to construe the state laws at issue. *In re GNC Corp.*, 789 F.3d at 514 ("[T]he considerable body of federal common law construing the Act is instructive in construing the state laws at issue here."). The statute itself does not define "untrue," "deceptive" or "misleading" in a way that would suggest each word deserves analytically distinct treatment. Indeed, both common sense and common usage suggest that these words indicate overlapping concepts. *See, e.g.*, Mislead, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "mislead" as "[t]o cause (another person) to *believe something that is not so*, whether by words or silence, action or inaction; *to deceive*." (emphasis added)). In short, neither the statute nor Wisconsin case law suggests that a plaintiff must choose between one of three parallel tracks or otherwise plead untrue, deceptive or misleading representations differently.

14

732 N.W.2d 792, 802. Instead, "a jury may consider the reasonableness of a person's reliance on a misrepresentation in determining whether there had been a material inducement." *Novell*, 2008 WI 44, ¶ 50, 309 Wis. 2d at 152, 749 N.W.2d at 554; *see also Malzewski v. Rapkin*, 2006 WI App 183, 296 Wis. 2d 98, 723 N.W.2d 156. In certain instances, a court may rule as a matter of law that a misrepresentation did not induce a person to purchase a product, and that "plaintiff would have acted in the absence of the representation." *Novell*, 2008 WI 44, ¶¶ 51-52, 309 Wis. 2d at 153, 749 N.W.2d at 554 ("[A] circuit court may determine that a plaintiff's belief that a Superman cloak could '*actually* permit someone to fly' is unreasonable, and that relying on a claim that the cloak bestows the power of flight would therefore be unreasonable."). This is not one of those cases.

According to defendant, plaintiff must "plead facts showing that the Roundup[] consumer actually believes that glyphosate 'targets' an enzyme in 'gut bacteria.'" (Mot. to Dismiss Br. (dkt. #12) 25.) This does not, however, properly set forth the appropriate pleading standard. Rather, the plaintiff must plead facts that satisfy the three elements set forth in *Novell*, 2008 WI 44, ¶ 49, 309 Wis. 2d at 151, 749 N.W.2d at 553. Here, it is undisputed that the Roundup label satisfies the first element, because the label made a representation to the public: "Glyphosate targets an enzyme found in plants but not in people or pets." (*See* Compl. (dkt. #1) ¶ 34.) The representation was also made with intent to sell Roundup. Plaintiff further pleaded facts sufficient to allege that the label is "untrue, deceptive or misleading," and that he relied on the label's representation when purchasing Roundup. (*See id.* ¶¶ 3-4, 22.)

The court disagrees with defendant's assertion that plaintiff can pursue only a literal falsity claim because he has not claimed the Roundup label was true but misleading (Reply (dkt. #41) 11), because Wisconsin law does not require plaintiffs make such distinctions when alleging violations of Wis. Stat. § 100.18(1), especially at the notice pleading stage. Much of the discussion above about the "reasonable consumer" is similarly applicable here. *See supra* pp. 11-12. The Roundup label affirmatively states that "[g]lyphosate targets an enzyme found in plants, but not in people or pets." (*See* Compl. (dkt. #1) ¶ 35.) Upon reading the label, a reasonable consumer *could* think that glyphosate does not target *any* enzyme found *in* people -- including in the human gut. Under that reading, the Roundup label would be misleading -- i.e., "caus[ing] [the person] to believe something that is not so." *Mislead*, BLACK'S LAW DICTIONARY (10th ed. 2014). Moreover, the court does not believe that the Roundup label fits into the category of cases where reliance on the label's representation would be so unreasonable as to preclude inducement as a matter of law. *See Novell*, 2008 WI 44, ¶ 52, 309 Wis. 2d at 153, 749 N.W.2d at 554 (plaintiff could not, as a matter of law, reasonably rely on a representation that a Superman cape grants the power of flight).

Finally, contrary to defendant's assertions, plaintiff need not plead reasonable reliance on the representation under the WDTPA. (*See* Mot. to Dismiss Br. (dkt. #12) 25 ("Indeed, the Complaint does not plead that a reasonable consumer . . . would believe [the label] is talking about 'gut bacteria.' or would have any expectations, assumptions, or misconceptions about 'gut bacteria' based on that statement.").) Instead, the factfinder may consider whether plaintiff's reliance was reasonable when making the

factual determination of whether plaintiff was induced to purchase Roundup. Put another way, the court cannot determine as a matter of law that "a misrepresentation did not cause pecuniary loss" at the pleading stage. *Novell*, 2008 WI 44, ¶ 51, 309 Wis. 2d at 152, 749 N.W.2d at 554. Accordingly, the court finds that plaintiff has sufficiently pleaded a claim for deceptive or misleading representation under Wis. Stat. § 100.18.

## IV.    Breach of Express Warranty

Defendant next argues that plaintiff's breach of express warranty claim must be dismissed because plaintiff failed to provide notice of breach. (Mot. to Dismiss Br. (dkt. #12) 32-33.) Under Wisconsin's version of the Uniform Commercial Code ("UCC"), a buyer "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Wis. Stat. § 402.607(3)(a). Wisconsin's UCC provides the following definition of "notice":

> (1) Subject to sub. (6), a person has "notice" of a fact if the person satisfies any of the following:
> (a) Has actual knowledge of it.
> (b) Has received a notice or notification of it.
> (c) From all the facts and circumstances known to the person at the time in question, has reason to know that it exists.

Wis. Stat. § 401.202.

Notice serves two purposes: first, notice informs the seller of a defect in the good and gives the seller an opportunity to remedy the defect. *Wilson v. Tuxen*, 2008 WI App 94, ¶ 41, 312 Wis. 2d 705, 731, 754 N.W.2d 220, 232. Second, "the notice serves to advise the seller that 'the buyer considers him [or her] . . . responsible to remedy a troublesome situation.'" *Id.* (quoting *Paulson v. Olson Implement Co.*, 107 Wis. 2d 510,

523 n.8, 319 N.W.2d 855, 861 n.8 (1982)). Importantly, Wisconsin law does not appear to recognize any exceptions to the notice requirement. Wisconsin courts have held that "[s]uch notice is a condition precedent to a right of recovery." *Barlow v. Devilbiss Co.*, 214 F. Supp. 540, 544 (E.D. Wis. 1963); *see also Tuxen*, 2008 WI App 94, ¶ 45, 312 Wis. 2d at 733, 754 N.W.2d at 233 ("Current § 402.607(3)(a) does not contain an exception to the notice requirement when the seller is not prejudiced.").

Finally, the notice requirement is individualized. *See* Wis. Stat. § 402.607(3)(a) ("The *buyer* must within a reasonable time after the *buyer* discovers or should have discovered any breach notify the seller of breach or be barred from any remedy" (emphasis added)). This interpretation is strengthened by the second aspect of the notice requirement -- that it occur "within a reasonable time." *Id.* In a class action, the question whether a given class member provided reasonably timely notice would be particular to that individual, and would presumably require that each plaintiff actually have provided notice. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008) ("*[E]ach* putative class member must demonstrate that he or she gave the required notice of the breach to Defendant within a reasonable time" (emphasis added)). Therefore, "[t]he notice requirement creates 'individualized questions of fact' that cannot be met by a class-action demand letter." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 611 (E.D. Mich. 2017) (citing *Cohen*, 259 F.R.D. at 642).[9]

Regardless, *Blitz* does not allege that he provided individual notice to defendant.

---

[9] Similarly, the argument that filing a previous proposed class action in federal court in another jurisdiction provides requisite notice is a "dubious legal theory." *See Porcell v. Lincoln Wood Prod., Inc.*, 713 F. Supp. 2d 1305, 1316 (D.N.M. 2010).

(*See* Compl. (dkt. #1) ¶ 22; *id.* ¶¶ 7-79.)  Indeed, the complaint alleges only that a former plaintiff, Chick -- whose claims have been voluntarily dismissed -- provided individual notice to defendant.  (Compl. (dkt. #1) ¶ 97.)  Moreover, rather than demonstrate how he provided actual notice under Wisconsin's UCC, plaintiff addresses the timeliness requirement.  In fairness, whether the buyer provided notice "within a reasonable time" is a question of fact for a jury to decide, *Tuxen*, 2008 WI App 94, ¶ 40, 312 Wis. 2d at 730, 754 N.W.2d at 232, but that question is analytically distinct from whether notice was provided at all.  The court can find no exception under Wisconsin law to this notice requirement,[10] and therefore concludes that plaintiff did not provide notice to defendant. Accordingly, plaintiff's breach of express warranty claim is dismissed.

## V.  Unjust Enrichment

Finally, defendant argues that plaintiff's unjust enrichment claim fails because plaintiff purchased Roundup from a retailer and not directly from defendant.  (*See* Compl. (dkt. #1) ¶ 22.)  Under Wisconsin law, unjust enrichment claims require proof of three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2)

---

[10] Plaintiff cites to cases from New Jersey and Illinois detailing exceptions to the notice requirement, but those exceptions are unavailable to plaintiff because they are not recognized in Wisconsin's UCC.  For example, plaintiff looks to *Strzakowlski v. Gen. Motors Corp.*, No. CIV.A. 04-4740, 2005 WL 2001912, at *1 (D.N.J. Aug. 16, 2005), for support.  True, *Strzakowlski* held that New Jersey's UCC did not require notice separate from the filing of a complaint in cases against remote sellers.  *Id.* at *10-*11.  However, plaintiff has not cited to any Wisconsin case law identifying similar exceptions to Wisconsin's UCC, and the court is not persuaded that the notice analysis in *Strzakowlski* would apply under Wisconsin law.  To the contrary, Wisconsin Statute § 402.607(3)(a) makes no distinction between direct and indirect sellers.  Furthermore, a notice exception broad enough to encompass the act of filing a complaint undercuts the twin purposes of the notice requirement: to give notice of and opportunity to correct a specific defect and to inform the seller that the purchaser believes it is responsible for remedying the defect.  *See supra* p. 16.

appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W.2d 789, 798. "In order to plead an unjust enrichment claim, the party seeking judicial relief must allege facts that, if true, would be sufficient to satisfy a court that the above elements are present." *Id.*; *see also Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 937 (E.D. Wis. 2017) (noting that buyer did not confer a benefit on the product manufacturer and that "[a]ny benefit to [manufacturer] of the [buyer]/[seller] contract, entered months before [seller] submitted its purchase order or paid [manufacturer], was indirect at most.").

Certainly, *Sands* and *Emirat* would strongly suggest plaintiff's allegation that he purchased Roundup from Home Depot is insufficient to plead a claim of unjust enrichment against defendant, since plaintiff conferred a benefit on Home Depot, not defendant. Furthermore, plaintiff's bald assertion that "[d]efendant[ has] been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the National Class Members" (Compl. (dkt. #1) 31) is insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Therefore, plaintiff's unjust enrichment claim is dismissed.

ORDER

IT IS ORDERED that defendant's motion to dismiss (dkt. #10) is GRANTED IN

PART AND DENIED IN PART as set forth above.

Entered this 13th day of April, 2018.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge