# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS BLITZ, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br> v.<br><br>MONSANTO COMPANY,<br><br>      Defendant. | Case No. 3:17-cv-00473-wmc |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiff Thomas Blitz ("Plaintiff), by and through his undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).

## I. INTRODUCTION

This matter presents a textbook case for class certification. Plaintiff's claims, brought on behalf of thousands of consumers across Wisconsin, arise from Defendant Monsanto Company's ("Monsanto") sale of its Roundup® weed-killer to the public under false and deceptive pretenses. Specifically, Monsanto markets Roundup® with the prominent claim that its active ingredient, glyphosate, "targets an enzyme found in plants but not in people or pets." Reasonable consumers purchased Monsanto's Roundup® products in reliance upon this claim, which is demonstrably false. Glyphosate targets an enzyme, EPSP, which, in fact, is present in beneficial bacteria on and throughout mammal bodies, especially in digestive tracts of humans and household pets—in other words, the enzyme *is* found in people and pets.

Plaintiff is one such consumer who was deceived by Monsanto's false, deceptive, and misleading statements with respect to the glyphosate's effects on people and pets. In response to Monsanto's unlawful conduct, and in an effort to ensure that it does not continue into the future, Plaintiff brought this putative class action. Plaintiff now seeks an order from the Court certifying a proposed Class of individuals who purchased Roundup® products labeled and marketed with the representation that glyphosate "targets an enzyme found in plants but not in people or pets."

## II. FACT BACKGROUND

### A. Facts Applicable to All Putative Class Members

As set forth in detail in Plaintiff's Complaint, Monsanto labels, advertises, and promotes its Roundup Products, including but not limited to its Roundup® "Garden Weeds" Weed & Grass

Killer products (hereinafter, "Roundup" or "Roundup Products"), with the false statement that Roundup's active ingredient, glyphosate, targets an enzyme that is *not* found "in people or pets." *See* Complaint ("Compl.") at ¶ 2; MONT-BLITZ00001866. Glyphosate directly impacts EPSP synthase. This enzyme, which is present in bacteria in addition to plants, necessarily also exists in all people and pets—on skin, on mucous membranes in the nose and throat, and especially in the beneficial gut bacteria upon which humans and animals rely for their overall health and wellbeing, including for their immune system, digestion, metabolism, brain functions, and defense to allergens.[1] *Id.* at ¶¶ 3, 5. Monsanto's representation that glyphosate does not target an enzyme found in people or pets is therefore demonstrably false. Moreover, this false representation is highly material to consumers, who are increasingly aware of the widespread controversy around herbicides and their potentially serious effects on humans and animals. *Id.* at ¶ 6. Reasonable consumers relied upon Monsanto's false and misleading reassurances about the effects of glyphosate, purchasing Roundup Products that they would not have purchased had they known the truth about these effects. *Id.* at ¶¶ 6-9.

### B. Facts Applicable to Plaintiff Thomas Blitz

Plaintiff is a Wisconsin consumer who Monsanto deceived. During the class period, Plaintiff purchased three 1.33-gallon containers of the Roundup Products, each retailing for approximately $20.00 to $30.00. Plaintiff's Initial Disclosures, Ex. A to Declaration of Kim E. Richman ("Richman Dec."). In making these purchases, Plaintiff relied upon Monsanto's representation that glyphosate targets an enzyme that is not found in people or pets. Compl. at

---

[1] It is undisputed that EPSP synthase is present in all bacteria. In 2002, Monsanto went so far as to apply for a patent for the use of glyphosate as an antimicrobial agent. U.S. Patent No. 7,771,736 (filed Aug. 30, 2002). Monsanto's patent states that "[t]he shikimate pathway is an ancient pathway that is involved in primary and secondary metabolism and is found in all prokaryotes [which include bacteria]. *Id.* It is also undisputed that glyphosate targets this enzyme. *Id.* ("the shikimate pathway enzyme, EPSP synthase, has been targeted by a chemical inhibitor strategy that has resulted in the commercially successful, broad range, post-emergent herbicide called glyphosate.").

¶ 22.

### C. The Proposed Class

As a result of Monsanto's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a class as follows:

> All consumers who purchased Roundup Products containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling in the State of Wisconsin, from June 2015 through the present.

As demonstrated below, Plaintiff's proposed Class meets each of Rule 23's requisites to certification.

### III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named representative and his or her counsel have represented and will continue to represent adequately the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

Plaintiff seeks certification of the proposed Class under Rule 23(b)(3). In order to certify a class under Rule 23(b)(3), (i) questions of law or fact common to the proposed class members must predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "For purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties, with a presumption in favor of certification. *Id.*

### A. The Numerosity Requirement Is Satisfied

A party statisfies Rule 23(a)'s first requirement, numerosity, where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To meet this requirement there is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Generally, "[t]he court is permitted to make common-sense assumptions in order to find support for numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-1995, 2004 U.S. Dist. LEXIS 5462, at *8 (N.D. Ill. Mar. 31, 2004).

Here, the sales of Roundup Products in Wisconsin indicate that the number of consumers who have purchased the products is so large as to make joinder impracticable, if not impossible. Compl. ¶ 62-63. Monsanto reports that more than 1 million units of the Roundup Products were sold in Wisconsin during the class period, totaling nearly $17 million in gross sales.[2] This volume of sales demonstrates that the number of consumers who have purchased the Roundup Products in

---

[2] *See Monsanto Company's Objections and Answers to Plaintiff's Revised First Set of Interrogatories*, attached as Exhibit C to Richman Dec. at 6-7 ("gross sales of the Roundup® Products in Wisconsin for June through December 2015 totaled $1,830,948. For calendar year 2016, gross sales of the Roundup® Products in Wisconsin totaled $8,045,948. For calendar year 2017, gross sales of the Roundup® Products in Wisconsin totaled $7,031,870. … 96,846 units of the Roundup® Products were sold in Wisconsin from June through December 2015. In calendar year 2016, a total of 497,766 units of the Roundup® Products were sold in Wisconsin. In calendar year 2017, a total of 409,966 units of the Roundup® Products were sold in Wisconsin."). These figures do not include any additional sales from January 1, 2018 to the present.

Wisconsin is easily sufficient to meet the numerosity requirement. *See, e.g.*, *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338, 2017 U.S. Dist. LEXIS 219702, at *4 (W.D. Wis. Dec. 29, 2017) (holding that "a class with 40 members is sufficient" to establish numerosity in Seventh Circuit) (citing *Swanson v. American Cons. Indus., Inc.*, 415 F. 2d 1326, 1333 n.9 (7th Cir. 1969)); *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (classes numbering in thousands "clearly" satisfy numerosity requirement); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . in such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.

### B. The Commonality Requirement Is Satisfied

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff must demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 339 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, No. 00-6080, 2001 U.S. Dist. LEXIS 15472, at *11-12 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). The question

of commonality is a relatively low and easily surmountable hurdle. *See Scholes v. Stones, McGure, & Benjamine*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

The claims of Plaintiff and the Class in this case are based upon the same common questions of law and fact:

(i) whether Monsanto's representation that "Glyphosate targets an enzyme found in plants but not in people or pets" is false, misleading, or deceptive;

(ii) (ii) whether Monsanto omitted material information from the labels of Roundup Products;

(iii) (iii) whether practices related to the marketing, labeling, and sales of Roundup Products were unfair, deceptive, fraudulent, and/or unlawful;

(iv) (iv) whether Monsanto breached an express warranty created through the labeling and marketing of Roundup Products;

(v) (v) whether Monsanto was unjustly enriched through the use of the misrepresentation and/or omission; and

(vi) (vi) whether Monsanto's conduct economically injured Plaintiff and Class Members. Thousands of consumers purchased Roundup Products after having viewed the label representation or other Monsanto marketing that "Glyphosate targets an enzyme found in plants but not in people or pets."

Moreover, all of these contentions will be proved through the use of common and generalized evidence applicable to the Class as a whole.

Accordingly, the commonality requirement is met.

C. **The Typicality Requirement Is Satisfied**

Typicality, the next requirement under Rule 23, requires that Plaintiff's claims be typical

of those of other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "'[s]imilarity of legal theory is more important that factual similarity'." *Id.* (quoting *Harris v. City of Chicago*, Nos. 96-2406, 96-7526, 1998 U.S. Dist. LEXIS 1466, at *17 (N.D. Ill. Feb. 9, 1998).

In this case, Plaintiff and the proposed Class members were each subject to Monsanto's common course of conduct. That is, each Class member viewed Monsanto's deceptive representations that "Glyphosate targets an enzyme found in plants but not in people or pets" and then purchased the Roundup Product. As a result, Plaintiff and the other members of the Class are entitled to damages that Plaintiff and Class members suffered. As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the proposed class in satisfaction of Rule 23(a)(3)'s typicality requirement.

### D. The Adequacy-of-Representation Requirement Is Satisfied

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires that both the proposed class representative and the counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 U.S. Dist. LEXIS 5462, at *13. The proposed representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure

vigorous advocacy." *Id.* (internal quotations omitted). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims, and it is persuasive evidence if proposed class counsel have been found adequate in prior cases. *See Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In this case, Plaintiff has the same interests as the other members of the Class. He was deceived by Monsanto's conduct, insofar as he purchased Roundup Products in reliance upon the labeling or marketing representation that "Glyphosate targets an enzyme found in plants but not in people or pets." Therefore, like the other members of the Class, Plaintiff's interests lie in ensuring that Monsanto's unlawful conduct does not continue in the future, and that he and the other members of the Class recover the damages to which they are entitled. Plaintiff has no interests antagonistic to those of the Class.

Similarly, Plaintiff's counsel are well-respected members of the legal community, who have extensive experience in class actions of similar size, scope, and complexity to the instant action. *See* Richman Dec. ¶¶ 6-7; Declaration of R. Brent Wisner ("Wisner Dec.") ¶¶ 8-11. Moreover, they have regularly engaged in major complex litigation against on behalf of consumers, have the resources necessary to conduct litigation of this nature, and have frequently been appointed as lead class counsel in courts throughout the country. Richman Dec. ¶ 7; Wisner Dec. ¶ 12-13; *see also* Firm Resume of Richman Law Group, a true and accurate copy of which is attached as Exhibit B to the Richman Declaration. Proposed class counsel, including Richman Law Group, have already diligently investigated and dedicated substantial resources to the investigation of the claims at issue in this action, and will continue to do so throughout its pendency. Richman Dec. ¶ 9; Wisner Dec. ¶ 14.

### E. The Proposed Class Meets the Requirements of Rule 23(b)(3)

Plaintiff seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). As discussed below, this case easily meets both of these requirements.

#### 1. Common Questions of Law and Fact Predominate

Rule 23(b)(3) provides that plaintiffs may maintain a class action where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher*, 245 F.R.D. at 331-32. Common questions for purposes of Rule 23(b) are those as to which the same evidence will suffice for each class member to make out a prima facie case. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Here, the common questions set forth above are at the heart of this litigation. The claims of Plaintiff and the members of the Class all arise from Monsanto's common representation on the labeling and marketing of its Roundup Products that "Glyphosate targets an enzyme found in plants but not in people or pets." Evidence of Monsanto's marketing, and of its knowledge concerning its marketing representations, is within Monsanto's own records, rather than in the records of individual Class members. Additionally, evidence concerning the falsity of Monsanto's representations, and of glyphosate's effects on enzymes found in humans and animals, can be obtained through discovery from Monsanto, third parties, and expert testimony. Thus, the claims at issue in this case will not require individual proof such that class treatment would be

inappropriate. Where the focus of common questions is on a defendant's conduct and concerns the central question of liability rather than individual class members, the predominance inquiry is satisfied. *See, e.g., In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("common issues of concealment predominate here because 'the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did'").

Additionally, class-wide damages can be determined based upon common evidence and utilizing a common method.[3] As in "[m]ost consumer fraud actions," the total amount of damages can be determined here using common formula applied to each class member's purchases of the Products at issue. *Mullins v. Direct Digital LLC*, 795 F.3d 654, 670-71 (7th Cir. 2015). This is sufficient to satisfy the predominance requirement. *Id.* at 671. Challenges to individual class members' claims to recovery are inappropriate at the class certification phase. *Id.* (where a plaintiff "establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated and resolved") (quoting *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011)).

As such, the predominance requirement for certification is also satisfied.

### 2. The Class Action Mechanism Is Superior to Other Available Methods for the Litigation of This Matter

Rule 23(b)(3) further requires that the class action mechanism be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.

---

[3] On June 15, 2018, pursuant to the Court's scheduling order and Fed. R. Civ. P. 26(a)(2)(B), Plaintiff produced to Defendant an expert report prepared by Professor Jean-Pierre Dubé of the University of Chicago. This report details a viable damages model for determining class-wide damages in this litigation.

Absent class treatment in this case, each individual member of the Class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Monsanto. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

## IV. COUNSEL SHOULD BE APPOINTED CLASS COUNSEL PURSUANT TO RULE 23(g)

Plaintiff is represented by the law firms of Richman Law Group; Baum, Hedlund, Aristei & Goldman, P.C.; Turke & Strauss LLP; Gabrielli Levitt LLP; Andrus Wagstaff LLP; Miller Firm LLC; Weitz & Luxenberg P.C.; and Kennedy & Madonna, LLP. Plaintiff requests that these firms be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g).

### A. Counsel Have Implemented a Leadership Structure for This Litigation

Plaintiff's Proposed Class Counsel have conferred and request that the Court appoint (i) Kim E. Richman of Richman Law Group and R. Brent Wisner of Baum, Hedlund, Aristei & Goldman, P.C. ("Proposed Co-Lead Counsel") as Co-Lead Counsel and (ii) Mary C. Turke of Turke & Strauss LLP as Liaison Counsel. The Co-Lead Counsel intend to maintain an Executive Committee comprised of Ms. Turke, Michael J. Gabrielli of Gabrielli Levitt LLP, Aimee H. Wagstaff of Andrus Wagstaff LLP, Michael J. Miller of Miller Firm LLC, Robin L. Greenwald of Weitz & Luxenberg P.C., and Robert F. Kennedy of Kennedy & Madonna, LLP ("Proposed Executive Committee"). These attorneys have extensive experience litigating complex class

actions on behalf of consumers, including cases like the instant litigation, and are all committed to seeing this litigation through to resolution on behalf of the proposed class. Many of these attorneys have also been heavily involved with the ongoing personal injury cases being litigated against Monsanto in the Northern District of California (*In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.)), or with other false-advertising actions against Monsanto (*Beyond Pesticides, et al. v. Monsanto, et al.*, 17-cv-00941 (D.D.C.)).

All of the lawyers representing Plaintiff have discussed case strategy to ensure that the actions are prosecuted efficiently. Pursuant to the Manual on Complex Litigation, they have agreed to organize their efforts and seek entry of an order approving their proposed leadership structure.

### B. **Proposed Co-Lead Counsel Have Significant Experience Handling Class Actions and Complex Litigation and Have Substantial Knowledge of the Applicable Law**

Courts place great emphasis on Rule 23(g)(1)'s second and third factors, which concern proposed lead counsel's experience with and knowledge of the applicable law, in the selection of interim class counsel. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004); Fed. R. Civ. P. 23(g)(1)(A)(ii & iii). In this regard, Proposed Co-Lead Counsel are well-suited for appointment as leaders of this action, because they have litigated claims very similar to those asserted here and have served in leadership roles in other consolidated and/or multidistrict complex class actions.

#### 1. Kim E. Richman

Kim Richman is the founding member of Richman Law Group, a law firm that specializes in class-action litigation on behalf of consumers in both federal and state courts throughout the United States. Prior to founding Richman Law Group, Mr. Richman was a partner at Reese Richman LLP. Mr. Richman has extensive experience litigating class actions on behalf of consumers, and is routinely appointed as class counsel in high-profile consumer protection class

actions. *See* Richman Dec. ¶¶ 6-7.

Mr. Richman has successfully litigated numerous state and federal actions. In addition to consumer protection, Mr. Richman's litigation experience ranges from cases involving corporate fraud and insider trading to protecting constitutional and fair use rights of individuals. Mr. Richman is a member in good standing of the state bar of New York, as well as numerous federal courts, including but not limited to the United States District Courts for the Southern and Eastern Districts of New York.

Mr. Richman has been litigating class actions for years. He has previously been appointed interim co-lead counsel in major consumer-protection class-action litigation. *See, e.g.*, *In re General Mills Glyphosate Litig.*, No. 16-cv-2869 (D. Minn.); *Gibson v. Quaker Oats Co.*, No. 16-cv-04853 (N.D. Ill.). While with his prior firm, courts appointed Mr. Richman as lead counsel in numerous other actions to represent consumers. *See, e.g.*, *Paulino v. Conopco, Inc.,* No. 1:14-cv-05145 (E.D.N.Y.); *In Re: Glaceau Vitaminwater Marketing & Sales Practices Litig.*, No. 1:11-md-02215 (E.D.N.Y.); *In re General Mills, Inc. Kix Cereal Litig.*, No. 2:12-cv-00249 (D.N.J.); *In re Frito-Lay N. America, Inc. All Nat. Litig.*, No. 1:12-md-02413 (E.D.N.Y.).

Through his litigation efforts, Mr. Richman has been responsible for remedying consumer deception, ranging in matters from food to technology. *See, e.g.*, *Lam v. General Mills, Inc.*, No. 11-cv-5056 (N.D. Cal.); *Rosen v. Unilever U.S. Inc.*, No. 09-02563 (N.D. Cal.); *Chin v. RCN Corp.*, No. 08-cv-7349 RJS (S.D.N.Y.). A sampling of other class actions on behalf of consumers in which Mr. Richman has participated can be found in Exhibit B.

Mr. Richman's firm, Richman Law Group, has already devoted significant human and financial resources to representing the interests of the putative class and will commit such further resources necessary to litigate this case through trial and appeals. Here, and in addition to

leveraging Mr. Richman's substantial experience, the other attorneys at Richman Law Group will make important contributions to the effective prosecution of the class's claims.

### 2. R. Brent Wisner

R. Brent Wisner is a Shareholder with Baum, Hedlund, Aristei & Goldman, PC, a consumer law firm that specializes in class action and mass action litigation on behalf of consumers in both federal and state courts throughout the United States. Mr. Wisner has successfully litigated numerous state and federal actions. In addition to consumer protection claims, Mr. Wisner's litigation experience involves complex whistleblower protection and *qui tam* actions, mass torts, and other forms of product liability. Mr. Wisner is a member in good standing of the state bar of California, as well as more than a dozen federal courts, including but not limited to the Western District of Wisconsin, the Seventh Circuit Court of Appeals, and the United States Supreme Court.

Mr. Wisner has been litigating class actions for years. He has previously been appointed class counsel in a major consumer-protection class-action litigation, which was successfully settled and administered. *See In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-02067-NMG (D. Mass.) (appointed class counsel on behalf of consumer class related to the sale of antidepressant drugs Celexa and Lexapro). He has also served in various leadership roles in multidistrict proceedings. For example, the court appointed Mr. Wisner Federal Liaison Counsel in the Cymbalta Drug Cases, Case No. JCCP 4825 (Cal. Sup. Ct.), in large part because of his work and experience litigating the consumer class action *Saavedra v. Eli Lilly and Co.,* 2:12-cv-09366-SVW-MAN (C.D. Cal.). Mr. Wisner has also played a substantial role in litigating complex consumer Racketeer Influenced and Corrupt Organization (RICO) class actions in federal court. *See, e.g.*, *Kiossovski v. Forest Pharm., Inc.*, 14-CV-13848 (NMG) (D. Mass.) (national RICO class action involving the sale of Celexa and Lexapro); *Painters & Allied Trades Dist. Council 82 Health*

*Care Fund v. Takeda Pharm. Co.*, 14-CV-02359 (W.D. La.) (national RICO class involving sale of Actos).

Currently, Mr. Wisner is co-lead counsel in multiple related class actions regarding automobile and premises liability insurance carriers failing to reimburse Medicare Advantage Organizations for medical treatment provided. *See* Wisner Dec., ¶ 11.

Mr. Wisner is also co-lead Liaison Counsel in major products liability litigation concerning the Roundup Products. *In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal).

Mr. Wisner has also served as lead trial counsel in multiple jury trials in federal court, most recently securing a verdict in the Northern District of Illinois. *Dolin v. SmithKline Beecham Corp.*, 12-CV-06403 (N.D. Ill.).

Mr. Wisner and his firm have a proven track record of zealously and successfully advancing the interests of class members in consumer class actions, having collected more than $1 billion on behalf of consumers around the United States. Like Mr. Richman, Mr. Wisner and his firm have already devoted significant resources to representing the interests of the putative class and will commit such further resources necessary to litigate this case through trial and appeals.

### 3.     Co-Lead Counsels' Responsibilities

If appointed, and consistent with the *Manual for Complex Litigation, Fourth*, §§ 10.221 and 40.22, Proposed Co-Lead Counsel respectfully request the Court enter an order setting for their general responsibilities for the overall conduct of the litigation on behalf of the putative class, including:

> i.  To determine and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of Plaintiffs and putative class members on all matters arising during pretrial proceedings;

    ii.    To coordinate the initiation and conduct of discovery on behalf of Plaintiffs and putative class members, consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(b)(2), and 26(g), including the preparation of interrogatories and requests for the production of documents and the examination of witnesses in depositions;

    iii.    To conduct settlement negotiations on behalf of Plaintiffs and putative class members, and, where appropriate, to present any proposed settlements to the Court on behalf of putative class members;

    iv.    To delegate specific tasks to other counsel, in a manner designed to ensure that pretrial preparation for Plaintiffs and the putative class is conducted efficiently and effectively;

    v.    To enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

    vi.    To prepare and distribute status reports to any other law firms that might seek to represent the putative class;

    vii.    To maintain adequate time and disbursement records covering services;

    viii.    To monitor the activities of any other law firms that might seek to represent putative class members to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

    ix.    To perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiffs and the putative classes or authorized by further order of this Court.

Proposed Co-Lead Counsel are fully capable of undertaking the above tasks.

**C. The Proposed Executive Committee**

In addition to the appointment of Proposed Co-Lead Counsel, Plaintiff requests that the Court also establish a Plaintiffs' Executive Committee to assist in the management of the case. The Executive Committee members will assist Proposed Co-Lead Counsel by assuming defined roles and facilitating the input of other firms. The Executive Committee should consist of the following attorneys: Mary C. Turke of Turke & Strauss LLP, Michael J. Gabrielli of Gabrielli Levitt LLP, Aimee H. Wagstaff of Andrus Wagstaff LLP, Michael J. Miller of Miller Firm LLC, Robin L. Greenwald of Weitz & Luxenberg P.C., and Robert F. Kennedy of Kennedy & Madonna,

LLP. Ms. Turke, who will also serve as the Liaison Counsel, will be tasked with ensuring the efficient prosecution of the case by centralizing communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. All of these firms have played key roles in the development of the claims in this litigation and they have been extensively involved in complex consumer fraud class actions in both leadership and executive committee roles.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court (i) enter and reserve ruling on Plaintiff's Motion for Class Certification; (ii) allow for discovery to continue on class-wide issues; (iii) grant Plaintiff leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (iv) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and, (v) provide all other and further relief that the Court deems equitable and just.

Dated: June 22, 2018                              Respectfully submitted,

**RICHMAN LAW GROUP**

_____
Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, New York
Telephone: (212) 687-8291

**TURKE & STRAUSS LLP**

        Mary C. Turke
        mary@turkestrauss.com
        Samuel J. Strauss
        sam@turkestrauss.com
        613 Williamson Street #209
        Madison, Wisconsin 53703
        Telephone: (608) 237-1775

        **BAUM, HEDLUND, ARISTEI &**
        **GOLDMAN, P.C.**
        Michael L. Baum
        mbaum@baumhedlund.com
        R. Brent Wisner
        bwisner@baumhedlund.com
        12100 Wilshire Blvd., Suite 950
        Los Angeles, CA 90025
        Telephone: (310) 207-3233

## **CERTIFICATE OF SERVICE**

I, Kim E. Richman, hereby certify that on June 22, 2018, I electronically filed the foregoing document with the Clerk of the Court through the Court's CM/ECF system, thereby providing notice upon all parties who have entered an appearance in this matter.

Dated: June 22, 2018

                                              Kim E. Richman