IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS BLITZ,

                Plaintiff,                          OPINION AND ORDER

    v.                                                        17-cv-473-wmc

MONSANTO COMPANY,

                Defendant.

     In this putative class action, plaintiff Thomas Blitz claims that the statement on the label of defendant Monsanto Company's Roundup® product misled him into believing it was safe to use around people and pets because the active ingredient targeted an enzyme only found in plants, inducing him to purchase the product and causing him pecuniary loss. (Compl. (dkt. #1) ¶¶ 22, 34, 75.) Before the court presently is his request to certify a class of similarly situated Wisconsin consumers. Because individual inquiries predominate and a class action is not a superior method of resolving this dispute, plaintiff's motion will be denied.

## BACKGROUND

     The active ingredient in Roundup is glyphosate (*id*. at ¶ 2), which kills weeds and grasses by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, thus disrupting one of the steps in the so-called "shikimate pathway." (*Id*. at ¶ 29.) Roundup's label, as seen below, reads: "DID YOU KNOW? Glyphosate targets an enzyme

found in plants but not in people or pets." (*Id*. at ¶ 35.)



(Label (dkt. #83-31) 3).

The Environmental Protection Agency ("EPA") has registered glyphosate as a pesticide since 1974 and renewed that registration in 1993. (Mot. to Dismiss Br. (dkt. #12) 12.) The EPA also approved the Roundup labels at issue as (1) EPA Reg. No. 71995-25, (2) EPA Reg. No. 71995-29, and (3) EPA Reg. No. 71995-33. (*Id*.) Each label includes the same statement "Glyphosate targets an enzyme found in plants but not in people or pets." (*Id.* at 13.)

The parties appear to agree that EPSP is not found in human and animal *cells* as evidenced by the absence of the shikimate pathway. (*See* Mot. to Dismiss Opp'n (dkt. #31) 6; *accord* Mot. to Dismiss Reply (dkt. #41) 8.) Taking plaintiff's allegations as true, however, EPSP is found in bacteria that inhabit human and other mammalian stomachs.

(Compl. (dkt. #1) ¶ 30.) The materiality of that fact is unclear at this stage, but the court will infer for the purposes of this opinion, that it at least makes the representation that the enzyme is not found "in people or pets" misleading.

OPINION

To certify a class under Federal Rule of Civil Procedure 23(b)(3), Blitz must satisfy a two-step analysis. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). First, the proposed class must satisfy the four threshold requirements under Rule 23(a): numerosity, commonality, typicality and adequacy. *Id.* Second, the proposed class must satisfy the two requirements under Rule 23(b)(3): predominance and superiority. *Id.*

Current law further requires the trial court to engage in a "rigorous analysis" to determine whether the proposed class satisfies these Rule 23 requirements. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 722 (7th Cir. 2011). As a result, the Rule 23 analysis may overlap with a determination of the merits of the case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011). When overlap occurs, "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If material factual disputes arise, the court may even be required to receive evidence and resolve those disputes before ruling on class certification. *Messner,* 669 F.3d at 811. However, resolving the factual dispute "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id.*

Here, plaintiff seeks to certify a single class under Rule 23(b)(3): "All consumers who purchased Roundup Products containing the statement 'Glyphosate targets an enzyme found in plants but not in people or pets' on the labeling in the State of Wisconsin,

from June 2015 through the present." (Pl.'s Class Cert. Br. (dkt. #73) 4.) While plaintiff's proposed class satisfies the Rule 23(a) requirements, it does not satisfy Rule 23(b)(3) because individual questions of material inducement under the Wisconsin Deceptive Trade Practices Act ("WDTPA") overwhelm questions common to the class, making a class action inferior to other available methods for resolving the dispute.

## I. Rule 23(a) Requirements

### A. Numerosity

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed class easily satisfies the numerosity requirement. Plaintiff seeks to represent consumers who have purchased Roundup Products since June 2015. (Pl.'s Class Cert. Br. (dkt #73) 4.) Plaintiff asserts, and defendant does not challenge, that "more than 1 million units of the Roundup Products were sold in Wisconsin during the class period." (*Id*. at 5.) Even accounting for consumers who repurchased Roundup products, joining potentially thousands, if not hundreds of thousands, of consumers who purchased Roundup products in Wisconsin since June 2015 in one lawsuit would obviously be impractical. Thus, numerosity is satisfied.

### B. Commonality

The commonality requirement is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single, common issue will satisfy this requirement if the issue is "capable of classwide resolution -- which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 339. Under the commonality standard, plaintiff must do more than "merely" demonstrate "that they have all suffered a violation of the same provision of law." *Id.* (internal quotation marks and citation omitted). Plaintiff must show that "the class members have suffered the same injury." *Id.*

Plaintiff offers four relevant common questions of law and fact related to defendant's representations about Glyphosate: (1) "whether Monsanto's representation that 'Glyphosate targets an enzyme found in plants but not in people or pets' is false, misleading, or deceptive"; (2) "whether Monsanto omitted material information from the labels of Roundup Products"; (3) "whether practices related to the marketing, labeling, and sales of Roundup Products were unfair, deceptive, fraudulent, and/or unlawful"; and (4) "whether Monsanto's conduct economically injured" the class members.[1] (Pl.'s Class Cert. Br. (dkt. #73) 7.) In support, plaintiff notes that "thousands of consumers purchased Roundup Products after having viewed the label representation or other Monsanto marketing" regarding the efficacy of Glyphosate. (*Id.*) In response, defendant argues that commonality is not met because plaintiff "relies on the fact that he saw the Labeling Statement, [but] many class members did not." (Def.'s Opp'n to Class Cert. (dkt #79) 38.)

Defendant's commonality argument fails because a jury could still find members of

---

[1] Plaintiff also identifies two common questions of law and fact, pertaining to claims previously dismissed by this court. *See Blitz v. Monsanto*, 317 F. Supp. 3d 1042, 1054–1055 (W.D. Wis. 2018) (dismissing plaintiff's breach of express warranty and unjust enrichment claims for failure to state a claim).

5

the proposed class were injured by false, misleading, or deceptive claims under the WDTPA, even if some class members did not see the Roundup products' labels. *See Blitz*, 317 F. Supp. 3d at 1052–53 (noting that reasonable reliance on a false statement is not "an element of a statutory false representation claim" (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553)). Even if some members of the proposed class did not see the label, therefore, there may still be common questions of law and fact capable of classwide resolution. *See Dukes*, 564 U.S. at 339. Thus, commonality would appear satisfied.

### C. Typicality

Rule 23(a) typicality requires that a named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality often overlaps with the commonality requirement. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). However, this inquiry should ensure that "a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative." *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 Newberg & Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)).

Plaintiff argues that typicality is satisfied because both he and the proposed class

were "subject to Monsanto's common course of conduct," in that they "viewed Monsanto's deceptive representations" regarding Glyphosate and subsequently "purchased the Roundup Product." (Pl.'s Class Cert. Br. (dkt. #73) 8.) In response, defendant argues that typicality is not met for two reasons: (1) the named plaintiff's claim is not typical of the proposed class because plaintiff "relies on the fact that he saw the Labeling Statement, and many class members did not";[2] and (2) plaintiff only purchased some of the Roundup products, differentiating him from many other members of the proposed class.[3] (Def.'s Opp'n to Class Cert. (dkt. #79) 38, 40.)

Defendant's first argument fails because even if members of the proposed class did not see the labeling statement, the named plaintiff's claims may still be "typical . . . of the class." Fed. R. Civ. P. 23(a)(3). As previously mentioned, the act of viewing a Roundup Product's label is not dispositive as to whether a statement is false, misleading, or deceptive under the WDTPA. *Blitz*, 317 F. Supp. 3d at 1052–53. Instead, it is enough that the named plaintiff's claim has "the same essential characteristics" -- in this case, putative harm caused by untrue, deceptive or misleading statements -- "as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente*, 713 F.2d

---

[2] While defendant asserts this argument in opposition to a finding of commonality *and* typicality (Def.'s Opp'n to Class Cert. (dkt. #79) 38), plaintiff criticizes defendant's characterization of this argument as one of typicality, since it really goes more to commonality. (Pl.'s Class Cert. Reply (dkt. #99) 7–8.) The court has no interest in engaging in an argument over whether both dance on the head of the same pin, particularly since typicality and commonality arguments are often considered together. *See Wiedenbeck v. Cinergy Health, Inc.*, No. 12-cv-508-wmc, 2013 WL 5308206, at *9 (W.D. Wis. Sept. 20, 2013) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Falcon*, 457 U.S. at 157 n.13).

[3] Defendant notes that plaintiff purchased several of Roundup's "ready-to-use" products, but not Roundup's "concentrated products." (Def.'s Opp'n to Class Cert. (dkt. #79) 40).

at 232).

Defendant's second argument against typicality also fails. While plaintiff may not have purchased all the Roundup products at issue in the case, he may still adequately represent the claims of the proposed class. Defendant cites several cases where plaintiffs failed to show typicality because the named plaintiffs had "purchased a different product than that purchased by unnamed plaintiffs."[4] (Def.'s Opp'n to Class Cert. (dkt. #79) 40.) Only *Lewis Tree* is arguably similar to the typicality concerns raised by defendant in this case. *See* 211 F.R.D. at 232–34. Moreover, the *Lewis Tree* decision does not persuade this court that the typicality requirement is missing in this case.

The plaintiff in *Lewis Tree* sought certification of a class comprised of:

> all individuals who purchased, leased, or acquired any one of nearly sixty telecommunications products that were sold by the AT&T Corporation ("AT&T") and its successor, Lucent Technologies, Inc. ("Lucent") . . . over a ten-year period and that allegedly contained defects related to processing of dates including and after January 1, 2000 (the "Y2K defect").

*Lewis Tree*, 211 F.R.D. at 229. Given this definition of the class, the district court found the plaintiff did not satisfy typicality for three reasons: (1) the plaintiff had only purchased two of the "over sixty products"; (2) there was no allegation that "the circumstances under which Lewis Tree purchased its equipment were similar to those of other class members";

---

[4] Defendant directs the court to *Weiner v. Dannon*, 255 F.R.D. 658, 666 (C.D. Cal. 2009). (Def.'s Opp'n to Class Cert. (dkt. #79) 40.) Three related cases cited in *Dannon* are: *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 621–22 (S.D. Cal. 2007); *Lewis Tree Serv. Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 232–34 (S.D.N.Y. 2002); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999). The remaining cases relied upon by defendant concern plaintiffs who had not purchased *any* of the products at issue in the litigation. This includes *Dannon* and *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067 EJD, 2013 WL 2558125, at *3–4 (N.D. Cal. June 10, 2013).

and (3) Lewis Tree's legal claims were not "typical of the class." *Id.* at 234. The first of these concerns is also true here, since the named plaintiff has not purchased all of the Roundup products, but the other two are not: the circumstances under which plaintiff and other members of the proposed class purchased Roundup products are similar -- all allegedly purchased from retail stores -- and, as the court previously noted, the plaintiff's legal claims are typical of the proposed class.

Further informing the court's decision are the cases cited by plaintiff where typicality *was* satisfied even though the plaintiff had not purchased all the products at issue in the case. (Pl.'s Class Cert. Reply (dkt. #99) 13.) The district court's decision in *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2007), is particularly persuasive because of the factual similarity. As in this case, the defendants in *Elias* argued that typicality was missing because none of the named plaintiffs had purchased several of the products at issue in the case. *Id.* at 243. Nevertheless, the *Elias* court found that the named plaintiffs were typical of the class. In its decision, the court emphasized that the products were all manufactured and distributed by the same corporation, and that the litigation's focus on the defendants' "misrepresentations on their packages concerning fat and calories." *Id.* at 243-44. Furthermore, the court noted that all of the claims in the litigation involved the same legal analysis and arose from the same course of conduct: "selling a product with false nutritional information." *Id.* at 244.

Like *Elias*, plaintiff's claim and the claims of the putative class members involve products sold that are manufactured and distributed by the same company, Monsanto, under the same brand name, Roundup. Further, plaintiff's and the proposed class's claims:

(1) focus on the exact same alleged misrepresentation on all Roundup product labels; (2) involve the same legal analysis; and (3) arise from the same course of conduct. This case's similarity to *Elias*, along with the distinctions from *Lewis Tree*, persuade the court that defendant's second argument against typicality fails as well. Thus, typicality is also met.

**D. Adequacy**

The purpose of Rule 23's adequacy requirement is to ensure that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A class representative is *not* adequate if he is subject to a defense to which other class members are not subject or could not prove the elements of the class claim for reasons particular to him. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–25 (7th Cir. 2011). Defendant alleges plaintiff is an inadequate class representative because he "is not seeking *any* monetary or injunctive relief." (Def.'s Opp'n to Class Cert. (dkt. #79) 39.) To support its argument, defendant points to *Perovich v. Humphrey*, No. 97 C 3209, 1997 WL 674975, at *6 (N.D. Ill. Oct. 28, 1997). *Perovich* found plaintiffs would not adequately represent the proposed class for three reasons: (1) the plaintiffs claimed no monetary interest in the claim nor any monetary injury arising from the claim; (2) the plaintiffs had not paid for or possessed the product "at the heart" of the lawsuit; and (3) the plaintiffs brought the lawsuit "based only 'on principle.'" *Id.*

While the plaintiff in this case did admit that he is not personally seeking monetary damages, he is still not analogous to the individual plaintiffs in *Perovich*. Here, plaintiff has paid for and possessed the products involved in this litigation, and plaintiff is not bringing

this lawsuit on principle alone. Plaintiff has alleged specific injuries that were sufficient to survive a motion to dismiss. *Blitz*, 317 F. Supp. 3d at 1052–56. Given these differences between this plaintiff and those is *Perovich*, defendant's argument fails.

Defendant also argues that plaintiff's class counsel cannot adequately represent the proposed class. Defendant's inadequacy argument focuses on the inappropriate conduct of one attorney from one of the eight law firms listed in plaintiff's brief.[5] (Def.'s Opp'n to Class Cert. (dkt. #79) 41–42; Pl.'s Class Cert. Br. (dkt. #73) 12.) While the court has had concerns about the performance of putative class counsel to date in this case, those concerns could be addressed by requiring the retention of an experienced, local counsel.[6] Moreover, misconduct by a single attorney in a past litigation is not enough to render plaintiff's class counsel inadequate, particularly given their apparent experience in class actions generally. (Richman Law Group Resume (dkt. #63-1) 1–4.)

Accordingly, the Rule 23(a) requirements are met here.

## II. Rule 23(b)(3) Requirements

### A. Predominance

The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521

---

[5] In fairness, while the California court expressly found that only this one particular attorney had acted in an unethical manner, defendants correctly note that the court found that "perhaps the entire leadership team" for plaintiffs had acted in bad faith. (Def.'s Opp'n to Class Cert. (dkt. #79) 42.)

[6] In light of the fact that the court is denying class certification, it will not require the retention of local counsel, although plaintiff's counsel may want to give that option serious consideration if this case were to proceed to trial.

U.S. 591, 623 (1997). Predominance is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). Plaintiff's proposed class falters under this test because individual questions of material inducement overwhelm the questions common to the class, at least as Wisconsin law currently stands.

In an uninvited letter filed with the court, plaintiff presented a last-ditch effort to save its motion for class certification. (Pl.'s Letter Br. (dkt. #112) 1–5.) Plaintiff insists that because "reasonable reliance" is not an element of a misrepresentation claim under the WDTPA, plaintiff is not burdened with showing *any* reliance to establish liability, and thus class certification is appropriate on the issue of whether Monsanto intentionally made a misleading assertion regarding Glyphosate. (*Id.* at 1.) However, this argument highlights plaintiff's consistent misunderstanding of what is now settled law under the WDTPA.

Certainly, plaintiff's argument would appear to have merit based solely on the language of the WDTPA, but this court is not writing on a *tabula rasa*. Indeed, if the court were applying only a plain reading of the WDTPA, plaintiff's proposed class might well proceed, but the Wisconsin Supreme Court's decision in *Novell* requires a claim under § 100.18 of the WDTPA demonstrate that the misrepresentation must have "materially induced (caused) a pecuniary loss to the plaintiff." *Novell*, 309 Wis. 2d 132, 151 (citing *K&S Tool and Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, 301 Wis. 2d 109, 122, 732 N.W. 792); *see also* Mark R. Hinkston, *Protecting Consumers in the Modern Age: Wisconsin's Deceptive Trade Practices Act*, 81 Wis. Law. 14, 65 (Oct. 2008) (noting that the third element under Wis. Stat. § 100.18 is "whether a representation *caused* the plaintiff's

pecuniary loss" (emphasis added)). In other words, the plaintiff would have to show that each member of the class was materially induced by (i.e., relied upon) the alleged misrepresentation.[7] Under *Novell*, therefore, individual questions of whether the Glyphosate label materially induced each member of plaintiff's proposed class overwhelm questions common to the class and prevent class certification.

Plaintiff attempts to overcome the need for individual inquiry into material inducement by pointing to California's consumer protection laws. (Pl.'s Letter Br. (dkt. #112) 3–4.) Unlike Wisconsin law, however, California's consumer protection law directs courts to apply an objective "reasonable person" standard to misrepresentation claims. (*See id.* (citing *Rikos v. P&G*, 799 F.3d 497 (6th Cir. 2015); *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010)).) That standard is more amenable to potential class actions because it shifts the inquiry from whether a misrepresentation induced an individual to whether the statement would have induced a reasonable consumer. Because a claim under the WDTPA turns on whether the misrepresentation materially induced each *individual* Wisconsin consumer -- and not whether it would have materially induced a reasonable consumer -- plaintiff's argument cannot prevail.[8]

---

[7] Whether the plaintiff *reasonably* relied on the misrepresentation is a factor that the jury can consider, but is not the ultimate question. *Novell*, 309 Wis. 2d at 143–44.

[8] While it is at least arguably unfortunate that plaintiff cannot proceed under Wisconsin's consumer protection statute to protect consumers as a whole, the Wisconsin Department of Agriculture, Trade and Consumer Protection ("DATCP") expressly retains the authority to seek broader, equitable relief for consumers under Wis. Stat. § 100.18(11)(a) (2015–16).

B. **Superiority**

For the same reason that common questions do not predominate, superiority -- the final requirement -- is not met. Here, the court must consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant considerations include: (1) the class members' interests in individually litigating their claims; (2) the extent and nature of competing litigation; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties of managing a class action. *Id.* Ultimately, the case must be one "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee note to the 1966 Amendment). Because a consumer's reliance on the Roundup label must be determined on an individual basis, a class action is not a superior method for resolving this dispute.

## III. Plaintiff's Motion to Amend Schedule

Finally, plaintiff recently filed an unopposed motion to stay deadlines for expert disclosures and summary judgment, pending the issuance of this opinion. (Pl.'s Mot. to Amend. Schedule (dkt. #116) 1.) In light of the court's denial of class certification, plaintiff's motion will be granted in part. Plaintiff may have until January 24, 2019, to disclose his remaining experts. Defendant may have until February 24 to disclose its remaining experts. The discovery cutoff will now be March 1. Dispositive motions will be due March 8. All other deadlines remain unchanged.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion to certify a class under Rule 23 (dkt. #72) is denied.

2) In light of the court's lack of consideration or reliance on the Butler Report (dkt. #88) in reaching its opinion on class certification, plaintiff's motion for leave to file the Maronick Report (dkt. #97) is DENIED AS MOOT.

3) Plaintiff's motion for extension of time (dkt. #116) is GRANTED IN PART and DENIED IN PART as set forth above. Additionally, the court will schedule a telephonic status conference with Judge Crocker.

Entered this 2nd day of January, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge